**EXHIBIT B**

American Arbitration Association
Dispute Resolution Services Worldwide

## COMMERCIAL ARBITRATION RULES
## DEMAND FOR ARBITRATION

| | |
|---|---|
| *MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☐ There is no additional administrative fee for this service.* | |

| Name of Respondent | Name of Representative (if known) |
|---|---|
| Somerville Fidelco Associates, L.P. | Martin R. Dollinger |
| Address | Name of Firm (if applicable) |
| 520 U.S. Highway 22 East | Greenbaum, Rowe, Smith & Davis LLP |
| | Representative's Address |
| P.O. Box 6872 | Metro Corporate Center, P.O. Box 5600 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Bridgewater | NJ | 08807 | Woodbridge | NJ | 07095-0988 |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (908) 725-8100 | (908) 575-2237 | (732) 549-5600 | (732) 549-1881 |

| Email Address: | Email Address: |
|---|---|
| | mdollinger@greenbaum.com |

The named claimant, a party to an arbitration agreement dated October 23, 1987 , which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration. *

THE NATURE OF THE DISPUTE
Claim for breach of commercial lease by tenant against landlord arising out of asbestos contamination at leased premises (located in Somerville, New Jersey) caused by landlord's roofing contractor

| Dollar Amount of Claim $734,175.00 | Other Relief Sought: ☐ Attorneys Fees ☐ Interest ☐ Arbitration Costs ☐ Punitive/ Exemplary ☐ Other _____ |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $325.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Commercial lease experience

Hearing locale Somerville, NJ     (check one) ☒ Requested by Claimant  ☐ Locale provision included in the contract

| Estimated time needed for hearings overall: | Type of Business: Claimant Property owner |
|---|---|
| _____ hours or 2-3 days | Respondent Pharmaceutical Company |

Is this a dispute between a business and a consumer? ☐Yes ☒ No Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one)  ☐ Atlanta, GA  ☐ Dallas, TX  ☒ East Providence, RI ☐ Fresno, CA  ☐ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative)    Date: | Name of Representative |
|---|---|
| | Charles J. Vinicombe |
| Name of Claimant | Name of Firm (if applicable) |
| Bristol-Myers Squibb Company | DRINKER BIDDLE & REATH LLP |
| Address (to be used in connection with this case) | Representative's Address |
| P.O. Box 4000 | 105 College Road East  SDite 300 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Princeton | NJ | 08845-4000 | Princeton | NJ | 08542 |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (609) 252-5546 | | (609)716-6562 | (609) 799-7000 |

| Email Address: | Email Address: |
|---|---|
| john.chapman@bms.com | charles.vinicombe@dbr.com |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.
Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879

* The arbitration clause is contained in the original October 23, 1987 lease, which has amendments and extensions dated June 3, 1988, May 14, 1993 and November 25, 2002.

**EXHIBIT C**

BAD ORIGINAL
DOCUMENT

# GREENBAUM, ROWE, SMITH & DAVIS LLP

PAUL A. ROWE
WENDELL A. SMITH
ALAN E. DAVIS
DAVID L. BRUCK
MICHAEL A. BACKER
MARTIN Z. DOLLINGER
DEAN A. GAVER
ROBERT C. SCHACHTER
MARTIN L. LEPELSTAT
DENNIS A. ESTIS
WILLIAM D. GRAND
RAYMOND M. BROWN
ALAN S. NAAR
STEPHEN N. KNEE
ROBERT M. GOODMAN
DOUGLAS K. WOLFSON
MARK H. SOBEL
HAL W. MANDEL
BARRY S. GOODMAN
LAWRENCE R. MAHER
THOMAS J. DENITZIO, JR.
ROBERT S. GOLDSMITH
JOHN D. NORTH
KENNETH T. BILLS
THOMAS C. SENTER
MARGARET GOODZEIT

W. RAYMOND FELTON
CHRISTINE F. LI
MERYL A. G. GONCHAR
MICHAEL H. FEINBERG
CARLTON T. SPILLER
JOSEPH M. ORIOLO
ARON M. SCHWARTZ
SABRINA A. KOGEL
JACQUELINE M. PRINTZ
STEVEN C. DELINKO
DAVID A. ROTH
GARY K. WOLINETZ
KEVIN T. MCNAMARA
RICHARD L. HERTZBERG
ELLEN A. SILVER
ANDREA J. SULLIVAN
MARC O. POLICASTRO
MARC J. GROSS
LUKE J. KEALY
C. BRIAN KORNBREK
CIPORA S. WINTERS
GALIT KIERKUT
BRIAN R. SELVIN
PETER D. CRAWFORD, JR.
EMILY A. KALLER

COUNSELORS AT LAW

METRO CORPORATE CAMPUS ONE
P.O. BOX 5600
WOODBRIDGE, N. J. 07095-0988
(732) 549-5600
FAX (732) 549-1881

*DELIVERY ADDRESS:*
99 WOOD AVE. SOUTH
ISELIN, NEW JERSEY 08830-2712

75 LIVINGSTONE AVENUE
ROSELAND, NEW JERSEY 07068-3701
(973) 535-1600
FAX (973) 535-1698

EMAIL: INFO@GREENBAUMLAW.COM
WWW.GREENBAUMLAW.COM

OF COUNSEL
ROBERT S. GREENBAUM    ARTHUR M. GREENBAUM
FRANKLIN M. SACHS
J. WARREN WOOD III

COUNSEL

CHRISTINE F. MARKS
ROBERT S. UNDERHILL
STEVEN FINSER
ALLEN V. BROWN

HOWARD B. HANDER
KEVIN L. FONG
KEVIN J. CONNELL
JODI L. ROSENBERG

MICHELE GIBSON
ROSEMARY CULCASI
ARREN S. GOLDMAN
DARREN C. BARREIRO
OLIVIER SALVAGNO
STEVEN M. DELMAN
DINA M. VANIDES
MARY A. MAWLA
ERIC H. MELZER
GINA M. PONTORIERO
MARINA SOLO
ROBERT BECKELMAN
NAJA M. OBRADOVIC
JANE J. FELTON
STACEY H. COHEN
MICHAEL A. KLEIN
DEAN E. LOVENTHAL
BENWAN AKHTAR
BRYAN D. PLOCKER
DAVID T. SHIVAS
DAVID S. SCHECHTER

ADAM B. KAPLAN
JONATHAN J. WALZMAN
MARJORIE E. KLEIN
JESSICA F. BATTAGLIA
JENI M. GOULIAN
JOHN B. NANCE
MICHELLE M. BEKOWSKI
JEFFREY A. SIROT
JOHN WHITING ROESER
MICHAEL A. GOROKHOVICH
LISA J. CLAPP
GREGG H. HILZER
LISA B. DIPASQUA
MEGHAN O. MURRAY
ERNEST C. D'ANGELO
JORDAN A. STERN
CATHLENE Y. BANKER
LAURA M. BILOTTA
MICHAEL DINGER
JAMIE A. YONKS
JEANETTE TANNER

WM. L. GREENBAUM (1914-1983)
ALLEN RAVIN (1957-1997)

REPLY TO:
*Woodbridge*

August 17, 2006

**VIA CERTIFIED MAIL — R.R.R.** *(w/encls.)* **— 70023150000471502456**
**AND REGULAR MAIL** *(w/encls.)*

Claims Department
Scottsdale Insurance Company
8877 N. Gainey Center Drive
Scottsdale, AZ 85258

     Re:    ***Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.***
            **American Arbitration Association, 18 459 01071 06**

Dear Sir/Madam:

    This notice is provided on behalf of Somerville Fidelco Associates, L.P. ("Somerville Fidelco") regarding a claim filed by Bristol-Myers Squibb Company against Somerville Fidelco with the American Arbitration Association regarding damages caused by Badger Roofing Company. For your convenience, a copy of the correspondence dated August 4, 2006 from plaintiff's attorney to Ms. Catherine Shanks of the American Arbitration Association along with the Demand for Arbitration is attached hereto.

    This notice is provided pursuant to all insurance policies issued by Scottsdale Insurance Company and its affiliated and related companies to Badger Roofing Company, under which Somerville Fidelco is an additional insured, including the following:

| INSURER | POLICY NUMBER | POLICY PERIOD |
|---------|---------------|---------------|
| Scottsdale | BC80010238 | 5/1/05 to 5/1/06 |

*BCS*

BAD ORIGINAL
DOCUMENT

GREENBAUM, ROWE, SMITH & DAVIS LLP

Claims Department
Scottsdale Insurance Company
August 17, 2006
Page 2

On behalf of Somerville Fidelco, we request insurance coverage including defense and indemnification for the claims in the referenced matter.

Thank you for your courtesies in this matter.

Very truly yours,

Ellen A. Silver

EAS/sjg
Encls.

**EXHIBIT D**

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              0465
CONNECTION TEL                917324249764
SUBADDRESS
CONNECTION ID
ST. TIME              09/06 13:30
USAGE T               01'30
PGS. SENT             5
RESULT                OK
```



## SCOTTSDALE INSURANCE COMPANY®

**VIA FAX 732-424-9764**

September 6, 2006

Scott Badger
Badger Roofing Co., Inc.
5 Smalley Ave
Middlesex, NJ 08846

Re:    Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.
       Claim No.:    1044059-31

Dear Mr. Badger:

As we discussed by phone last week, we have received the following correspondence from the attorney representing Somerville Fidelco Associates, L.P.  Fidelco is making a claim for coverage under your policy with Scottsdale.

In order for us to respond to this letter, I need a copy of any contracts or agreements which were applicable to this job.  Please forward a complete copy of the documents at your earliest opportunity.

Kent Riggs
Sr. Claim Specialist
EXT 2565

**EXHIBIT E**



## SCOTTSDALE INSURANCE COMPANY®

September 7, 2006

**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

Mr. Scott Badger
Badger Roofing Company, Inc.
5 Smalley Avenue
Middlesex, NJ 08846

RE:    Lawsuit:         <u>Bristol-Meyers Squibb Company, vs. Somerville</u>
                                 <u>Fidelco Associates, L.P.</u>
         Claim No.:      1044058-031
         Insured:         Badger Roofing Company, Inc.
         Policy No.:     BCS0010238
         Policy Term:   05/01/05 – 05/01/06
         Policy No.:     BCS0012871
         Policy Term:   05/01/06 – 05/01/07

Dear Mr. Badger:

Scottsdale Insurance Company is in receipt of correspondence from attorney Ellen A. Silver, on behalf of Somerville Fidelco Associates, L.P., seeking coverage under your policy with Scottsdale Insurance Company for defense and indemnification for the claim being brought against them by Bristol-Myers Squibb Company.

Based upon the information we have received and our previous telephone conversation, it is my understanding that Somerville Fidelco Associates, L.P., is the owner of certain premises occupied by Bristol-Meyers Squibb Company under a commercial lease agreement between the two parties. Your company contracted with Somerville Fidelco Associates, L.P., to replace the roof. During the course of the operation, asbestos was discovered and the job was stopped for several months while an asbestos removal contractor completed the removal of the roof.

The claimant, Bristol-Meyers Squibb Company, alleges that Somerville Fidelco Associates, L.P., is in breach of the lease agreement as a result of interruption to their operations within the premises.

**Claims Division**
P.O. Box 4120                8877 N. Gainey Center Dr.    (480) 365-4000    1-800-423-7675
Scottsdale, AZ 85261-4120      Scottsdale, AZ 85258        FAX 480-483-6752

A Nationwide® Company

Mr. Scott Badger
September 7, 2006
Page 2

At this point, no direct claim has been made against your company. Nevertheless, there are certain policy provisions which we wish to bring to your attention, which could affect your coverage under the policy with respect to any claim which may eventually be made against your company. Your policy with Scottsdale Insurance Company, BCS0010238, was effective from May 1, 2005, to May 1, 2006. Policy No. BCS0012871, is effective from May 1, 2006, to May 1, 2007. Each policy affords coverage in the amount of $1,000,000.00 per occurrence and $2,000,000.00 aggregate for "bodily injury" or "property damage" which occurs during the policy term and which is caused by an "occurrence". The policies also afford coverage for an "offense", during the policy period, giving rise to "personal and advertising injury".

Both policies are subject to Coverage Form No. CG0001. The following provisions are from Policy No. BCS0010238, and Coverage Form No. CG0001 (10-01). The subsequent policy contains a later edition of Form No. CG0001. The language contained in the later edition may vary slightly from the following provisions but is substantially similar. Please refer to the Insuring Agreement under Section I – Coverage A, which states:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    **Insuring Agreement**

   a.   **We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:**

   (1)   **The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and**

   (2)   **Our right and duty to defend ends when we have used up the applicable limit of**

Mr. Scott Badger
September 7, 2006
Page 3

insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.   This insurance applies to "bodily injury" and "property damage" only if:

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)   The "bodily injury" or "property damage" occurs during the policy period; and

(3)   Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that

Mr. Scott Badger
September 7, 2006
Page 4

"bodily injury" or "property damage" after the end of the policy period.

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Please refer to the following Exclusions under Coverage "A", which may be applicable:

2.    Exclusions

This insurance does not apply to:

b.    Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

Mr. Scott Badger
September 7, 2006
Page 5

    (2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

        (a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        (b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**j.**    **Damage To Property**

"Property damage" to:

    (1)    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

    (2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

    (3)    Property loaned to you;

Mr. Scott Badger
September 7, 2006
Page 6

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

I.    Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage

Mr. Scott Badger
September 7, 2006
Page 7

arises was performed on your behalf by a subcontractor.

m.   **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Please also refer to the Insuring Agreement under Section I, Coverage "B", which states:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.   **Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

Mr. Scott Badger
September 7, 2006
Page 8

  (1) **The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and**

  (2) **Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.**

  **No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.**

 b. **This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.**

Please refer to Section V – Definitions, for the following Definitions:

**SECTION V – DEFINITIONS**

 3. **"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.**

 8. **"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:**

  a. **It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or**

  b. **You have failed to fulfill the terms of a contract or agreement;**

  **if such property can be restored to use by:**

  a. **The repair, replacement, adjustment or removal of "your product" or "your work"; or**

Mr. Scott Badger
September 7, 2006
Page 9

    b.    **Your fulfilling the terms of the contract or agreement.**

13.    **"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**

14.    **"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:**

    a.    **False arrest, detention or imprisonment;**

    b.    **Malicious prosecution;**

    c.    **The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;**

    d.    **Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;**

    e.    **Oral or written publication, in any manner, of material that violates a person's right of privacy;**

    f.    **The use of another's advertising idea in your "advertisement"; or**

    g.    **Infringing upon another's copyright, trade dress or slogan in your "advertisement".**

15.    **"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.**

17.    **"Property damage" means:**

Mr. Scott Badger
September 7, 2006
Page 10

  a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

22. "Your work":

  a.  Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

  b.  Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    (2) The providing of or failure to provide warnings or instructions.

Each policy is subject to Endorsement CG2426 (07-04), which states:

Mr. Scott Badger
September 7, 2006
Page 11

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 9. of the Definitions Section is replaced by the following:

9.    "Insured contract" means:

    a.    A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.    A sidetrack agreement;

    c.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.    An elevator maintenance agreement;

    f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability

Mr. Scott Badger
September 7, 2006
Page 12

means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1)    That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2)    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a)    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3)    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

Each policy is subject to Endorsement CG2033 (07-04), which states:

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – OWNERS, LESSEES OR**

Mr. Scott Badger
September 7, 2006
Page 13

## CONTRACTORS – AUTOMATIC STATUS WHEN
## REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

**This endorsement modifies insurance provided under the following**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A.    **Section II – Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:**

   1.    **Your acts or omissions; or**

   2.    **The acts or omissions of those acting on your behalf;**

   **in the performance of your ongoing operations for the additional insured.**

   **A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.**

B.    **With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:**

   **This insurance does not apply to:**

   1.    **"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:**

      a.    **The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys,**

Mr. Scott Badger
September 7, 2006
Page 14

        field orders, change orders or drawings
        and specifications; or

    b.    Supervisory, inspection, architectural or
        engineering activities.

2.    "Bodily injury" or "property damage" occurring
    after:

    a.    All work, including materials, parts or
        equipment furnished in connection with
        such work, on the project (other than
        service, maintenance or repairs) to be
        performed by or on behalf of the
        additional insured(s) at the location of
        the covered operations has been
        completed; or

    b.    That portion of "your work" out of which
        the injury or damage arises has been put
        to its intended use by any person or
        organization other than another
        contractor or subcontractor engaged in
        performing operations for a principal as
        a part of the same project.

Each policy is subject to Endorsement CG2149 (09-99), which states:

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I –
Coverage A – Bodily Injury And Property Damage Liability is
replaced by the following:

This insurance does not apply to:

Mr. Scott Badger
September 7, 2006
Page 15

      f.    **Pollution**

          (1)    **"Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.**

          (2)    **Any loss, cost or expense arising out of any:**

              (a)    **Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or**

              (b)    **Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".**

Each policy is subject to UTS-131G (03-92), which states:

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**ASBESTOS EXCLUSION**

**The coverage afforded by this policy does not apply to bodily injury, personal injury or property damage arising out of:**

    1.    **Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or**

    2.    **The use of asbestos in construction or manufacturing any good, product or structure; or**

Mr. Scott Badger
September 7, 2006
Page 16

3.   The removal of asbestos from any good, product or structure; or

4.   The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense of claim or suit related to any of the above.

Policy BCS0012871 is subject to Endorsement GLS-281S (03-06), which states:

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

**CONTINUING OR ONGOING DAMAGE EXCLUSION**

**This endorsement modifies insurance provided under the following**

**COMMERCIAL GENERAL LIABILITY
COVERAGE FORM**

The following exclusion is added to subsection 2. Exclusions of SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to "property damage" when any of the following apply:

Continuing Or Ongoing Damage

1.   The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

2.   The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first

Mr. Scott Badger
September 7, 2006
Page 17

**occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.**

We wish to point out that we do not presently have any information concerning the date that the work was performed or the date of any of the events which have given rise to this dispute. Therefore, we do not know whether any of these events occurred during the Scottsdale Insurance Company policy term.

With respect to the tender of defense we have received from Somerville Fidelco Associates, L.P., we have previously requested copies of contracts or written agreements which are applicable to this jobsite. As indicated by the above-cited Endorsement, Somerville Fidelco Associates, L.P., may have limited coverage as an additional insured under the policy if the contract required that you provide coverage. Even if that is the case, the claim for Breach of Contract for a lease agreement does not constitute an "occurrence" resulting in "bodily injury" or "property damage" as those terms are defined in the policy. Likewise, a claim for Breach of Contract of a lease agreement would not constitute an "offense" giving rise to "personal and advertising injury".

In addition, the policy specifically excludes coverage for claims arising out of asbestos exposure. The policy specifically excludes coverage for claims arising from pollution. One or more of the above-cited policy Exclusions or Endorsements may be applicable and may exclude or limit coverage under the policies.

Scottsdale Insurance Company is reserving the right to assert all defenses to coverage under the policy. In investigating the claim, defending any suit, or attempting any compromise settlement, Scottsdale Insurance Company is not waiving any rights, nor admitting any obligation under the policy.

Scottsdale Insurance Company does not limit its right to assert limitations on coverage provisions as set forth above. Rather, it reserves its rights to enforce any or all of the provisions, including policy conditions, contained in the policy.

Should you have any information that is contrary to that expressed above, or if you have any questions, comments or objections, please contact the undersigned.

Sincerely,


Kent L. Riggs, CPCU
Senior Claim Specialist
Extension 2565

Mr. Scott Badger
September 7, 2006
Page 18


cc:    Agent #29718

KLR/lsm/rmw/lsm
LSM/S35385

**EXHIBIT F**



## SCOTTSDALE INSURANCE COMPANY®

January 31, 2007

Ellen A. Silver
Greenbaum, Rowe, Smith & Davis LLP
P.O. Box 5600
Woodbridge, NJ 07095-0988

RE:    Matter:        <u>Bristol-Meyers Squibb Company, vs. Somerville</u>
                      <u>Fidelco Associates, L.P.</u>
       Claim No.:      1044058-031
       Insured:        Badger Roofing Company, Inc.
       Policy No.:     BCS0010238
       Policy Term:    05/01/05 – 05/01/06
       Policy No.:     BCS0012871
       Policy Term:    05/01/06 – 05/01/07

Dear Ms. Silver:

Scottsdale Insurance Company is in receipt of your correspondence of August 17, 2006 on behalf of Somerville Fidelco Associates, L.P., seeking coverage under the Scottsdale Insurance Company policy with Badger Roofing Company, Inc.

It is our understanding that Somerville Fidelco Associates, L.P., is the owner of certain premises occupied by Bristol-Meyers Squibb Company under a commercial lease agreement between the two parties. Badger Roofing Company, Inc. contracted with Somerville Fidelco Associates, L.P., to replace the roof. During the course of the operation, asbestos was discovered and the job was stopped for several months while an asbestos removal contractor completed the removal of the roof.

The claimant, Bristol-Meyers Squibb Company, alleges that Somerville Fidelco Associates, L.P., is in breach of the lease agreement as a result of interruption to their operations within the premises.

·Please be advised that Somerville Fidelco Associates, L.P. is not specifically named as an additional insured under the Scottsdale policies. The policies are subject to an additional insured endorsement which may afford limited coverage if there was a written contract which

Claims Division

P.O. Box 4120            8877 N. Gainey Center Dr.    (480) 365-4000        1-800-423-7675

Scottsdale, AZ 85261-4120   Scottsdale, AZ 85258        FAX 480-483-6752                          A Nationwide® Company

Ellen A. Silver
January 31, 2007
Page 2

required that Somerville Fidelco Associates, L.P. be named as an additional insured.  To date, we have not received a copy of any contract or agreement which may exist.

Even if Somerville Fidelco Associates, L.P. qualifies as an additional insured, the policy excludes coverage for asbestos-related claims.   Attached, please find a copies of our correspondence to Badger Roofing Co., Inc. dated September 7, 2006 and January 31, 2007 which sets forth our coverage position.

It is our position that there is no coverage for this claim under the Scottsdale policy.

Should you have any information that is contrary to that expressed above, or if you have any questions, comments or objections, please contact the undersigned.

Sincerely,

Kent L. Riggs, CPCU
Senior Claim Specialist
Extension 2565

**EXHIBIT G**



## SCOTTSDALE INSURANCE COMPANY*

January 31, 2007

Michael T. Collins
Sodini & Spina
50 Divison Street
Manahawkia, NJ 08050

RE:    Lawsuit:    <u>Bristol-Meyers Squibb Company, vs. Somerville</u>
                        <u>Fidelco Associates, L.P.</u>
         Claim No.:    1044058-031
         Insured:    Badger Roofing Company, Inc.
         Policy No.:    BCS0010238
         Policy Term:    05/01/05 – 05/01/06
         Policy No.:    BCS0012871
         Policy Term:    05/01/06 – 05/01/07

This follows my letter of September 7, 2006 directed to Badger Roofing (copy enclosed) and will acknowledge receipt of your letter of October 13, 2006 and subsequent correspondence.

The correspondence you provided from Lawrence P. Maher, which refers to the roofing work done by the insured, indicates that Bristol-Myers "claimed that the work caused asbestos-containing dust and debris to become located inside the premises…". This asbestos-containing dust and debris resulted in the clean-up and business interruption claims, the amount of which is disputed. The arbitration demand which we have previously received asserts the same asbestos contamination allegations.

The claims which have been made arise out of asbestos. It is our position that there is no coverage under the Scottsdale policies for claims arising from asbestos. Based upon the facts which are presently know to us, and for all the reasons set forth in my letter of September 7, 2006, Scottsdale disclaims coverage for this matter. We will not participate in the defense of the insured at the arbitration.

We have previously requested copies of any contracts or agreements which were applicable to this job. We again request that the insured provide copies of those documents. If you have any information or documentation which may change our position, we invite you to submit it for our consideration.

Michael T. Collins
January 31, 2007
Page 2

Sincerely,

Kent L. Riggs, CPCU
Senior Claim Specialist
Extension 2565

cc:      Agent #29718