**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Metro Corporate Campus I
P.O. Box 5600
Woodbridge, New Jersey 07095
Attorneys for Defendant
Somerville Fidelco Associates, L.P.

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>SOMERVILLE   FIDELCO   ASSOCIATES,<br>L.P. and BADGER ROOFING CO., INC.<br><br>    Defendants. | CIVIL ACTION NO.  3:07-cv-02763<br>(AET)(TJB)<br><br><br>**FIDELCO'S ANSWER, AFFIRMATIVE<br>DEFENSES, COUNTERCLAIM, AND<br>CROSSCLAIM** |

### ANSWER

Somerville Fidelco Associates, L.P. ("Fidelco"), with an address at 520 U.S. Highway 22, P.O. Box 6872 in Bridgewater, Somerset County, New Jersey 08807, by way of Answer to the Complaint for Declaratory Judgment filed by Scottsdale Insurance Company ("Scottsdale"), says as follows:

      1.      Fidelco neither admits nor denies the statement contained in paragraph 1 of the Complaint as it is a statement as to the "nature of the action" for which no responsive pleading is required, and leaves plaintiff to its proofs.

      2.      Fidelco denies the allegations contained in paragraph 2 of the Complaint except that it admits that there is an actual controversy between Fidelco and Scottsdale regarding Scottsdale's obligations under the insurance policy, and leaves plaintiff to its proofs.

      3.      Fidelco admits the allegations contained in paragraph 3 of the Complaint.

-1-

4.      Fidelco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint, and leaves plaintiff to its proofs.

5.      Fidelco admits the allegations contained in paragraph 5 of the Complaint.

6.      Fidelco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint, and leaves plaintiff to its proofs.

7.      Fidelco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint, except that it admits that the matter in controversy exceeds $75,000, and leaves plaintiff to its proofs.

8.      Fidelco admits the allegations contained in paragraph 8 of the Complaint.

9.      Fidelco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint, except that it admits that Scottsdale and Badger Roofing Co., Inc. ("Badger") advised Fidelco that Scottsdale issued to Badger a policy of general liability insurance, with policy number BCS0010238 for the period May 1, 2005 to May 1, 2006 (the "Insurance Policy").

10.     Fidelco admits the allegations contained in paragraph 10 of the Complaint.

11.     Fidelco admits the allegations contained in paragraph 11 of the Complaint.

12.     Fidelco denies the allegations contained in paragraph 12 of the Complaint, except it is admitted that asbestos bound in a matrix of asphalt was detected in one layer of core samples taken from the roof.

13.     Fidelco denies the allegations contained in paragraph 13 of the Complaint, except that it admits that because of the damage caused by Badger by its improper roofing work at the

building located at 76 Fourth Street, Somerville, New Jersey ("Premises"), Badger's services for the roof removal were discontinued and another contractor was retained by Fidelco to complete the removal of the roof.

14.    Fidelco denies the allegations contained in paragraph 14 of the Complaint, except that it admits that as a direct result of the damage caused by Badger's improper roof removal, the tenant Bristol-Myers Squibb Company ("Bristol-Myers") alleged that it was prevented from conducting its business at the Premises.

15.    Fidelco denies the allegations contained in paragraph 15 of the Complaint, except that it admits that as a direct result of the damage caused by Badger's improper roof removal, Bristol-Myers alleged that it suffered damages.

16.    Fidelco denies the allegations contained in paragraph 16 of the Complaint, except that it admits that in or about August 2006 Bristol-Myers made a Demand for Arbitration.

17.    Fidelco neither admits nor denies the allegations contained in paragraph 17 of the Complaint, states that the Demand for Arbitration speaks for itself and further states that the Demand for Arbitration does not properly or fully set forth the claims and facts in the Arbitration, and leaves plaintiff to its proofs.

18.    Fidelco admits the allegations contained in paragraph 18 of the Complaint.

19.    Fidelco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint, and leaves plaintiff to its proofs.

20.    Fidelco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint, and leaves plaintiff to its proofs.

21.    Fidelco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint, and leaves plaintiff to its proofs.

22.    Fidelco denies the allegations contained in paragraph 22 of the Complaint, except that it admits that in February 2007 counsel for Fidelco received copies of the letters from Scottsdale annexed as Exhibit F to the Complaint, and leaves plaintiff to its proofs.

23.    Fidelco denies the allegations contained in paragraph 23 of the Complaint, and states that the contents of the letters speak for themselves, and leaves plaintiff to its proofs.

24.    Fidelco denies the allegations contained in paragraph 24 of the Complaint, and states that the contents of the letters speak for themselves, and leaves plaintiff to its proofs.

25.    Fidelco denies the allegations contained in paragraph 25 of the Complaint, and states that Fidelco provided Scottsdale's counsel with a Certificate of Insurance confirming that Fidelco was an additional insured on the Insurance Policy issued by Scottsdale to Badger for the work performed by Badger at the Premises.

### As To Count One

26.    Fidelco repeats and reiterates its responses to the allegations contained in paragraphs 1 to 25 of the Complaint as if same were set forth at length herein.

27.    Fidelco denies the allegations contained in paragraph 27 of the Complaint, but admits that the first named insured on the Scottsdale Insurance Policy is Badger Roofing Co. Inc.

28.    Fidelco is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint, and leaves plaintiff to its proofs.

29.    Fidelco denies the allegations contained in paragraph 29 of the Complaint.

-4-

30.    Fidelco neither admits nor denies the allegations contained in paragraph 30 of the Complaint, and states that the Insurance Policy endorsements speak for themselves, and leaves plaintiff to its proofs.

31.    Fidelco denies the allegations contained in paragraph 31 of the Complaint, and states that Fidelco provided Scottsdale's counsel with a Certificate of Insurance confirming that Fidelco was an additional insured on the Insurance Policy issued by Scottsdale to Badger for the work performed by Badger at the Premises.

32.    Fidelco denies the allegations contained in paragraph 32 of the Complaint.

### As To Count Two

33.    Fidelco repeats and reiterates its responses to the allegations contained in paragraphs 1 to 32 of the Complaint as if same were set forth at length herein.

34.    Fidelco neither admits nor denies the allegations contained in paragraph 34 of the Complaint and states that the Insurance Policy endorsements speak for themselves, and leaves plaintiff to its proofs.

35.    Fidelco neither admits nor denies the allegations contained in paragraph 35 of the Complaint and states that the Insurance Policy endorsements speak for themselves, and leaves plaintiff to its proofs.

36.    Fidelco neither admits nor denies the allegations contained in paragraph 36 of the Complaint and states that the Insurance Policy endorsements speak for themselves, and leaves plaintiff to its proofs.

37.    Fidelco neither admits nor denies the allegations contained in paragraph 37 of the Complaint and states that the Insurance Policy definitions speak for themselves, and leaves plaintiff to its proofs.

38.    Fidelco neither admits nor denies the allegations contained in paragraph 38 of the Complaint, and states that the Demand for Arbitration speaks for itself and further states that the Demand for Arbitration does not properly or fully set forth the claims and facts in the Arbitration, and leaves plaintiff to its proofs.

39.    Fidelco denies the allegations contained in paragraph 39 of the Complaint.

## As To Count Three

40.    Fidelco repeats and reiterates its responses to the allegations contained in paragraphs 1 to 39 of the Complaint as if same were set forth at length herein.

41.    Fidelco neither admits nor denies the allegations contained in paragraph 41 of the Complaint, and states that the Demand for Arbitration speaks for itself and further states that the Demand for Arbitration does not properly or fully set forth the claims and facts in the Arbitration, and leaves plaintiff to its proofs.

42.    Fidelco denies the allegations contained in paragraph 42 of the Complaint and states that the Insurance Policy speaks for itself, and leaves plaintiff to its proofs.

43.    Fidelco denies the allegations contained in paragraph 43 of the Complaint.

## As To Count Four

44.    Fidelco repeats and reiterates its responses to the allegations contained in paragraphs 1 to 43 of the Complaint as if same were set forth at length herein.

45.    Fidelco neither admits nor denies the allegations contained in paragraph 45 of the Complaint, and states that the terms of the Insurance Policy speak for themselves, and leaves plaintiff to its proofs.

46.    Fidelco denies the allegations contained in paragraph 46 of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

47.    The plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

48.    The plaintiff's Complaint is barred, in whole or in part, by the doctrines of waiver, estoppel and/or unclean hands.

### Third Affirmative Defense

49.    The asbestos exclusion set forth in the plaintiff's Complaint does not bar insurance coverage for the claim.

### Fourth Affirmative Defense

50.    The pollution exclusion set forth in the plaintiff's Complaint does not bar insurance coverage for the claim.

### Fifth Affirmative Defense

51.    The contractual liability exclusion set forth in the plaintiff's Complaint does not bar insurance coverage for the claim.

### Sixth Affirmative Defense

52.    The exclusions (j)(5), (j)(6), (k) and (l) set forth in the plaintiff's Complaint do not bar insurance coverage for the claim.

### Seventh Affirmative Defense

53.    The plaintiff's claim for attorneys fees, costs and disbursements is barred by New Jersey law.

## Eighth Affirmative Defense

54.     Plaintiff's Complaint is barred due to plaintiff's bad faith.

**WHEREFORE**, Somerville Fidelco Associates, L.P. demands judgment dismissing the Complaint by Scottsdale Insurance Company with prejudice and without costs, and any other relief as the Court deems equitable and just.

## COUNTERCLAIM
## AGAINST SCOTTSDALE INSURANCE COMPANY

Somerville Fidelco Associates, L.P. ("Fidelco"), by way of Counterclaim against Scottsdale Insurance Company ("Scottsdale"), says as follows:

55.     Fidelco is a corporation organized under the laws of the State of New Jersey with its principal place of business located at 520 U.S. Highway 22, P.O. Box 6872 in Bridgewater, Somerset County, New Jersey 08807.

56.     Upon information and belief, defendant Scottsdale is a corporation organized under one of the states of the United States, is licensed to conduct business as an insurance company in the State of New Jersey, and at all relevant times has conducted business in the State of New Jersey.

57.     Upon information and belief, Scottsdale issued Commercial General Liability (CGL) insurance to Badger Roofing Co., Inc. ("Badger") including Policy No. BCS010238 for the period May 1, 2005 to May 1, 2006 (the "Insurance Policy").

58.     The insuring agreement in the Insurance Policy provides that Scottsdale will pay those sums that the insured becomes obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies.  The Insurance Policy also provides that Scottsdale has a duty to defend the insureds against any suit seeking those damages.

59.    Prior to commencing work at the premises located at 76 Fourth Street, Somerville, New Jersey (the "Premises"), Badger and Fidelco agreed that Fidelco would be added as an additional insured on Badger's Insurance Policy.

60.    In memorialization of the parties' agreement, Badger provided Fidelco with a Certificate of Insurance setting forth in writing the parties' agreement that Fidelco is an additional insured on the Insurance Policy issued by Badger to Scottsdale for Badger's work at the Premises.

61.    At all times relevant to this action Fidelco was the owner of the Premises, and leased the building on the Premises to Bristol-Myers Squibb Company ("Bristol-Myers").

62.    Bristol-Myers was the exclusive occupant of the Premises and utilized the Premises to house and monitor monkeys before they were transported to other Bristol-Myers testing facilities.

63.    During July and/or August 2005, Fidelco entered into a contract with Badger to remove and replace the existing roof at the Premises.

64.    In September 2005, Fidelco commenced removal of the existing roof at the Premises.

65.    Badger failed to take necessary precautions, failed to comply with applicable law and regulations and failed to perform the roof removal in a competent and workmanlike manner.

66.    Badger's failure to perform the roof removal properly caused damages to the Premises, including the infiltration of roofing debris at the Premises, which were occupied and utilized by Bristol-Myers.

67.    As a direct result of Badger's conduct, Bristol-Myers advised that it incurred damage, could not use the Premises, was required to perform a comprehensive cleanup at the

Premises, incurred extraordinary expenses for security and personal protection equipment and had to pay alternative storage costs for its test monkeys.

68.     In August 2006, Bristol-Myers asserted a claim by way of a Demand for Arbitration against Fidelco for reimbursement of the costs and expenses incurred as a consequence of damage sustained as a result of Badger's improper removal of the roof.

69.     In August 2006, counsel for Fidelco tendered the Demand for Arbitration to Scottsdale with a request for insurance coverage, including defense and indemnification, for the claim by Bristol-Myers in the Arbitration.

70.     Counsel for Fidelco sent follow-up letters to Scottsdale on October 17, 2006, November 28, 2006 and January 5, 2007, repeating the request for insurance coverage.

71.     Fidelco did not receive any response from Scottsdale.

72.     It was not until February 2007, six months after the Arbitration was filed and notice of claim sent to Scottsdale, that counsel for Fidelco received a letter dated January 31, 2007 from Mr. Kent L. Riggs at Scottsdale, where Scottsdale for the first time acknowledged receipt of counsel's August 17, 2006 letter.

73.     Scottsdale's January 31, 2007 letter advised, for the first time, that "there is no coverage for this claim under the Scottsdale policy".

74.     By letter dated March 14, 2007, counsel for Fidelco provided Scottsdale with a coverage analysis and requested that Scottsdale reconsider its coverage position and agree to provide insurance coverage including defense and indemnification for the Bristol-Myers claim. A copy of the Accord Certificate of Liability Insurance showing Fidelco as an additional insured on the Insurance Policy issued by Scottsdale to Badger was annexed to the March 14, 2007 letter.

75.    The March 14, 2007 letter from Fidelco's attorneys also advised Scottsdale that the hearing in the Arbitration was scheduled for April 17, 2007 and April 18, 2007, and if necessary April 25, 2007 and April 26, 2007.

76.    On April 5, 2007, counsel for Fidelco sent another letter to Scottsdale following-up on counsel's March 14, 2007 letter, and again reminding Scottsdale that the hearing in the Arbitration was scheduled to commence in two weeks. The letter again advised Scottsdale that Fidelco was under the reasonable expectation that insurance coverage applied to the claim.

77.    On April 26, 2007, counsel for Fidelco sent another letter to Scottsdale, by telecopy and regular mail, advising that the hearing in the Arbitration was scheduled to commence on April 26, 2007.

78.    On the eve of hearing, in order to avoid the risks and expense of a lengthy hearing, Fidelco and Bristol-Myers agreed to a settlement of Bristol-Myers' claim for the damage incurred as a direct result of Badger's failure to perform the roof replacement properly.

79.    Fidelco's counsel contacted Scottsdale's counsel and received Scottsdale's consent for Fidelco to enter into the settlement between Fidelco and Bristol-Myers, with a reservation of rights by Scottsdale and Fidelco for the claims between them.

80.    In accordance with the settlement agreement between Fidelco and Bristol-Myers, Fidelco paid Bristol-Myers $575,000 in settlement of the claims in the Arbitration.

81.    Because of Scottsdale's failure to provide a defense, Fidelco was required to participate in a lengthy and expensive Arbitration Proceeding to investigate and defend the Bristol-Myers claim and was required to fund the settlement with Bristol-Myers.

82.    There is an actual controversy between Fidelco and Scottsdale with regard to insurance coverage for the claims asserted against Fidelco by Bristol-Myers in the Arbitration.

## FIRST COUNT

83.    Fidelco repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth at length herein.

84.    The Insurance Policy issued by Scottsdale requires that Scottsdale has a duty to defend the insureds against lawsuits alleging "bodily injury" and "property damage" for which the insurance applies.

85.    The Insurance Policy issued by Scottsdale also requires that Scottsdale will indemnify the insureds for those sums the insureds are required to pay as damages because of "bodily injury" or "property damage" for which the insurance applies.

86.    The claim by Bristol-Myers against Fidelco alleged "property damage" to the Premises caused by Badger.

87.    Badger is the first named insured on the Insurance Policy.

88.    Pursuant to the Certificate of Insurance, Fidelco is an additional insured on the Insurance Policy.

89.    The claim by Bristol-Myers against Fidelco is within the insuring agreement in the Insurance Policy, and not excluded by any policy exclusions.

90.    In August 2006, Fidelco tendered the Demand for Arbitration to Scottsdale with a request for Scottsdale to defend  and indemnify Fidelco against the allegations by Bristol-Myers.

91.    Scottsdale did not respond to the notice of claim for months while the Arbitration was proceeding, requiring Fidelco to pay counsel to defend the claims by Bristol-Myers against Fidelco in the Arbitration.

92.    Months after its receipt of the notice of the claims against Fidelco in the Arbitration, Scottsdale advised that it was denying coverage for the claim.

93.    In denying and disclaiming coverage for the claims by Bristol-Myers, Scottsdale breached its obligations in the Insurance Policy.

94.    As a result of Scottsdale's conduct, Fidelco was required to defend the claims in the Arbitration, incur substantial defense costs and make payment of the settlement with Bristol-Myers in the Arbitration.

95.    Fidelco has been damaged in an amount not fully determined.

**WHEREFORE,** Somerville Fidelco Associates, L.P. demands judgment against Scottsdale Insurance Company as follows:

(i)    declaring that the insurance policy issued by Scottsdale Insurance Company to Badger Roofing Co. Inc. provides insurance coverage for the claims filed by Bristol-Myers Squibb Company against Somerville Fidelco Associates, L.P. in the Arbitration;

(ii)    declaring that Somerville Fidelco Associates, Inc. is an additional insured on the insurance policy issued by Scottsdale Insurance Company to Badger Roofing Co. Inc.;

(iii)    requiring that Scottsdale Insurance Company reimburse Somerville Fidelco Associates, L.P. for its costs incurred in the defense of the claims in the Arbitration, together with interest;

(iv)    requiring that Scottsdale Insurance Company indemnify Somerville Fidelco Associates, L.P. for the settlement in the amount of $575,000 paid by Somerville Fidelco Associates, L.P. to Bristol-Myers Squibb Company, together with interest;

(v)      requiring that Scottsdale Insurance Company pay the counsel fees and costs incurred by Somerville Fidelco Associates, L.P. in this action, together with interest;

(vi)     requiring Scottsdale Insurance Company to pay post-judgment interest;

(vii)    and any other relief as the Court may deem equitable and just.

**SECOND COUNT**
**(Bad Faith/**
**Breach of the Covenant of Good Faith and Fair Dealing)**

96.    Fidelco repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth at length herein.

97.    The Insurance Policy issued by Scottsdale contains a duty of good faith and fair dealing which requires Scottsdale to act in good faith to its insureds including Fidelco.

98.    Scottsdale has a duty and obligation to act with good faith in handling claims asserted against its insureds.

99.    Scottsdale breached its duties and obligations to Fidelco by engaging in improper conduct or omissions with regard to the insureds, including but not limited to the following:

a.    Failing for six months to respond to Fidelco's letter requesting insurance coverage for the claim by Bristol-Myers in the Arbitration, and failing to respond to the follow-up letters, and then denying coverage only weeks before the Arbitration hearing.

b.    Failing to properly investigate the claim and/or properly disclose the complete results of its investigation to Fidelco.

    c.    Failing to evaluate the insurance policy provisions in light of the facts that were discovered in the Arbitration and presented by Fidelco to Scottsdale.

    d.    Asserting certain policy exclusions as a basis for its denial of coverage even though these exclusions do not apply to this claim under New Jersey law.

100.    These acts and omissions by Scottsdale to avoid its defense and indemnity obligations pursuant to the Insurance Policy are a breach of the implied covenant of good faith and fair dealing contained in the Insurance Policy.

101.    These acts and omissions by Scottsdale are a breach of Scottsdale's duties to its insureds.

102.    As a result of this conduct, Fidelco has been damaged in an amount not fully determined.

**WHEREFORE,** Somerville Fidelco Associates, L.P. demands judgment against Scottsdale Insurance Company requiring that Scottsdale Insurance Company reimburse Somerville Fidelco Associates, L.P. for its costs incurred in the defense of and indemnification for the settlement of the claims asserted against Somerville Fidelco Associates, L.P. by Bristol-Myers Squibb Company, along with compensatory damages, consequential damages, pre- and post-judgment interest, attorneys fees and costs, and any other relief as the Court may deem equitable and just.

## CROSSCLAIM AGAINST BADGER ROOFING CO., INC.

The defendant, Somerville Fidelco Associates L.P. ("Fidelco"), by way of Crossclaim against defendant, Badger Roofing Co. Inc. ("Badger"), says as follows:

-15-

## FIRST COUNT

103.    At all times relevant to this action Fidelco was the owner of a building located at 76 Fourth Street, Somerville, New Jersey (the "Premises") which was leased to Bristol-Myers Squibb Company ("Bristol-Myers").

104.    Bristol-Myers was the exclusive occupant of the Premises and utilized the Premises to house and monitor monkeys before they were transported to other Bristol-Myers testing facilities.

105.    At some time during July and August 2005 Fidelco entered into a contract with Badger to remove and replace the existing roof at the Premises.

106.    Badger represented that it was a qualified and competent roofing contractor with experience, knowledge and expertise in removing and replacing roofs on commercial and industrial buildings.

107.    Badger proposed that it would complete all of the work necessary to remove and replace the roof at the Premises for a price of $117,650.

108.    Based on Badger's representations regarding its experience, expertise and ability as a roofing contractor, Fidelco accepted Badger's proposal and agreed to pay the price quoted by Badger.

109.    The agreement between Fidelco and Badger included the expressed and implied covenants that Badger would perform the roof removal and replacement in a competent, workmanlike manner, in compliance with applicable law and government regulations, and consistent with all established precautions and methods employed in the roofing industry.

110.    In September 2005, Fidelco started to remove the existing roof at the Premises.

111.    Contrary to the agreement with Fidelco, Badger failed to take necessary precautions, failed to comply with applicable law and regulations and failed to perform the roof removal in a competent and workmanlike manner.

112.    Badger's failure to perform the roof removal in accordance with the expressed and implied terms and covenants of its agreement with Fidelco, caused roofing debris to infiltrate the Premises which were occupied and utilized by Bristol-Myers.

113.    As a direct result of Badger's breach of its agreement with Fidelco, Bristol-Myers was required to perform a comprehensive cleanup at the Premises, incurred extraordinary expenses for security and personal protection equipment and had to pay alternative storage costs for its test monkeys.

114.    Bristol-Myers asserted a claim against Fidelco for reimbursement of the costs and expenses incurred as a consequence of Badger's failure to perform the roof removal.

115.    As a result of Badger's improper conduct, Fidelco was required to participate in a lengthy and expensive Arbitration Proceeding to investigate and defend the Bristol-Myers claim.

116.    Fidelco paid Bristol-Myers $575,000 to settle and satisfy its claim for the damages incurred as a direct result of Badger's failure to perform the roof replacement.

117.    Accordingly, Badger's breach of the expressed and implied terms and covenants in its agreement with Fidelco caused Fidelco to incur the cost and expense of defending and settling the reimbursement claim by Bristol-Myers.

**WHEREFORE,** Somerville Fidelco Associates, L.P. demands judgment on this First Count of its Crossclaim against Badger Roofing Co. Inc. for damage in an amount to be determined by the Court together with interest, counsel fees and costs of suit in this action.

## SECOND COUNT

118.    Fidelco repeats and reiterates the allegations contained in the First Count as if same were set forth at length herein.

119.    Badger represented to Fidelco that it was a qualified, experienced and capable roofing contractor with the knowledge and expertise required to remove and replace the roof at the Premises in a workmanlike manner.

120.    Consistent with the representations and proposal which Badger made to Somerville, Badger owed a duty to Fidelco and to Bristol-Myers, as the exclusive occupant of the Premises, to perform the roof removal in a competent, workmanlike manner, in compliance with all applicable laws and government regulations, and consistent with the established precautions and methods employed in the roofing industry.

121.    Badger was negligent and careless in performing the roof removal and breached its duty to Fidelco and to Bristol-Myers by causing or permitting roofing debris to infiltrate the Premises.

122.    The negligent and careless conduct of Badger was the direct and proximate cause of costs incurred by Bristol-Myers to perform a comprehensive cleanup of the Premises, and incur expenses for additional security, personal protection equipment and alternative storage facilities for test monkeys.

123.    The negligent and careless conduct of Badger was likewise the direct and proximate cause of damages sustained by Fidelco for costs and fees incurred in the Arbitration Proceeding with Bristol-Myers, and the payment necessary to settle the Bristol-Myers reimbursement claim.

124.    The costs and expenses incurred by Bristol-Myers and the damages sustained by Somerville were foreseeable consequences of Badger's failure to perform the roof removal in a careful, competent and workmanlike manner.

**WHEREFORE,** Somerville Fidelco Associates, L.P. demands judgment against Badger Roofing Co., on the Second Count of its Crossclaim for damage in an amount to be determined by the Court together with interest, counsel fees and costs of suit in this action.

### THIRD COUNT

125.    Fidelco repeats and reiterates the allegations contained in the First and Second Counts as if same were set forth at length herein.

126.    The landlord-tenant relationship between Fidelco and Bristol-Myers imputed liability to Fidelco for the damage which Bristol-Myers sustained as a result of Badger's acts or omissions at the Premises.

127.    Except for the special landlord-tenant relationship between Fidelco and Bristol-Myers, Fidelco would not be liable to Bristol-Myers for any damage caused by the acts or omissions of Badger as an independent contractor retained to remove and replace the roof at the Premises.

128.    The acts or omissions of Badger were the primary and direct cause of the damages sustained by Bristol-Myers at the Premises, and any liability which Fidelco had for such damages was secondary, imputed or vicarious.

129.    As the owner of the Premises, Fidelco was obligated to reimburse Bristol-Myers for costs and expenses incurred at the Premises, and incurred substantial counsel fees and costs in the Arbitration regarding the Bristol-Myers claim.

130.    Fidelco is entitled to indemnification from Badger for all amounts paid to Bristol-Myers together with defense costs incurred in the Arbitration.

**WHEREFORE,** Somerville Fidelco Associates, L.P. demands judgment against Badger Roofing Co., Inc. on the Third Count of its Crossclaim for indemnification in an amount equal to all sums paid to Bristol-Myers in settlement of its damage claim, together with defense costs incurred in the Arbitration, and interest, counsel fees and costs of suit in this action.

**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Metro Corporate Campus I
P.O. Box 5600
Woodbridge, New Jersey  07095
(732) 549-5600
Attorneys for Defendant
Somerville Fidelco Associates L.P.

By:    _____
                Ellen A. Silver

DATED:  October 26, 2007