UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY<br><br>Plaintiff,<br><br>V.<br><br>SOMERVILLE FIDELCO ASSOCIATES, L.P. AND BADGER ROOFING CO., INC.<br><br>Defendants<br><br>AND<br><br>SOMERVILLE FIDELCO ASSOCIATES, L.P.<br><br>Third Party Plaintiffs<br><br>V.<br><br>QUINCY MUTUAL FIRE INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY<br><br>Third Party Defendants | CIVIL ACTION NO.: 3:07-CV-02763 (AET) (TJB)<br><br>Civil Action<br><br>**STATEMENT OF MATERIAL FACTS IN SUPPORT OF QUINCY MUTUAL'S SUMMARY JUDGMENT MOTION** |

1. Somerville Fidelco owns property at 76 Fourth Street, Somerville, New Jersey. Paragraph 8 - Third Party Complaint. Exhibit 3.

2. The property was leased to Bristol Meyers Squibb. Paragraph 8 - Third Party Complaint. Exhibit 3.

3. Bristol Meyers used the facility for housing, evaluating and preparing test monkeys to be used in drug studies performed at other Bristol Meyers sites. Paragraph 8 - Third Party Complaint. Exhibit 3.

4. During the Summer of 2005 Somerville Fidelco entered into a contract with Badger Roofing to remove and replace existing roofing at the facility. Paragraph 9 – Third Party Complaint. Exhibit 3.

5. The work commenced in September of 2005. Paragraph 10 – Third Party Complaint. Exhibit 3.

6. During the work roofing debris and dust infiltrated Bristol Meyers workspace. Paragraph 10 – Third Party Complaint. Exhibit 3.

7. Bristol Meyers undertook a comprehensive cleaning of the premises and incurred costs. Paragraph 10 – Third Party Complaint. Exhibit 3.

8. Quincy Mutual issued an insurance policy which was applicable to the property. See Exhibit 5.

9. The insurance policy has certain exclusions. Please see the insurance policy. Exhibit 5.

10. Pursuant to Exclusion K the policy does not apply to property damage to "Property you own, rent or occupy." Exhibit 5. See also Exhibit 11.

11. The policy also contains an absolute asbestos exclusion which provides "in consideration of the premium charged, it is agreed that the insurance provided by this policy shall not apply to any loss, claim or expense caused by or resulting from or arising out of asbestos, exposure to asbestos or any product containing asbestos. Exhibit 5. see also Exhibit 10.

12. Bristol Meyers filed a demand for arbitration. The nature of the dispute is listed as "claim for breach of commercial lease by tenant against landlord arising out of asbestos contamination at leased premises, located in Somerville, New Jersey caused by landlord's roofing contractor. Exhibit 9.

13. Attached as Exhibit 14 is Arbitration Brief of Bristol Meyers.

14. It was their argument that as a result of Badger Roofing's removal activities there was asbestos infiltration. Page 2 of Exhibit 14.

15. It is their argument that the asbestos infiltration affected Bristol Meyers's in a number of respects. This included concern about human exposure. Exhibit 14, page 2.

16. The second concern was the monkey's potential exposure to asbestos dust which would affect the drug testing. Exhibit 14, page 3.

17. The roofing job that had been started by Badger had to be completed. At Bristol Meyers insistence the roofing job was suspended until an asbestos removal company, Slavco was retained. Exhibit 14, page 3.

18. The asbestos contamination at the facility had to be addressed. This included a gross contamination of the facility and that a more extensive clean up after the roofing work was completed. Exhibit 14, page 3.

19. Bristol Meyers also had to address the impact of the asbestos contamination on its operations. Exhibit 14, page 3.

20. Much of the Arbitration Brief submitted by Bristol Meyers deals with asbestos issues.  See Exhibit 14.

21. Bristol Meyers argued that Somerville's liability was for the asbestos contamination.  Exhibit 14, page 14.

22. In discussing their damages Bristol Meyers argued that their clean up cost totaling $449,981.00 was for asbestos clean up.  Page 15 of Brief.  Exhibit 14, page 15.

23. There was an item of $224,210 for animal care and lodging costs for the monkeys.   Exhibit 14, page 16.

24. They also sought a rent abatement.  Exhibit 14, page 17.

25. Bristol Meyers damages are documented at Exhibit 16.

26. Single largest item at $283,000 is listed as asbestos debris clean up.  Exhibit 16.

27. Barry Ages, Director of Operations for Somerville Fidelco talks about the asbestos work in a letter dated October 26, 2005.  (See Exhibit 17)

28. An asbestos abatement monitoring report was prepared by Environmental Health Investigations.  (See Exhibit 18)

29. Bristol Meyers' expert, Eagle issued reports in connection with the Arbitration.  (See Exhibit 19)

30. It is noted that asbestos containing roofing materials contaminated the interior space of the Bristol Meyers Squibb facility located at 76 Fourth Street, Somerville.  Exhibit 19, page 1.

31. Eagle evaluated the facility on September 24, 2005 and some of their samplings were positive for asbestos. Exhibit 19, page 4.

32. The report points out that once it was demonstrated that the dust and roofing debris had entered the facility as a result of Badger's roof work contained asbestos that it become friable and some point, all dust and roofing debris that entered the facility needed to be contained and cleaned up in order to prevent building occupants from being exposed to and redistributing the materials. Exhibit 19, page 13.

33. The report also points out that it was appropriate for Bristol Meyers to approve a scope of work that required all of the dust and debris that entered the facility as though they were materials that contained asbestos. Exhibit 19, page 13.

34. Barry Ages testified that Somerville Fidelco and Schenkman Kushner Associates were affiliated companies. Exhibit 20, page 9.

35. He has been director of operations for 23 years and oversees approximately 3,000,000 square feet of mixed use space. Exhibit 20, page 10.

36. He testified that Badger was hired to replace the roof. Exhibit 20, page 17.

37. He was contacted and told that there was a lot of debris and there was a discussion about asbestos. Exhibit 20, page 37.

38. It is his understanding that there was a report saying that there was asbestos containing material. Exhibit 20, page 42.

39. A contractor who was well versed in asbestos removal materials was brought in to work on the roof. Exhibit 20, page 47, 48.

40. David Burkhardt is an industrial hygienist for Eagle. He has been one for 30 years. Exhibit 21, page 4.

41. He was brought in by Barbara Owen of Bristol Meyers Squibb. He was told that asbestos was involved. Exhibit 21, page 5.

42. On his inspection he observed debris within the building. Exhibit 21, page 8.

43. Sampling identified asbestos in the building. Exhibit 21, pages 17 to 20.

44. Sampling of the roof that had not been removed also identified asbestos. Exhibit 21, Page 32.

45. The debris presented the risk that asbestos fibers would get loose and be potentially dangerous. Exhibit 20, page 40.

46. He went on to discuss the cleaning procedures and it is clear that this site was treated as containing hazardous materials. Exhibit 21, page 45.

47. John Chapman is the Associate Director of Corporate Real Estate for Bristol Meyers. Exhibit 22, page 4.

48. There was problems with the roof on the building and it was the landlord's responsibility to fix the roof. Exhibit 22, page 8.

49. John Deck is responsible for the overall operation of the Somerville site. Exhibit 23, page 4.

50. There was problems with the roof which was leaking. Exhibit 23, page 8

51. Roofing material got into the building. Exhibit 23, page 18.

52. Environmental Services got involved and Eagle Environmental was brought in. Exhibit 23, pages 26 to 28.

53. He was advised that there was asbestos containing materials in the facility. Exhibit 23, page 28, line 20.

54. The entire building was designated as an area that needed protective equipment. They took a conservation approach. Exhibit 23, page 41.

55. Because the entire building was deemed hazardous their ongoing functions of the building were affected. Exhibit 23, page 49. They were not back up and running completely until April of 2006. Exhibit 23, page 49, line 16.

56. Because of all the problems they could not take deliveries of animals that had already been ordered which in turn led to the excessive storage charges. Exhibit 23, page 51, line 12.

57. Barbara Owen works for Environmental Health & Safety with Bristol Meyers. Exhibit 24, page 4.

58. Once John Deck called in the dust situation she was in charge of running it from an EHS perspective. Exhibit 24, page 5.

59. Because the animals are in quarantine special precautions are required. Exhibit 24, page 8.

60. Because of positive samples Eagle Industrial and Bristol Environmental were brought in. Exhibit 24, page 19.

61. Once samples came back positive for asbestos they took the conservative approach and acted under the assumption that asbestos containing materials had entered the building. Exhibit 24, page 20.

62. The building had to be decontaminated. Exhibit 24, page 21, line 25.

63. They had to develop protocols to deal with the contamination. Exhibit 24, page 26.

64. It was a big business interruption. They had to get as many animals off site as they could and they had to postpone the delivery of new animals. Exhibit 24, page 28.

65. It was established that there was contamination throughout the building. Exhibit 24, page 28, line 18.

66. Their employees were very concerned that they had been exposed to asbestos. Exhibit 24, page 52, line 13.

67. They had to wipe down every inch of the facility and be very careful that all asbestos containing material was completely cleaned up. Exhibit 24, page 55.

68. Once they know asbestos containing material entered the building the assumption has to be that they were cleaning up asbestos containing material during both the initial gross contamination and the later more detailed decontamination. She was comfortable assuming

that there was asbestos containing material mixed in with the dust and debris.  Exhibit 24, page 57.

69.    Robert Post is a facility supervisor.  Exhibit 25, page 4.

70.    He was there until the clean up was completed and the building was certified asbestos free.  Exhibit 25, page 27, line 10.

71.    Michael Solokoff is general manager of Slavco Construction.  Exhibit 26, page 8.

72.    They were called in September by Badger Roofing to give a price for asbestos abatement of the roof.  Exhibit 26, page 17, line 24.

73.    They were called in to remove approximately 7,000 square feet of asbestos containing roofing material.  Exhibit 26, pPage 20, line 23.

74.    Work procedures were done because this was an asbestos roof.  Exhibit 26, page 37.

75.    When this claim was presented to Quincy Mutual they disclaimed based upon the asbestos exclusion.  Exhibit 10.

76.    After the claim was resubmitted by Somerville Fidelco closer to the time the arbitration was settled in the spring of 2007 it was also pointed out that owned property exclusion was also applicable.  Exhibit 11.

77.    This litigation actually commenced with Badger's carrier, Scottsdale seeking a declaration that it had no obligation to provide coverage.  Exhibit 1.

78. Somerville Fidelco has presented claims over against Badger. Exhibit 2.

79. They also commenced this third party action against Quincy seeking coverage under the Quincy policy.   Exhibit 3.

**METHFESSEL & WERBEL, ESQS.**
Attorneys for Quincy Mutual Fire Insurance Company

By:_____
    Fredric Paul Gallin

DATED: October 8, 2009