EXHIBIT 1

**BUDD LARNER**
A PROFESSIONAL CORPORATION
SUSANNA J. MORRIS, ESQ.
I.D. NO. SM0080
1939 ROUTE 70 EAST, SUITE 100
CHERRY HILL, NEW JERSEY 08003
(856) 874-9500
(856) 874-9660 FAX

ATTORNEYS FOR PLAINTIFF,
SCOTTSDALE INSURANCE COMPANY

---

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

---

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, : | CIVIL ACTION NO. |
|         Plaintiff, : | _____ |
| : | |
| Vs. : | |
| : | |
| SOMERVILLE FIDELCO ASSOCIATES, : | **COMPLAINT FOR** |
| L.P., and BADGER ROOFING CO., : | **DECLARATORY JUDGMENT** |
| INC., : | |
| : | |
|         Defendants. : | |

---

Plaintiff, Scottsdale Insurance Company ("Scottsdale"), by its

attorneys, Budd, Larner, P.C., by way of Complaint for Declaratory

Judgment against defendants, Somerville Fidelco Associates, L.P.

("Fidelco"), and Badger Roofing Co., Inc., ("Badger"), states as

follows:

58591

## NATURE OF ACTION AND RELIEF SOUGHT

1.    This is an action to determine the rights and liabilities of the parties pursuant to a Policy of Insurance issued by plaintiff to defendant Badger.

2.    There is now existing between the parties an actual controversy for which the plaintiff is entitled to have a declaration of its rights pursuant to 28 U.S.C. §§ 2201 and 2202.

3.    Joined as parties are all of those persons necessary for a just and complete adjudication of the dispute between the plaintiff and defendants.

## THE PARTIES

4.    Scottsdale is a wholly owned subsidiary of Nationwide Mutual Insurance Company, and is a corporation organized and existing under the laws of the State of Arizona, with its administrative office located at 8877 North Gainey Center Drive, Scottsdale, Arizona.

5.    Upon information and belief, defendant Fidelco's principal place of business is 520 U.S. Highway 22 East, Bridgewater, New Jersey.

6.    Defendant Badger is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 5 Smalley Avenue, Middlesex, New Jersey.

58591                                        2

## JURISDICTION AND VENUE

7.    This court has jurisdiction under 28 U.S.C. § 1332(a)(2) by reason of diversity of citizenship between the parties.  The value of the matter in controversy exceeds $75,000, exclusive of interest and costs.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and 1391(c) because it is the district in which a substantial part of the events occurred, and which the defendants reside.

## THE FACTS

9.    Scottsdale issued a Policy of Insurance, bearing Policy Number BCS0010238 ("the Policy") to defendant Badger, and said Policy had effective dates of May 1, 2005, to May 1, 2006.  A copy of the Policy and Declaration Page is attached hereto as Exhibit A, and is incorporated by reference.

10.    Fidelco is the owner of certain premises located at 76 Fourth Street, Somerville, New Jersey.  Said premises is occupied by Bristol-Myers Squibb Company, pursuant to a Lease Agreement between it and Fidelco.

11.    On or before September 2005, Fidelco contracted with Badger to do certain roofing work on the premises located at 76 Fourth Street, Somerville, New Jersey.

12.    During the course of this work, asbestos was discovered in the roof.

58591                                              3

13.   Upon   discovering   the   asbestos,   Badger   ceased   its
operations,  and  another  contractor  was  retained  by  Fidelco  to
remove the asbestos.

14.   Bristol-Myers Squibb contended that it was prevented from
conducting its business at the subject premises during the period
the asbestos was removed.

15.   As a result, Bristol-Myers Squibb alleged it suffered
certain monetary damages.

16.   As a consequence, on or about August 4, 2006, Bristol-
Myers Squibb made a Demand for Arbitration as against Fidelco.
(See Demand for Arbitration, which is attached hereto as Exhibit
B.)

17.   The Demand for Arbitration specifies that the nature of
the dispute is a "Claim for breach of commercial lease by tenant
against landlord arising out of asbestos contamination at lease
premises (located in Somerville, New Jersey) caused by landlord's
roofing contractor."    The dollar amount claimed is $734,175.
(Exhibit B.)

18.   Under cover of letter dated August 17, 2006, Fidelco made
a request to Scottsdale to be defended and indemnified as an
additional insured under Scottsdale's Policy issued to defendant
Badger with regard to the claim made against Fidelco by Bristol-
Myers Squibb. (See correspondence from Ellen A. Silver, Esquire,

58591                                4

counsel for Somerville Fidelco Associates, dated August 17, 2006, which is attached hereto as Exhibit C.)

19.    Under cover of letter dated September 6, 2006, Scottsdale wrote to Badger and requested copies of all contracts and/or agreements between Badger and Fidelco with regard to the roofing work done at 76 Fourth Street, Somerville, New Jersey.    (See correspondence dated September 6, 2006, from Scottsdale to Scott Badger, which is attached hereto as Exhibit D.)

20.    Badger did not send to Scottsdale the requested contracts or agreements.

21.    Under cover of letter dated September 7, 2006, Scottsdale sent to Badger a Reservation of Rights Letter.    (See correspondence dated September 7, 2006, from Scottsdale to Badger, which is attached hereto as Exhibit E.)

22.    Under cover of letter dated January 31, 2007, Scottsdale wrote to Fidelco and requested copies of the written contract between it and Badger with regard to the roofing work to be done at 76 Fourth Street, Somerville, New Jersey, and also provided to Fidelco copies of its letters to Badger dated September 7, 2006, and January 31, 2007. (See Scottsdale correspondence dated January 31, 2007, to Fidelco, attached hereto as Exhibit F.)

23.    In addition, Scottsdale advised Fidelco: that because it was not a named insured on the Policy, that because Scottsdale had not been provided a written contract between Fidelco and Badger,

58591                                    5

and that because the Policy did not provide coverage for asbestos-related claims, there was no coverage under the Policy.

24.   The Scottsdale January 31, 2007, letter to Badger advised that because the claim at issue in the arbitration arises out of asbestos, no coverage existed under its Policy. (See Scottsdale's letter dated January 31, 2007, to Badger, which is attached hereto as Exhibit G.)

25.   Despite repeated requests for copies of the contract documents between Fidelco and Badger with regard to the roofing work for 76 Fourth Street, Somerville, New Jersey, neither Badger nor Fidelco has provided Scottsdale with same.

### COUNT ONE

### Fidelco is not an additional insured under Scottsdale's Policy.

26.   Plaintiff repeats and realleges the allegations made in paragraphs 1 through 25 of the Complaint as if set forth at full length herein.

27.   The named insured in the Policy is Badger Roofing Company, Inc.

28.   Fidelco is not named in the Policy as an additional insured.

29.   The Policy has an endorsement entitled **ADDITIONAL INSURED-OWNERS, LEASEES OR CONTRACTORS, AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**.  (Exhibit A.)

58591                                          6

30.    This endorsement in pertinent part states as follows:

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A.    **Section II - Who is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.    Your acts or omissions; or
2.    The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

31.    Fidelco has failed to provide to Scottsdale a copy of any written contract or agreement that existed between it and Badger with regard to the roofing work to be done at 76 Fourth Street, Somerville, New Jersey.

32.    Because Fidelco has failed to demonstrate that it qualifies as an additional insured, as that term is defined by the Policy, it is not entitled to either a defense or coverage under the Policy.

58591

7

WHEREFORE, plaintiff Scottsdale Insurance Company requests judgment by this Court as follows:

1.   Determining that Fidelco is not an additional insured under the Scottsdale Policy and, as such, Scottsdale has no obligation under the Policy to defend or indemnify Fidelco for the claim made against it by Bristol-Myers Squibb;

2.   Awarding plaintiff its costs and disbursements; and

3.   For such other relief as this Court may deem just and proper.

COUNT TWO

**Neither Fidelco nor Badger is entitled to coverage under the Policy for the claim made by Bristol-Myers Squibb.**

33.   Plaintiff repeats and realleges the allegations made in paragraphs 1 through 32 of the Complaint as if set forth at full length herein.

34.   Included as part of the Policy is an endorsement entitled **ASBESTOS EXCLUSION**.

35.   This endorsement states the following:

The coverage afforded by this policy does not apply to bodily injury, personal injury or property damages arising out of:

1.   Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

58591

8

2.    The use of Asbestos in construction or manufacturing any good, product or structure; or

3.    The removal of asbestos from any good, product or structure; or

4.    The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by the policy does not apply to payment for the investigation or defense or any loss, injury or damage or any cost, fine or penalty or for any expense of claim or suit related to any of the above.

36.    In addition, the Policy contains an endorsement entitled **TOTAL POLLUTION EXCLUSION ENDORSEMENT**.  This provision reads in part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.    Pollution**
     **(1)**    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

58591                                    9

37.  **Section V-Definitions** at **15**. states: "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

38.  The Demand for Arbitration made by Bristol-Myers Squibb specifies that its claim arises "out of asbestos contamination at lease premises (located in Somerville, New Jersey) caused by landlord's roofing contractor."

39.  The Policy's Asbestos Exclusion and Total Pollution Exclusion bar coverage to Fidelco and Badger with regard to the claim made by Bristol-Myers Squibb.

WHEREFORE, plaintiff Scottsdale Insurance Company requests judgment by this Court as follows:

1.  Determining that plaintiff has no obligation under the Policy to defend or indemnify the defendants for the claim made by Bristol-Myers Squibb;

2.  Awarding plaintiff its costs and disbursements; and

3.  For such other relief as this Court may deem just and proper.

### COUNT THREE

**The Policy provides no coverage for breach of contract.**

58591

10

40.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 39 of the Complaint as if set forth at full length herein.

41.    Bristol-Myers Squibb's Demand for Arbitration specifies that it is a "claim for breach of commercial lease by tenant against landlord...."

42.    The **COMMERCIAL GENERAL LIABILITY COVERAGE FORM Section I Coverages, 2. Exclusions** states in part:

> This insurance does not apply to:
>
> **b.    Contractual Liability**
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

43.    The breach of contract claim made by Bristol-Myers Squibb is excluded from coverage by the Policy.

WHEREFORE, plaintiff Scottsdale Insurance Company requests judgment by this Court as follows:

1.    Determining that plaintiff has no obligation under the Policy to defend or indemnify the defendants for the breach of contract claim made by Bristol-Myers Squibb;

2.    Awarding plaintiff its costs and disbursements; and

3.    For such other relief as this Court may deem just and proper.

## COUNT FOUR

58591

11

**The Policy's exclusions bar coverage to defendant Badger**.

44.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 43 of the Complaint as if set forth at full length herein.

45.    The **COMMERCIAL GENERAL LIABILITY COVERAGE FORM Section I-Coverages, 2. Exclusions,** states the following in pertinent part:

This insurance does not apply to:

j.    **Damage To Property**

"Property damage" to:

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

k.    **Damage To Your Product**
"Property damage" to "your product" arising out of it or any part of it.

l.    **Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

58591                                12

46.    Exclusions j(5), j(6), k, and l bar coverage to defendant Badger with regard to claims arising from its work at the premises located at 76 Fourth Street, Somerville, New Jersey.

WHEREFORE, plaintiff Scottsdale Insurance Company requests judgment by this Court as follows:

1.    Determining that plaintiff has no obligation under the Policy to defend or indemnify defendant Badger for any claims arising from its work on the premises of 76 Fourth Street, Somerville, New Jersey;

2.    Awarding plaintiff its costs and disbursements; and

3.    For such other relief as this Court may deem just and proper.

**BUDD LARNER, P.C.**
ATTORNEYS FOR PLAINTIFF,
SCOTTSDALE INSURANCE COMPANY

BY: S/ SUSANNA J. MORRIS (SM0080)

DATED: June 13, 20007

58591                                        13

**EXHIBIT A**

PART 1

| Renewal of Number | | Policy Number |
|---|---|---|
| NEW | | BCS0010238 |

### 🏛 SCOTTSDALE INSURANCE COMPANY®

R/B BCS0012871

Home Office:
One Nationwide Plaza - Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 (outside Arizona)
A STOCK COMPANY

NJ Transaction Code:
F0301-05-00372

## COMMON POLICY DECLARATIONS

**Item 1.    Named Insured and Mailing Address**

BADGER ROOFING CO. INC.
5 SMALLEY AVE
MIDDLESEX NJ 08846

**Agent Name and Address**

CRC INSURANCE SERVICES INC
570 W MT PLEASANT AVE STE 100
LIVINGSTON NJ 07039-1619

Agent No. 29718          Program No.:    NONE

| Item 2:  Policy Period | From:    05-01-05 | To:    05-01-06 | Term: 1    Year |
|---|---|---|---|

12:01 A.M., Standard Time at your mailing address

Business Description:    ROOFING CONTRACTOR

~~BROKERAGE~~
CASUALTY

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | $ | 110,000.00 |
| Commercial Property Coverage Part | $ | NOT COVERED |
| Commercial Crime Coverage Part | $ | NOT COVERED |
| Commercial Inland Marine Coverage Part | $ | NOT COVERED |
| Commercial Auto (Business Auto or Truckers) Coverage Part | $ | NOT COVERED |
| Commercial Garage Coverage Part | $ | NOT COVERED |
| Professional Liability Coverage Part | $ | NOT COVERED |
| | $ | |
| | $ | |
| | $ | |
| Total Policy Premium | $ | 110,000.00 |
| | $ | |
| Total Taxes, Surcharges or Fees | $ | 135.00 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

*Richard J Schmitz*

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

OPS-D-1 (12-00)

Home Office Copy

COMPANY ISSUED
POLICY

**SCOTTSDALE INSURANCE COMPANY®**

**GENERAL LIABILITY PROCESSING FORM**

PF14—HEADER

2ND POLICY HEADER SCREEN

Coverage Part: 001    ☐ Claims Made

Limits for Self Insured Retention:
☐ Simplified—See Schedule
☐ Non-Simplified
☐ CSL
☐ BI

NO TERRORISM

PF14—COVERAGE

Location Subtotals

Comments
Enc't #: $135   Insp.

INSPECTION STAMP

☐ OVER

| CODING | ENTRY | FILE |
|--------|-------|------|
|        |       |      |



SCOTTSDALE INSURANCE COMPANY®

## Policy Trail Log

Named Insured: **Badger Roofing Co., Inc.**

Operations: _____

Expected number of claims: **2**    Expected aggregate: $ **38,846**    Deductible/SIR: $ **5,000**

| Policy Number | Term | Premium | No. of Losses | Dollar Amount Paid | Loss Ratio |
|---|---|---|---|---|---|
| BCS0010238 | 5-1-05/06 | 110,000 | | | |
| BCS0012871 | 5-1-06/07 | 110,000 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Initials | Date | Claim No. | Date of Loss | Report Date | Reserve or Paid | Recovery | Type of Loss & Description |
|---|---|---|---|---|---|---|---|
| UND | | | | | | | |
| MGR | | | | | LAE | | |
| UND | | | | | | | |
| MGR | | | | | LAE | | |
| UND | | | | | | | |
| MGR | | | | | LAE | | |
| UND | | | | | | | |
| MGR | | | | | LAE | | |
| UND | | | | | | | |
| MGR | | | | | LAE | | |
| UND | | | | | | | |
| MGR | | | | | LAE | | |
| UND | | | | | | | |
| MGR | | | | | LAE | | |

ADM-30 (12-92)

| Initials | Date | Claim No. | Date of Loss | Report Date | Reserve or Paid | Recovery | Type of Loss & Description |
|---|---|---|---|---|---|---|---|
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |
| U N D | | | | | | | |
| M G R | | | | | LAE | | |

ADM-30a (12-92)

### SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF TAXES, SURCHARGES OR FEES

Policy No. BCS0010238                    Effective Date: 05-01-05
                                                       12:01 A.M., Standard Time
Named Insured BADGER ROOFING CO. INC.    Agent No. 29718

OPS-D-1 (cont.)

    TAXES/SURCHARGES/FEES DETAILED BREAKDOWN :

    INSPECTION FEE                              $        135.00
                                                          --------------
    TOTAL TAXES/SURCHARGES                       $        135.00

 SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. BCS0010238                          Effective Date: 05-01-05
                                                    12:01 A.M., Standard Time
Named Insured BADGER ROOFING CO. INC.          Agent No. 29718

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| UTS-COVPG | 01-05 | COVER PAGE |
| OPS-D-1 | 12-00 | COMMON POLICY DECLARATIONS |
| UTS-126L | 10-93 | SCHEDULE OF TAXES, SURCHARGES OR FEES |
| UTS-SP-2L | 12-95 | SCHEDULE OF FORMS & ENDORSEMENTS |
| UTS-SP-3 | 08-96 | SCHEDULE OF LOCATIONS |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 07-02 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| UTS-74G | 08-95 | PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION |
| UTS-9G | 05-96 | SERVICE OF SUIT CLAUSE |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| CLS-SD-1L | 08-01 | COMMERCIAL LIABILITY COVERAGE PART DEC |
| CLS-SP-1L | 10-93 | GENERAL LIABILITY COVERAGE PART-EXT. |
| GLS-103S | 09-02 | DESIGNATED OPERATIONS EXCLUSION |
| GLS-230S | 01-03 | MIN & ADV PREM\MIN EARNED CANC ENDT |
| CG 00 01 | 10-01 | COMMERCIAL GENERAL LIABILITY COV FORM |
| CG 00 62 | 12-02 | WAR LIABILITY EXCLUSION |
| CG 00 67 | 03-05 | EXCL-VIOL OF STATS THAT GOVERN EMAIL FAX |
| CG 20 33 | 07-04 | ADDL INS - OWNERS, LESSEES OR CONTR'S |
| CG 21 34 | 01-87 | EXCL-DESIGNATED WORK |
| CG 21 35 | 10-01 | EXCL-COV C-MEDICAL PAYMENTS |
| CG 21 47 | 07-98 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 | 09-99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG 21 53 | 01-96 | EXCL - DESIGNATED ONGOING OPERATIONS |
| CG 21 67 | 12-04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 75 | 12-02 | EXCL CERTIF ACTS OF TERRORISM & OTHR ACT |
| CG 21 86 | 12-04 | EXCL-EXTERIOR INSULATION & FINISH SYSTEM |
| CG 21 96 | 03-05 | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG 22 79 | 07-98 | EXCL-CONTRACTORS-PROF LIAB |
| CG 24 26 | 07-04 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 25 03 | 03-97 | DESIGNATED CONSTRUCTION PROJECTS GENERAL |
| CG 26 20 | 10-93 | NJ CHANGES - LOSS INFORMATION |
| GLS-148S | 06-99 | LIABILITY DEDUCTIBLE (PER OCC/OFF) |
| GLS-152S | 12-96 | AMENDMENT TO OTHER INS CONDITION |
| GLS-169S | 05-03 | EMPLOYEE BENEFIT LIABILITY |
| GLS-58S | 12-93 | LEAD CONTAMINATION EXCLUSION |
| GLS-71S | 07-97 | LEASED WORKERS AMENDATORY ENDT. |
| GLS-74S | 11-01 | AMENDMENT OF CONDITIONS |
| UTS-131G | 03-92 | ASBESTOS EXCLUSION |
| UTS-301G | 07-02 | SUBSIDENCE EXCLUSION |
| GLS-30S | 08-04 | CONTRACTORS SPECIAL CONDITION |

UTS-SP-2L (12-95)                   Home Office Copy

 SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF LOCATIONS

Policy No. BCS0010238

Effective Date: 05-01-05
12:01 A.M., Standard Time

Named Insured BADGER ROOFING CO. INC.

Agent No. 29718

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 001 | | 5 SMALLEY AVE MIDDLESEX, NJ 08846-0000 | |

UTS-SP-3 (8-96)                    Home Office Copy

| | ENDORSEMENT |
|---|---|
| SCOTTSDALE INSURANCE COMPANY® | NO._____ |

| Attached to and forming a part of | Endorsement Effective Date 05-01-05 |
|---|---|
| Policy No. BCS0010238 | 12:01 A.M., Standard Time |
| Named Insured BADGER ROOFING CO. INC. | Agent No. 29718 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

_____    /_____
AUTHORIZED REPRESENTATIVE                    DATE

UTS-74g (8-95)                          Home Office Copy

| | |
|---|---|
| ⚖ SCOTTSDALE INSURANCE COMPANY® | **ENDORSEMENT**<br>**NO.** _____ |
| Attached to and forming a part of<br>Policy No. BCS0010238<br>Named Insured BADGER ROOFING CO. INC. | Endorsement Effective Date 05-01-05<br>12:01 A.M., Standard Time<br>Agent No. 29718 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

COMMISSIONER OF INSURANCE
_____

20 W STATE ST
_____

TRENTON, NJ    08625
_____

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

_____

RECIPIENT NOT REQUIRED
_____

_____

_____    /_____
AUTHORIZED REPRESENTATIVE    DATE

UTS-8g (5-96)

Home Office Copy

 SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No. BCS0010238

Effective Date: 05-01-05
12:01 A.M., Standard Time

Named Insured  BADGER ROOFING CO. INC.

Agent No.  29718

### Item 1. Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $ 1,000,000 | Products/Completed Operations Aggregate |
| | $ 2,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ 1,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $ 100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ NOT COVERED | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |

### Item 2. Form of Business and Location of Premises

Form of business: ROOFING CONTRACTOR

☐ Individual  ☐ Partnership  ☐ Joint Venture  ☐ Trust  ☐ Limited Liability Company
☒ Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:

**See Schedule of Locations**

### Item 3. Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

### Item 4. Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | 110,000.00 |
| Other Premium: | $ | |
| Total Premium: | $ | 110,000.00 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

CLS-SD-1L (08/01)

ADVANCE COPY

 SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0010238

Named Insured BADGER ROOFING CO. INC.

Effective Date: 05-01-05
12:01 A.M., Standard Time

Agent No. 29718

| Prem. No. 001 | Bldg. No. | Class Code 18437 | Exposure IF ANY | Basis GROSS SALES/NEAREST THOUSAND | |
|---|---|---|---|---|---|
| Class Description: STORES - NO FOOD OR DRINK - OTHER THAN NOT-FOR-PROFIT | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 7.090 | |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | 3.154 | |
| Prem. No. 001 | Bldg. No. | Class Code 91342 | Exposure $      50,200 | Basis PAYROLL/NEAREST THOUSAND | |
| Class Description: CARPENTRY | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 102.852 | 5,163 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | 40.609 | 2,039 |
| Prem. No. 001 | Bldg. No. | Class Code 91585 | Exposure $     165,505 | Basis TOTAL COST/NEAREST THOUSAND | |
| Class Description: CONTRACTORS - SUBCONTRACTED WORK - IN CONNECTION WITH CONSTRUCTION, RECONSTRUCTION, REPAIR OR ERECTION OF BUILDINGS | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 3.191 | 528 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | 10.217 | 1,691 |
| Prem. No. 001 | Bldg. No. | Class Code 97447 | Exposure $      27,226 | Basis PAYROLL/NEAREST THOUSAND | |
| Class Description: MASONRY | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 76.297 | 2,077 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | 14.503 | 395 |

CLS-SP-1L (10-93)

Home Office Copy



## SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0010238

Effective Date: 05-01-05
12:01 A.M., Standard Time

Named Insured BADGER ROOFING CO. INC.

Agent No. 29718

| Prem. No. 001 | Bldg. No. | Class Code 98677 | Exposure $ 224,898 | Basis PAYROLL/NEAREST THOUSAND | |
|---|---|---|---|---|---|
| Class Description: ROOFING – COMMERCIAL | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 322.517 | 72,533 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | 62.475 | 14,051 |
| Prem. No. 001 | Bldg. No. | Class Code 98678 | Exposure IF ANY | Basis PAYROLL/NEAREST THOUSAND | |
| Class Description: ROOFING – RESIDENTIAL | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 296.367 | |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | 92.788 | |
| Prem. No. 001 | Bldg. No. | Class Code 98884 | Exposure $ 199,232 | Basis PAYROLL/NEAREST THOUSAND | |
| Class Description: SHEET METAL WORK – OUTSIDE | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 37.772 | 7,525 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | 10.583 | 2,108 |
| Prem. No. | Bldg. No. | Class Code 49950 | Exposure | Basis | |
| Class Description: ADDITIONAL INTEREST: BLANKET CG 20 33 | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | | 1,140 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |

CLS-SP-1L (10-93)

Home Office Copy

 SCOTTSDALE INSURANCE COMPANY®

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
# EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. BCS0010238                          Effective Date: 05-01-05
                                                                  12:01 A.M., Standard Time
Named Insured BADGER ROOFING CO. INC.          Agent No. 29718

| Prem. No.    Bldg. No. | Class Code 73444 | Exposure | Basis | |
|---|---|---|---|---|
| Class Description: **EMPLOYEE BENEFITS** | | | Premises/Operations | |
| | | | Rate | Premium |
| | | | | 750 |
| | | | Products/Comp Operations | |
| | | | Rate | Premium |
| | | | | |

| Prem. No.    Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|
| Class Description: | | | Premises/Operations | |
| | | | Rate | Premium |
| | | | | |
| | | | Products/Comp Operations | |
| | | | Rate | Premium |
| | | | | |

| Prem. No.    Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|
| Class Description: | | | Premises/Operations | |
| | | | Rate | Premium |
| | | | | |
| | | | Products/Comp Operations | |
| | | | Rate | Premium |
| | | | | |

| Prem. No.    Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|
| Class Description: | | | Premises/Operations | |
| | | | Rate | Premium |
| | | | | |
| | | | Products/Comp Operations | |
| | | | Rate | Premium |
| | | | | |

CLS-SP-1L (10-93)                    Home Office Copy

| | ENDORSEMENT<br>NO. _____ |
|---|---|
| SCOTTSDALE INSURANCE COMPANY® | |

| Attached to and forming a part of | Endorsement Effective Date  05-01-05 |
|---|---|
| Policy No.   BCS0010238 | 12:01 A.M., Standard Time |
| Named Insured  BADGER ROOFING CO. INC. | Agent No.   29718 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### DESIGNATED OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
HOSPITAL PROFESSIONAL LIABILITY COVERAGE FORM
ERRORS AND OMISSIONS COVERAGE PART
PROFESSIONAL LIABILITY INSURANCE
BEAUTY PARLOR/BARBER SHOP PROFESSIONAL LIABILITY INSURANCE**

#### SCHEDULE

| Description of excluded operations: |
|---|
| 1.) ALL WATERPROOFING OPERATIONS AND/OR |
| 2.) USE OF EXPLOSIVES BY OR ON BEHALF OF AN INSURED AND/OR |
| 3.) FIRE SPRINKLER SYSTEM INSTALLATION, SERVICE OR REPAIR BY<br>    EMPLOYEES OF ANY INSURED |

This insurance does not apply to any **medical incident**, "damages," "bodily injury," "property damage," or
"personal and advertising injury" arising out of the operations shown in the schedule above.

_____    ____/_____

AUTHORIZED REPRESENTATIVE            DATE

GLS-103s (9-02)

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

Attached to and forming a part of

Policy No.   BCS0010238

Named Insured  BADGER ROOFING CO.  INC.

Endorsement Effective Date  05−01−05
12:01 A.M., Standard Time

Agent No.    29718

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM/MINIMUM EARNED CANCELLATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

### SCHEDULE

MINIMUM PREMIUM $     93,500

Item 5. Premium Audit Condition of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV - LIQUOR LIABILITY CONDITIONS** and **SECTION IV - PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS** is replaced by:

**5.  Premium Audit**

  a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  b.  Premium shown in this Coverage Part as Advance Premium is a deposit premium only. At the close of each audit period we will compute the Earned Premium for that period and a billing notice of any Audit Premium due will be sent to the first Named Insured. The due date for the Audit Premium is the date shown as the due date on the bill. If the sum of the Advance Premium and Audit Premiums is greater than the Earned Premium, we will return the excess to the first Named Insured, subject to us retaining a Minimum Premium as shown above in the Schedule, including any premium adjustments made by endorsement to this policy during the policy period.

  c.  The first Named Insured must keep records of the information we need for premium computation, and provide us or our representative copies at such times as we may request. In the event the first Named Insured fails or refuses to allow us or our representative to audit your records, we may unilaterally charge an Audit Premium for the policy period at or up to double the Minimum or Advance Premium, whichever is greater, and such Audit Premium shall be immediately due and payable on notice to the first Named Insured.

  d.  If you request cancellation of this Coverage Part or policy, we will retain not less than twenty-five percent (25%) of the Advance Premium.

For purposes of this endorsement, the terms Advance Premium, Audit Premium, Earned Premium and Minimum Premium are defined as follows:

  Advance Premium means the premium for this Coverage Part that is stated in the policy declarations and payable in full by the first Named Insured at the inception of the policy.

GLS-230s (1-03)

Page 1 of 2

Home Office Copy

Audit Premium means the premium for this Coverage Part that is developed by calculating the difference between the Advance Premium and the Earned Premium.

Earned Premium means the premium for this Coverage Part that is developed by applying the rate(s) in the policy to the actual premium basis for the audit period.

Minimum Premium means the lowest premium for which this Coverage Part will be written for the policy period.

_____  /  _____
AUTHORIZED REPRESENTATIVE        DATE

POLICY NUMBER: BCS0010238                                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:** Option #4

All of "your work" that both:

1. Is neither in whole or in part within the states of Arizona, California, Colorado, Hawaii, Louisiana, Nevada, Texas or Washington; and

2. Consists of a(an):
   a.  Tract or subdivision of single or multi-family dwelling(s);
   b.  Townhouse, townhome, or other multi-unit habitational building(s);
   c.  Residential condominiums or residential cooperatives; or
   d.  Multi-use/mixed use projects that include any of the occupancies described in items a, b and c above.

   That does now, or is designed to include, more than eight (8) residential units in total.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

POLICY NUMBER: BCS0010238

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Description And Location Of Premises Or Classification: |
| --- |
| ALL PREMISES AND CLASSIFICATIONS |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

© ISO Properties, Inc., 2000

Home Office Copy

□

POLICY NUMBER: BCS0010238

**COMMERCIAL GENERAL LIABILITY**
**CG 21 53 01 96**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Designated Ongoing Operation(s):** Option #4

All operations upon any structure that is or is part of a(an):
a.  Tract or subdivision of single or multi-family dwelling(s);
b.  Townhouse, townhome, or other multi-unit habitational building(s);
c.  Residential condominiums or residential cooperatives; or
d.  Multi-use/mixed use projects that include any of the occupancies described in items a, b and c above.

That does now, or is designed to include, more than eight (8) residential units in total.


**Specified Location (If Applicable):**

Any location that is neither in whole or in part within the states of Arizona, California, Colorado, Hawaii, Louisiana, Nevada, Texas or Washington.


(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):**

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

Copyright, Insurance Services Office, Inc., 1994

POLICY NUMBER: BCS0010238

COMMERCIAL GENERAL LIABILITY
CG 25 03 03 97

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Designated Construction Projects:
**ALL PROJECTS**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other

designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

CG 25 03 03 97    Copyright, Insurance Services Office, Inc., 1996    Page 1 of 2    ☐

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

 SCOTTSDALE INSURANCE COMPANY®

| | ENDORSEMENT NO. _____ |
|---|---|

Attached to and forming a part of

Policy No.   BCS0010238

Named Insured  BADGER ROOFING CO. INC.

Endorsement Effective Date  05-01-05
12:01 A.M., Standard Time

Agent No.   29718

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY LIABILITY DEDUCTIBLE ENDORSEMENT
### (Per Occurrence or Offense)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability | $    5000 | per occurrence |
| Property Damage Liability | $    5000 | per occurrence |
| Personal and Advertising Injury Liability (Personal Injury and Advertising Injury) | $    5000 | per offense |

**APPLICATION OF ENDORSEMENT**

Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury," "property damage," and "personal and advertising injury," ("personal injury" and "advertising injury") however caused:

**NO LIMITATION**

1.  Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability ("Personal Injury" and "Advertising Injury") Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as

applicable to such coverages, and the Limits of Insurance applicable to Each Occurrence or offense for such coverages will be reduced by the amount of such deductible. Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

2.  The deductible amounts apply to damages and all legal and loss adjustment expenses.

3.  The deductible amounts stated in the Schedule above apply:

    a.  Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    b.  Under Property Damage Liability Coverage, to all damages because of "property damage"; or

    c.  Under Personal and Advertising Liability ("Personal Injury" and "Advertising Injury") Coverage, to all damages because of "personal injury" or "advertising injury"

Includes copyrighted  material of Insurance Services Office, Inc., with its permission.
Copyright,  Insurance Services Office, Inc., 1998

Page 1 of 2

as the result of any one "occurrence" or offense, re-gardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

4. The terms of this insurance, including those with re-spect to our right and duty to defend any "suits" seeking those damages and your duties in the event of an "occurrence," offense, claim or "suit," apply.

irrespective of the application of the deductible amount.

5. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us..

_____     _____

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

GLS-148s (6-99)

| | ENDORSEMENT |
|---|---|
| SCOTTSDALE INSURANCE COMPANY® | NO._____ |

| | |
|---|---|
| Attached to and forming a part of | Endorsement Effective Date 05-01-05 |
| Policy No. BCS0010238 | 12:01 A.M., Standard Time |
| Named Insured BADGER ROOFING CO. INC. | Agent No. 29718 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Condition 4. Other Insurance of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS is deleted in its entirety and is replaced by the following:

**4. Other Insurance**

**a. Primary Insurance**

This insurance is primary except when **b.** below applies.

**b. Excess Insurance**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(3) If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I); or

(4) That is valid and collectible insurance available to you under any other policy.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will only pay the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_____ /_____
AUTHORIZED REPRESENTATIVE        DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

GLS -152s (12-96)                Home Office Copy



## SCOTTSDALE INSURANCE COMPANY®

ENDORSEMENT NO. _____

Attached to and forming a part of

Policy No.  BCS0010238

Named Insured  BADGER ROOFING CO. INC.

Endorsement Effective Date  05-01-05
12:01 A.M., Standard Time

Agent No.  29718

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFIT LIABILITY

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Coverage | Limits of Liability | Premium |
|---|---|---|
| Employee Benefits Programs | $ 1,000,000 Each Employee<br>$ 1,000,000 Aggregate | $ INCL |

**A.** The following is added to the **SECTION I - COVER-AGES:**

**COVERAGE - EMPLOYEE BENEFITS LIABILITY**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured be-comes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this in-surance does not apply. We may, at our dis-cretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

        (1)  The amount we will pay for damages is limited as described in Paragraph E. **(SECTION III-LIMITS OF INSURANCE)** of this endorsement; and

        (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered un-less explicitly provided for under Supple-mentary Payments of the Commercial General Liability Coverage Form.

    b.  This insurance applies to damages only if:

        (1)  The act, error or omission is negligently committed in the "administration" of your "employee benefit program";

        (2)  The act, error or omission takes place in the "coverage territory," and;

        (3)  The act, error or omission occurs during the policy period.

2.  **Exclusions**

    This insurance does not apply to:

    a.  **Dishonest, Fraudulent, Criminal Or Mali-cious Acts**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

Home Office Copy

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury," "property damage" or "personal and advertising injury."

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program."

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program."

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable

effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement the following applies to the **SUPPLEMENTAL PAYMENTS - COVERAGES A AND B:**

1. All references to **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** are replaced by **SUPPLEMENTARY PAYMENTS - COVERAGES A, B AND EMPLOYEE BENEFITS LIABILITY.**

2. Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **4.** of **SECTION II - WHO IS AN INSURED** are replaced by the following:

2. Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program."

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this endorsement.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

Home Office Copy

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, Paragraph 3. of **SECTION II - WHO IS AN INSURED** does not apply.

**E.** For the purposes of the coverage provided by this endorsement, **SECTION III - LIMITS OF INSURANCE** is replaced by the following:

**1. Limits Of Insurance**

a. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

(1) Insureds;

(2) "Claims" made or "suits" brought;

(3) Persons or organizations making "claims" or bringing "suits";

(4) Acts, errors or omissions; or

(5) Benefits included in your "employee benefit program."

b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program."

c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee," including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

(1) An act, error or omission; or

(2) A series of related acts, errors or omissions;

negligently committed in the "administration" of your "employee benefit program."

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**F.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim." To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

Home Office Copy

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis and that applies to an act, error or omission.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay

for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **SECTION V - DEFINITIONS** Section:

1. "Administration" means:

   **a.** Providing information to "employees," including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   **b.** Handling records in connection with the "employee benefit program"; or

   **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program."

   However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit," made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

Home Office Copy

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees," whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tui-

tion assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the **Definitions** section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

_____    /_____
AUTHORIZED REPRESENTATIVE                 DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

Home Office Copy

| | |
|---|---|
| ⅄ SCOTTSDALE INSURANCE COMPANY® | **ENDORSEMENT** NO._____ |
| Attached to and forming a part of<br>Policy No. BCS0010238<br>Named Insured BADGER ROOFING CO. INC. | Endorsement Effective Date 05-01-05<br>12:01 A.M., Standard Time<br>Agent No. 29718 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement excludes "occurrences" at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or from the operations of the insured, which result in:

a.  "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

b.  "Property Damage" arising from any form of lead;

c.  "Personal Injury" arising from any form of lead;

d.  "Advertising Injury" arising from any form of lead;

e.  **Medical Payments** arising from any form of lead;

f.  Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

g.  Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____  /  _____
AUTHORIZED REPRESENTATIVE          DATE

GLS-58s (12-93)

Home Office Copy

| | ENDORSEMENT |
| --- | --- |
| SCOTTSDALE INSURANCE COMPANY® | NO._____ |

| | |
| --- | --- |
| Attached to and forming a part of<br>Policy No. BCS0010238<br>Named Insured BADGER ROOFING CO. INC. | Endorsement Effective Date 05-01-05<br>12:01 A.M., Standard Time<br>Agent No. 29718 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEASED WORKERS AMENDATORY ENDORSEMENT
## COST WILL BE CONSIDERED PAYROLL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

The following provision is added to the **Premium Audit** condition contained in the **CONDITIONS** section of the policy:

If "leased workers" are furnished to you by a labor leasing firm and the payroll for the "leased workers" is unavailable, we will compute the premium based on __100__ % of the total cost of the contract for the "leased workers." This percentage (%) of the total cost will be considered payroll. The premium on such payroll will be based on the classifications and rates which would have applied if the "leased workers" had been your direct "employees."

_____/_____
AUTHORIZED REPRESENTATIVE        DATE

GLS-71s (7-97)

Home Office Copy

| | ENDORSEMENT |
|---|---|
| 𝄞 SCOTTSDALE INSURANCE COMPANY® | NO._____ |
| Attached to and forming a part of<br>Policy No. BCS0010238<br>Named Insured BADGER ROOFING CO. INC. | Endorsement Effective Date  05-01-05<br>12:01 A.M., Standard Time<br>Agent No.  29718 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

The coverage afforded by this policy does not apply to bodily injury, personal injury or property damage arising out of:

1.  Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2.  The use of asbestos in construction or manufacturing any good, product or structure; or

3.  The removal of asbestos from any good, product or structure; or

4.  The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense of claim or suit related to any of the above.

_____ /
AUTHORIZED REPRESENTATIVE        DATE

UTS-131g (3-92)                                          Home Office Copy

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| BCS0010238 | 05-01-05 | BADGER ROOFING CO. INC. | 29718 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

The following Condition is added to the policy.

**Contractors Special Conditions**

You will obtain current certificates of insurance from all independent contractors providing evidence of:

1. "Bodily injury" and "property damage" liability Limits of Insurance equal to or greater than the limits provided by this policy; and

2. Coverage equal to or greater than the coverages provided by this policy.

Failure to comply with this condition does not alter the coverage provided by this policy. However, should you fail to comply, a premium charge will be made at the time of audit. The premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 payroll for the applicable classification of the work performed.

If the policy does not contain the applicable classification and rate of the work performed, we will multiply our usual and customary rate per $1,000 payroll for that classification by the net modification factor, if any, applied to the policy rates.

For purposes of this endorsement, "total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

_____/_____

AUTHORIZED REPRESENTATIVE                    DATE

GLS-30s (8-04)

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SUBSIDENCE EXCLUSION

This policy does not apply to "bodily injury" or "property damage" caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, resulting from operations of the named insured or any subcontractor of the named insured.

**All other terms and conditions remain unchanged.**

_____     / _____

AUTHORIZED REPRESENTATIVE             DATE

UTS-301g (7-02)

**COMMERCIAL GENERAL LIABILITY**
CG 00 67 03 05

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2004

**EXHIBIT A**

PART 2

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

COMMERCIAL GENERAL LIABILITY
CG 26 20 10 93

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW JERSEY CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART ("OCCURRENCE" VERSION)

The following Condition is added TO COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**10. Your Right to Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding general liability Coverage Part we have issued to you during the previous three years:

**a.** A list or other record of each "occurrence" of which we were notified in accordance with paragraph **2.a.** of the Duties in the Event of Occurrence, Offense, Claim or Suit Condition in this Section. We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

Copyright, Insurance Services Office, Inc.,  1992

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph **3.** below, professional services include:

   **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

POLICY NUMBER:                                    **COMMERCIAL GENERAL LIABILITY**
                                                         **CG 24 26 07 04**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

CG 21 75 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism." However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   a. The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

   **2. Exclusions**

      This insurance does not apply to:

      **Silica Or Silica-Related Dust**

      **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

      **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

      **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

   **2. Exclusions**

      This insurance does not apply to:

      **Silica Or Silica-Related Dust**

      **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

      **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

   **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

CG 21 86 12 04

© ISO Properties, Inc., 2003

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE**
**LIQUOR LIABILITY COVERAGE FORM**
**RAILROAD PROTECTIVE LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

The **CONDITION** entitled **When We Do Not Renew** is deleted in its entirety.

_____   _____
AUTHORIZED REPRESENTATIVE                          DATE

GLS-74s (11-01)

COMMERCIAL GENERAL LIABILITY
CG 20 33 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

   a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. Supervisory, inspection, architectural or engineering activities.

2. "Bodily injury" or "property damage" occurring after:

   a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   b. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 33 07 04                    © ISO Properties, Inc., 2004                    Page 1 of 1    □

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE
LIQUOR LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

The **CONDITION** entitled **When We Do Not Renew** is deleted in its entirety.

_____   /   _____
AUTHORIZED REPRESENTATIVE                              DATE

GLS-74s (11-01)

 SCOTTSDALE INSURANCE COMPANY®

Home Office Address:
One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                              President

The information contained herein replaces any similar information contained elsewhere in the policy.

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property threat.

   © ISO Properties, Inc., 2001     □

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

IL 00 21 07 02    □

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000

CG 00 01 10 01      □

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000
CG 00 01 10 01    □

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000
CG 00 01 10 01    ☐

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

© ISO Properties, Inc., 2000
CG 00 01 10 01    □

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

         **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

         **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

         **(a)** Owned, occupied or used by,

         **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under Coverage **C**;

    **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage **A**; and

    **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000

CG 00 01 10 01

**b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

    This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

    This insurance is excess over:

    **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

        **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

    **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

EXHIBIT

ORIGINAL
DOCUMENT

American Arbitration Association
· *Dispute Resolution Services Worldwide*

COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐
*There is no additional administrative fee for this service.*

| Name of Respondent | Name of Representative (if known) |
|---|---|
| Somerville Fidelco Associates, L.P. | Martin R. Dollinger |
| Address | Name of Firm (if applicable) |
| 520 U.S. Highway 22 East | Greenbaum, Rowe, Smith & Davis LLP |
| P.O. Box 6872 | Representative's Address |
| | Metro Corporate Center, P.O. Box 5600 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Bridgewater | NJ | 08807 | Woodbridge | NJ | 07095-0988 |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (908) 725-8100 | (908) 575-2237 | (732) 549-5600 | (732) 549-1881 |

| Email Address: | Email Address: |
|---|---|
| | mdollinger@greenbaum.com |

The named claimant, a party to an arbitration agreement dated October 23, 1987___, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration. *

THE NATURE OF THE DISPUTE
Claim for breach of commercial lease by tenant against landlord arising out of asbestos contamination at leased premises (located in Somerville, New Jersey) caused by landlord's roofing contractor

| Dollar Amount of Claim $734,175.00 | Other Relief Sought: ☐ Attorneys Fees   ☐ Interest |
|---|---|
| | ☐ Arbitration Costs  ☐ Punitive/ Exemplary ☐ Other _____ |

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $325.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Commercial lease experience

Hearing locale Somerville, NJ_____ (check one) ☒ Requested by Claimant   ☐ Locale provision included in the contract

| Estimated time needed for hearings overall: | Type of Business: Claimant _Property owner_ |
|---|---|
| _____ hours or _2-3_ days | Respondent _Pharmaceutical Company_ |

Is this a dispute between a business and a consumer? ☐Yes ☒No Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA   ☐ Dallas, TX   ☒ East Providence, RI ☐ Fresno, CA   ☐ International Centre, NY, with a request that it commence administration of the arbitration.  Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative)  Date: | Name of Representative |
|---|---|
| | Charles J. Vinicombe |
| Name of Claimant | Name of Firm (if applicable) |
| Bristol-Myers Squibb Company | DRINKER BIDDLE & REATH LLP |
| Address (to be used in connection with this case) | Representative's Address |
| P.O. Box 4000 | 105 College Road East, SDite 300 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Princeton | NJ | 08845-4000 | Princeton | NJ | 08542 |

| Phone No. | Fax No. | Phone No. | Fax No. |
|---|---|---|---|
| (609) 252-5546 | | (609)716-6562 | (609) 799-7000 |

| Email Address: | Email Address: |
|---|---|
| john.chapman@bms.com | charles.vinicombe@dbr.com |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA.  Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online.  AAA Customer Service can be reached at 800-778-7879

* The arbitration clause is contained in the original October 23, 1987 lease, which has amendments and extensions dated June 3, 1988, May 14, 1993 and November 25, 2002.

**EXHIBIT**

# GREENBAUM, ROWE, SMITH & DAVIS LLP

COUNSELORS AT LAW

METRO CORPORATE CAMPUS ONE
P.O. BOX 5600
WOODBRIDGE, N. J. 07095-0988
(732) 549-5600
FAX (732) 549-1881

DELIVERY ADDRESS:
99 WOOD AVE. SOUTH
ISELIN, NEW JERSEY 08830-2712

75 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068-3701
(973) 535-1600
FAX (973) 535-1698

EMAIL: INFO@GREENBAUMLAW.COM
WWW.GREENBAUMLAW.COM

WM. L. GREENBAUM (1914-1983)
ALLEN RAVIN (1957-1997)

REPLY TO:  *Woodbridge*

August 17, 2006

**VIA CERTIFIED MAIL – R.R.R.** *(w/encls.)* **– 70023150000471502456
AND REGULAR MAIL** *(w/encls.)*

Claims Department
Scottsdale Insurance Company
8877 N. Gainey Center Drive
Scottsdale, AZ 85258

Re:     ***Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.***
        **American Arbitration Association, 18 459 01071 06**

Dear Sir/Madam:

    This notice is provided on behalf of Somerville Fidelco Associates, L.P. ("Somerville Fidelco") regarding a claim filed by Bristol-Myers Squibb Company against Somerville Fidelco with the American Arbitration Association regarding damages caused by Badger Roofing Company. For your convenience, a copy of the correspondence dated August 4, 2006 from plaintiff's attorney to Ms. Catherine Shanks of the American Arbitration Association along with the Demand for Arbitration is attached hereto.

    This notice is provided pursuant to all insurance policies issued by Scottsdale Insurance Company and its affiliated and related companies to Badger Roofing Company, under which Somerville Fidelco is an additional insured, including the following:

| INSURER | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| Scottsdale | BC80010238 | 5/1/05 to 5/1/06 |

*BCS*

AP ORIGINAL
DOCUMENT

GREENBAUM, ROWE, SMITH & DAVIS LLP

Claims Department
Scottsdale Insurance Company
August 17, 2006
Page 2

On behalf of Somerville Fidelco, we request insurance coverage including defense and indemnification for the claims in the referenced matter.

Thank you for your courtesies in this matter.

Very truly yours,

Ellen A. Silver

EAS/sjg
Encls.

**EXHIBIT**

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO              0465
CONNECTION TEL              917324249764
SUBADDRESS
CONNECTION ID
ST. TIME              09/06 13:30
USAGE T               01'30
PGS. SENT             5
RESULT                OK
```



## SCOTTSDALE INSURANCE COMPANY®


**VIA FAX 732-424-9764**


September 6, 2006


Scott Badger
Badger Roofing Co., Inc.
5 Smalley Ave
Middlesex, NJ 08846

Re:    Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.
       Claim No.:    1044059-31

Dear Mr. Badger:

As we discussed by phone last week, we have received the following correspondence from the attorney representing Somerville Fidelco Associates, L.P.  Fidelco is making a claim for coverage under your policy with Scottsdale.

In order for us to respond to this letter, I need a copy of any contracts or agreements which were applicable to this job.  Please forward a complete copy of the documents at your earliest opportunity.

Kent Riggs
Sr. Claim Specialist
EXT 2565

**EXHIBIT**



## SCOTTSDALE INSURANCE COMPANY®

September 7, 2006

**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

Mr. Scott Badger
Badger Roofing Company, Inc.
5 Smalley Avenue
Middlesex, NJ 08846

| | | |
|---|---|---|
| RE: | Lawsuit: | <u>Bristol-Meyers Squibb Company, vs. Somerville Fidelco Associates, L.P.</u> |
| | Claim No.: | 1044058-031 |
| | Insured: | Badger Roofing Company, Inc. |
| | Policy No.: | BCS0010238 |
| | Policy Term: | 05/01/05 – 05/01/06 |
| | Policy No.: | BCS0012871 |
| | Policy Term: | 05/01/06 – 05/01/07 |

Dear Mr. Badger:

Scottsdale Insurance Company is in receipt of correspondence from attorney Ellen A. Silver, on behalf of Somerville Fidelco Associates, L.P., seeking coverage under your policy with Scottsdale Insurance Company for defense and indemnification for the claim being brought against them by Bristol-Myers Squibb Company.

Based upon the information we have received and our previous telephone conversation, it is my understanding that Somerville Fidelco Associates, L.P., is the owner of certain premises occupied by Bristol-Meyers Squibb Company under a commercial lease agreement between the two parties. Your company contracted with Somerville Fidelco Associates, L.P., to replace the roof. During the course of the operation, asbestos was discovered and the job was stopped for several months while an asbestos removal contractor completed the removal of the roof.

The claimant, Bristol-Meyers Squibb Company, alleges that Somerville Fidelco Associates, L.P., is in breach of the lease agreement as a result of interruption to their operations within the premises.

Mr. Scott Badger
September 7, 2006
Page 2

At this point, no direct claim has been made against your company. Nevertheless, there are certain policy provisions which we wish to bring to your attention, which could affect your coverage under the policy with respect to any claim which may eventually be made against your company. Your policy with Scottsdale Insurance Company, BCS0010238, was effective from May 1, 2005, to May 1, 2006. Policy No. BCS0012871, is effective from May 1, 2006, to May 1, 2007. Each policy affords coverage in the amount of $1,000,000.00 per occurrence and $2,000,000.00 aggregate for "bodily injury" or "property damage" which occurs during the policy term and which is caused by an "occurrence". The policies also afford coverage for an "offense", during the policy period, giving rise to "personal and advertising injury".

Both policies are subject to Coverage Form No. CG0001. The following provisions are from Policy No. BCS0010238, and Coverage Form No. CG0001 (10-01). The subsequent policy contains a later edition of Form No. CG0001. The language contained in the later edition may vary slightly from the following provisions but is substantially similar. Please refer to the Insuring Agreement under Section I – Coverage A, which states:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

    a.    **We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:**

        (1)    **The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and**

        (2)    **Our right and duty to defend ends when we have used up the applicable limit of**

Mr. Scott Badger
September 7, 2006
Page 3

        insurance in the payment of judgments
or settlements under Coverages A or B
or medical expenses under Coverage C.

     **No other obligation or liability to pay sums or
perform acts or services is covered unless
explicitly provided for under Supplementary
Payments – Coverages A and B.**

b.    **This insurance applies to "bodily injury" and
"property damage" only if:**

    (1)    The "bodily injury" or "property damage"
is caused by an "occurrence" that takes
place in the "coverage territory";

    (2)    The "bodily injury" or "property damage"
occurs during the policy period; and

    (3)    Prior to the policy period, no insured
listed under Paragraph 1. of Section II –
Who Is An Insured and no "employee"
authorized by you to give or receive
notice of an "occurrence" or claim, knew
that the "bodily injury" or "property
damage" had occurred, in whole or in
part. If such a listed insured or
authorized "employee" knew, prior to the
policy period, that the "bodily injury" or
"property damage" occurred, then any
continuation, change or resumption of
such "bodily injury" or "property
damage" during or after the policy
period will be deemed to have been
known prior to the policy period.

c.    "Bodily injury" or "property damage" which
occurs during the policy period and was not,
prior to the policy period, known to have
occurred by any insured listed under Paragraph
1. of Section II – Who Is An Insured or any
"employee" authorized by you to give or receive
notice of an "occurrence" or claim, includes
any continuation, change or resumption of that

Case 3:07-cv-02763-AET-TJB    Document 45-4    Filed 10/09/2009    Page 97 of 117
9/13/2006 3:07:44 PM
Case 3:07-cv-02763-AET-TJB    Document 1-4    Filed 06/13/2007    Page 12 of 32

Mr. Scott Badger
September 7, 2006
Page 4

"bodily injury" or "property damage" after the
end of the policy period.

d.    "Bodily injury" or "property damage" will be
deemed to have been known to have occurred
at the earliest time when any insured listed
under Paragraph 1. of Section II – Who Is An
Insured or any "employee" authorized by you to
give or receive notice of an "occurrence" or
claim:

(1)    Reports all, or any part, of the "bodily
injury" or "property damage" to us or
any other insurer;

(2)    Receives a written or verbal demand or
claim for damages because of the
"bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that
"bodily injury" or "property damage" has
occurred or has begun to occur.

e.    Damages because of "bodily injury" include
damages claimed by any person or organization
for care, loss of services or death resulting at
any time from the "bodily injury".

Please refer to the following Exclusions under Coverage "A", which may be applicable:

2.    Exclusions

This insurance does not apply to:

b.    Contractual Liability

"Bodily injury" or "property damage" for which
the insured is obligated to pay damages by
reason of the assumption of liability in a
contract or agreement. This exclusion does not
apply to liability for damages:

(1)    That the insured would have in the
absence of the contract or agreement; or

Case 3:07-cv-02763-AET-TJB    Document 45-4    Filed 10/09/2009    Page 98 of 117
9/13/2006 4:12:44 PM
Case 3:07-cv-02763-AET-TJB    Document 1-4    Filed 06/13/2007    Page 13 of 32

Mr. Scott Badger
September 7, 2006
Page 5

       (2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

           (a)     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

           (b)     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

  j.     Damage To Property

     "Property damage" to:

     (1)     Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

     (2)     Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

     (3)     Property loaned to you;

Case 3:07-cv-02763-AET-TJB    Document 45-4    Filed 10/09/2009    Page 99 of 117
9/13/2006 4:12:44 PM
Case 3:07-cv-02763-AET-TJB    Document 1-4    Filed 06/13/2007    Page 14 of 32

Mr. Scott Badger
September 7, 2006
Page 6

(4)     Personal property in the care, custody or control of the insured;

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

I.     Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage

Mr. Scott Badger
September 7, 2006
Page 7

arises was performed on your behalf by a subcontractor.

m.  **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Please also refer to the Insuring Agreement under Section I, Coverage "B", which states:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.  **Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

Mr. Scott Badger
September 7, 2006
Page 8

(1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2)   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Please refer to Section V – Definitions, for the following Definitions:

**SECTION V – DEFINITIONS**

3.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

8.   "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.   You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.   The repair, replacement, adjustment or removal of "your product" or "your work"; or

Mr. Scott Badger
September 7, 2006
Page 9

     b.     Your fulfilling the terms of the contract or agreement.

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

     a.     False arrest, detention or imprisonment;

     b.     Malicious prosecution;

     c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

     d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

     e.     Oral or written publication, in any manner, of material that violates a person's right of privacy;

     f.     The use of another's advertising idea in your "advertisement"; or

     g.     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15.     "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17.     "Property damage" means:

Mr. Scott Badger
September 7, 2006
Page 10

      a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**22.**    "Your work":

    a.    **Means:**

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    b.    **Includes**

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        (2)    The providing of or failure to provide warnings or instructions.

Each policy is subject to Endorsement CG2426 (07-04), which states:

Mr. Scott Badger
September 7, 2006
Page 11

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

**AMENDMENT OF INSURED CONTRACT DEFINITION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Paragraph 9. of the Definitions Section is replaced by the following:

9.     "Insured contract" means:

    a.     A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.     A sidetrack agreement;

    c.     Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.     An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.     An elevator maintenance agreement;

    f.     That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability

Mr. Scott Badger
September 7, 2006
Page 12

means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

Each policy is subject to Endorsement CG2033 (07-04), which states:

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

ADDITIONAL INSURED – OWNERS, LESSEES OR

Mr. Scott Badger
September 7, 2006
Page 13

## CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A.      Section II – Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.      Your acts or omissions; or

2.      The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B.      With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1.      "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

a.      The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys,

Mr. Scott Badger
September 7, 2006
Page 14

field orders, change orders or drawings and specifications; or

b.   Supervisory, inspection, architectural or engineering activities.

2.   "Bodily injury" or "property damage" occurring after:

a.   All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

b.   That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Each policy is subject to Endorsement CG2149 (09-99), which states:

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

Mr. Scott Badger
September 7, 2006
Page 15

    f.     **Pollution**

        (1)    "Bodily injury" or "property damage" which
would not have occurred in whole or part but
for the actual, alleged or threatened discharge,
dispersal, seepage, migration, release or
escape of "pollutants" at any time.

        (2)    Any loss, cost or expense arising out of any:

            (a)    Request, demand, order or statutory or
regulatory requirement that any insured
or others test for, monitor, clean up,
remove, contain, treat, detoxify or
neutralize, or in any way respond to, or
assess the effects of "pollutants"; or

            (b)    Claim or suit by or on behalf of a
governmental authority for damages
because of testing for, monitoring,
cleaning up, removing, containing,
treating, detoxifying or neutralizing, or in
any way responding to, or assessing the
effects of, "pollutants".

Each policy is subject to UTS-131G (03-92), which states:

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

**ASBESTOS EXCLUSION**

**The coverage afforded by this policy does not apply to bodily
injury, personal injury or property damage arising out of:**

1.    **Inhaling, ingesting or prolonged physical exposure to
asbestos or goods or products containing asbestos;
or**

2.    **The use of asbestos in construction or manufacturing
any good, product or structure; or**

Mr. Scott Badger
September 7, 2006
Page 16

    3.    The removal of asbestos from any good, product or structure; or

    4.    The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense of claim or suit related to any of the above.

Policy BCS0012871 is subject to Endorsement GLS-281S (03-06), which states:

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

CONTINUING OR ONGOING DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY
COVERAGE FORM

The following exclusion is added to subsection 2. Exclusions of SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to "property damage" when any of the following apply:

Continuing Or Ongoing Damage

    1.    The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

    2.    The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first

Mr. Scott Badger
September 7, 2006
Page 17

occurred, began to occur or is alleged to
have occurred, to any degree, in whole
or in part, prior to the inception date of
this policy.

We wish to point out that we do not presently have any information concerning the date that the work was performed or the date of any of the events which have given rise to this dispute. Therefore, we do not know whether any of these events occurred during the Scottsdale Insurance Company policy term.

With respect to the tender of defense we have received from Somerville Fidelco Associates, L.P., we have previously requested copies of contracts or written agreements which are applicable to this jobsite. As indicated by the above-cited Endorsement, Somerville Fidelco Associates, L.P., may have limited coverage as an additional insured under the policy if the contract required that you provide coverage. Even if that is the case, the claim for Breach of Contract for a lease agreement does not constitute an "occurrence" resulting in "bodily injury" or "property damage" as those terms are defined in the policy. Likewise, a claim for Breach of Contract of a lease agreement would not constitute an "offense" giving rise to "personal and advertising injury".

In addition, the policy specifically excludes coverage for claims arising out of asbestos exposure. The policy specifically excludes coverage for claims arising from pollution. One or more of the above-cited policy Exclusions or Endorsements may be applicable and may exclude or limit coverage under the policies.

Scottsdale Insurance Company is reserving the right to assert all defenses to coverage under the policy. In investigating the claim, defending any suit, or attempting any compromise settlement, Scottsdale Insurance Company is not waiving any rights, nor admitting any obligation under the policy.

Scottsdale Insurance Company does not limit its right to assert limitations on coverage provisions as set forth above. Rather, it reserves its rights to enforce any or all of the provisions, including policy conditions, contained in the policy.

Should you have any information that is contrary to that expressed above, or if you have any questions, comments or objections, please contact the undersigned.

Sincerely,


Kent L. Riggs, CPCU
Senior Claim Specialist
Extension 2565

Mr. Scott Badger
September 7, 2006
Page 18


cc:     Agent #29718

KLR/lsm/rmw/lsm
LSM/S35385

**EXHIB**



## SCOTTSDALE INSURANCE COMPANY®

January 31, 2007


Ellen A. Silver
Greenbaum, Rowe, Smith & Davis LLP
P.O. Box 5600
Woodbridge, NJ 07095-0988

| RE: | Matter: | Bristol-Meyers Squibb Company, vs. Somerville |
|---|---|---|
| | | Fidelco Associates, L.P. |
| | Claim No.: | 1044058-031 |
| | Insured: | Badger Roofing Company, Inc. |
| | Policy No.: | BCS0010238 |
| | Policy Term: | 05/01/05 – 05/01/06 |
| | Policy No.: | BCS0012871 |
| | Policy Term: | 05/01/06 – 05/01/07 |

Dear Ms. Silver:

Scottsdale Insurance Company is in receipt of your correspondence of August 17, 2006 on behalf of Somerville Fidelco Associates, L.P., seeking coverage under the Scottsdale Insurance Company policy with Badger Roofing Company, Inc.

It is our understanding that Somerville Fidelco Associates, L.P., is the owner of certain premises occupied by Bristol-Meyers Squibb Company under a commercial lease agreement between the two parties. Badger Roofing Company, Inc. contracted with Somerville Fidelco Associates, L.P., to replace the roof. During the course of the operation, asbestos was discovered and the job was stopped for several months while an asbestos removal contractor completed the removal of the roof.

The claimant, Bristol-Meyers Squibb Company, alleges that Somerville Fidelco Associates, L.P., is in breach of the lease agreement as a result of interruption to their operations within the premises.

Please be advised that Somerville Fidelco Associates, L.P. is not specifically named as an additional insured under the Scottsdale policies. The policies are subject to an additional insured endorsement which may afford limited coverage if there was a written contract which

Claims Division

P.O. Box 4120                8877 N. Gainey Center Dr.      (480) 365-4000        1-800-423-7675

Scottsdale, AZ 85261-4120    Scottsdale, AZ 85258          FAX 480-483-6752                      A Nationwide® Company

Ellen A. Silver
January 31, 2007
Page 2


required that Somerville Fidelco Associates, L.P. be named as an additional insured. To date, we have not received a copy of any contract or agreement which may exist.

Even if Somerville Fidelco Associates, L.P. qualifies as an additional insured, the policy excludes coverage for asbestos-related claims. Attached, please find a copies of our correspondence to Badger Roofing Co., Inc. dated September 7, 2006 and January 31, 2007 which sets forth our coverage position.

It is our position that there is no coverage for this claim under the Scottsdale policy.

Should you have any information that is contrary to that expressed above, or if you have any questions, comments or objections, please contact the undersigned.

Sincerely,



Kent L. Riggs, CPCU
Senior Claim Specialist
Extension 2565

**EXHIB**





SCOTTSDALE INSURANCE COMPANY®

January 31, 2007

Michael T. Collins
Sodini & Spina
50 Divison Street
Manahawkia, NJ 08050

RE:    Lawsuit:           Bristol-Meyers Squibb Company, vs. Somerville
                           Fidelco Associates, L.P.
       Claim No.:         1044058-031
       Insured:           Badger Roofing Company, Inc.
       Policy No.:        BCS0010238
       Policy Term:       05/01/05 – 05/01/06
       Policy No.:        BCS0012871
       Policy Term:       05/01/06 – 05/01/07

This follows my letter of September 7, 2006 directed to Badger Roofing (copy enclosed) and will acknowledge receipt of your letter of October 13, 2006 and subsequent correspondence.

The correspondence you provided from Lawrence P. Maher, which refers to the roofing work done by the insured, indicates that Bristol-Myers "claimed that the work caused asbestos-containing dust and debris to become located inside the premises...". This asbestos-containing dust and debris resulted in the clean-up and business interruption claims, the amount of which is disputed. The arbitration demand which we have previously received asserts the same asbestos contamination allegations.

The claims which have been made arise out of asbestos. It is our position that there is no coverage under the Scottsdale policies for claims arising from asbestos. Based upon the facts which are presently know to us, and for all the reasons set forth in my letter of September 7, 2006, Scottsdale disclaims coverage for this matter. We will not participate in the defense of the insured at the arbitration.

We have previously requested copies of any contracts or agreements which were applicable to this job. We again request that the insured provide copies of those documents. If you have any information or documentation which may change our position, we invite you to submit it for our consideration.

**Claims Division**
P.O. Box 4120                8877 N. Gainey Center Dr.    (480) 365-4000         1-800-423-7675
Scottsdale, AZ 85261-4120    Scottsdale, AZ 85258         FAX 480-483-6752                            A Nationwide® Company

Michael T. Collins
January 31, 2007
Page 2


Sincerely,


Kent L. Riggs, CPCU
Senior Claim Specialist
Extension 2565

cc:    Agent #29718