# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>                      Plaintiff,<br>vs.<br><br>SOMERVILLE FIDELCO ASSOCIATES,<br>L.P. and BADGER ROOFING CO., INC.,<br><br>                  Defendants. | Civil Action No.: 3:07-cv-02763 (AET) (TJB)<br><br>**ELECTRONICALLY FILED**<br><br><u>**Return Date:**</u><br>**TO BE DECIDED** |
| SOMERVILLE FIDELCO ASSOCIATES,<br>L.P.,<br>           Third Party Plaintiffs,<br><br>vs.<br><br>QUINCY MUTUAL FIRE INSURANCE<br>COMPANY, AMERICAN HOME<br>ASSURANCE COMPANY,<br><br>           Third Party Defendants. | <br><br><br><br><br><br><u>**ORAL ARGUMENT REQUESTED**</u> |

---

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF THIRD PARTY DEFENDANT AMERICAN HOME ASSURANCE COMPANY

---

SAIBER LLC
One Gateway Center, 13th Floor,
Newark, New Jersey 07102-5311
TEL: 973-622-3333
Attorneys for Third Party Defendant
American Home Assurance Company

Of Counsel and on the Brief:
Michael H. Cohen, Esq.

On the brief:
Melissa A. Natale, Esq.

{00588247.DOC}

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES............................................................... ii

PRELIMINARY STATEMENT........................................................ 1

LEGAL ARGUMENT...................................................................... 3

THE SUMMARY JUDGMENT STANDARD................................ 3

**POINT I**

FIDELCO IS NOT ENTITLED TO ADDITIONAL INSURED
COVERAGE FOR DEFENDING AND SETTLING CLAIMS
ASSERTED AGAINST IT BY BMS, ITS TENANT AND
AHA'S NAMED INSURED, FOR DAMAGES TO BMS'S
PROPERTY CAUSED BY FIDELCO'S OPERATIONS
CONDUCTED PURSUANT TO FIDELCO'S OWN
LEASE OBLIGATIONS.................................................................... 5

    A.    Fidelco Did Not Contract With BMS For
        Additional Insurance Covering Its Liability
        to BMS For Damages Caused In Repairing
        the Roof Under the Lease.......................................... 5

    B.    The AHA Policies' "Owned Property"
        Exclusion Clearly and Unequivocally
        Excludes Coverage For Damage to BMS's Property.......... 13

**POINT II**

IN THE ALTERNATIVE, AHA IS ENTITLED TO
PARTIAL SUMMARY JUDGMENT DECLARING THAT
THERE IS NO COVERAGE AFFORDED UNDER THE
06-07 AHA POLICY.......................................................................... 16

CONCLUSION.................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Federal Cases</u>

<u>Aetna Cas. & Sur. Co. v. General Time Corp.</u>,
704 F.2d 80 (2d Cir. 1983)................................................................. 14

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)..................... 3, 4

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)................................. 3

<u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017 (3d Cir. 1991)............. 4

<u>Commercial Union Ins. Co. v. Basic Am. Medical, Inc.</u>
703 F.Supp. 629 (E.D. Mich. 1989)................................................... 9

<u>Cooper Labs. v. International Surplus Lines Ins. Co.</u>,
802 F.2d 667, 671 (3d Cir. 1986)..................................................... 4

<u>Liberty Mut. Ins. Co. v. Travelers Indem. Co.</u>,
78 F.3d 639 (D.C. Cir. 1996)........................................................... 15

<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>,
475 U.S. 574 (1986)...................................................................... 3, 4

<u>Oritani Sav. and Loan Ass'n v. Fidelity and Deposit Co. of Maryland</u>,    4
989 F.2d 635 (3d Cir. 1993)..............................................................

<u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314 (3d Cir. 2005)............. 4

## <u>State Cases</u>

<u>Campbell v. Shrewsbury Surgicenter</u>,
2009 WL 383364 (N.J. App. Div., February 18, 2009),
*certif. denied*, 199 N.J. 134 (2009)................................................. 7, 8, 12

<u>County of Hudson v. Selective Ins. Co.</u>,
332 N.J. Super. 107 (App. Div. 2000)............................................... 7, 11

**Page(s)**

Finlay v. Standard Acc. Ins. Co.,
19 So.2d 302 (La.Ct.App. 1st Cir. 1944)................................ 7

Franklin Mut. Ins. Co. v. Security Indem. Ins. Co.,
275 N.J. Super. 335 (App. Div.)*, certif. denied*, 139 N.J. 185 (1994)............ 7

Harrah's Atlantic City, Inc. v. Harleysville Ins. Co.,
288 N.J. Super. 152 (App. Div. 1996)................................ 7

Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co.,
98 N.J. 18 (1984)................................................ 10

Insurance Corp. of New York v. Cohoes Realty Associates, LP,
50 A.D.3d 1228, 854 N.Y.S.2d 815 (3d Dep't 2008)...................... 8, 9, 14

Jane D. v. Ordinary Mutual,
32 Cal.App.4th 643, 38 Cal.Rptr.2d 131 (1995)........................ 6

Krastanov v. K. Hovnanian/Shore Acquisitions, LLC,
2008 WL 2986475 (N.J. App. Div., August 6, 2008),
*certif. denied*, 198 N.J. 311 (2009)................................. 9

Liberty Village Associates v. West American Ins. Co.,
308 N.J. Super. 393 (App. Div.), *certif. denied*, 154 N.J. 609 (1998)......... 7

Massachusetts Turnpike Auth. v. Perini Corp.,
349 Mass. 448, 208 N.E.2d 807 (1965)............................... 15

Pennsville v. American Motorists Ins. Co.,
315 N.J. Super. 519 (App. Div. 1998)................................ 7, 11, 12

Reliance Ins. Co. v. Armstrong World Industries, Inc.,
292 N.J. Super. 365 (App. Div. 1996)................................ 14

Simonetti v. Selective Ins. Co.,
372 N.J. Super. 421 (App. Div. 2004)................................ 4

State v. Signo Trading International, Inc., 130 N.J. 51 (1992)................ 14

**Page(s)**

Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165 (1992).....................  10

Weedo v. Stone-E-Brick, Inc. 81 N.J. 233 (1979)...............................  6

**Secondary Authorities**

7A Couch on Ins. 3d § 103:19 (2009)..............................................  6, 9, 14

7A Couch on Ins. 3d § 104:27 (2009)..............................................  7, 14

12 Couch on Ins. 3d § 172:26 (2009)..............................................  14

Donald S. Malecki, CPCU, *et al*., The Additional Insured Book
(5th Ed. July 2004)...............................................................  6

Ostrager & Newman, Handbook on Insurance Coverage Disputes,
Vol. I (12th Ed. 2004)............................................................  9

**Court Rules**

Fed. R. Civ. P. 56(c)...............................................................  3

## PRELIMINARY STATEMENT

Third Party Defendant American Home Assurance Company ("AHA") moves for summary judgment, dismissing the claims asserted against it in the Third Party Complaint filed by Somerville Fidelco Associates, LP ("Fidelco").[1] For the reasons set forth herein, Fidelco is not insured under the AHA general liability policies issued to Fidelco's tenant, Bristol-Myers Squibb ("BMS")[2] for Fidelco's settlement of underlying lease arbitration proceedings instituted by BMS against Fidelco.

BMS was the sole tenant at the Somerville Facility owned by Fidelco. Pursuant to the terms of its lease, BMS initiated the underlying arbitration to recover for damage to its animal research facility caused by intrusion of dust, asbestos and other particulate matter during a roofing project performed by Fidelco and its contractor, Defendant Badger Roofing Company ("Badger"). Fidelco eventually settled that arbitration proceeding, paying BMS $575,000 in damages. In this action, Fidelco seeks to recover that settlement amount from AHA along

---

[1] The undisputed material facts relevant to this motion are set forth in AHA's Rule 56.1 Statement of Undisputed Material Facts ("Statement of Facts"), incorporated herein by reference, as is the Declaration of Michael H. Cohen, Esq. ("the Cohen Dec.") with all exhibits submitted in support of this motion.

[2] As more fully described herein, AHA issued consecutive general liability policies to BMS which are collectively referred to as "the AHA Policies." Where applicable, they are separately referred to as the "05-06 AHA Policy" and the "06-07 AHA Policy."

with approximately $122,000 in fees and expenses incurred in defending that arbitration proceeding.

Fidelco's entitlement to additional insured coverage under the AHA Policies extends only to claims of liability asserted by third parties against Fidelco that arise out of BMS's premises or operations, and does not extend to Fidelco's breach of lease obligations owed to BMS, including faulty performance of its own roof repair operations. Such an outcome would completely subvert Fidelco's and BMS's distribution of risks under the lease agreement and would be contrary to established insurance law.

AHA further submits that even if the terms of the additional insured coverage afforded under the AHA Policies could be read as rendering Fidelco an additional insured for the underlying claim, the Policies' "owned property" exclusion bars coverage for property damage to property rented or occupied by BMS, and therefore bar coverage for the claims asserted by BMS against Fidelco in the underlying arbitration.

Accordingly, and as more fully explained herein, AHA had no duty to defend or pay damages on Fidelco's behalf, and Fidelco is not entitled to recover from AHA its costs associated with the underlying arbitration proceedings filed against it by BMS.

In the alternative, AHA moves for partial summary judgment declaring that any insurance afforded to Fidelco would not extend to the 06-07 AHA Policy because BMS, as named insured under the Policy, knew that the property damage had occurred, or was still occurring, prior to the commencement of the policy period on January 1, 2006, and is therefore outside the scope of that Policy's insuring agreement.

## LEGAL ARGUMENT

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The United States Supreme Court's trilogy of cases in <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u> 475 U.S. 574 (1986), <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) and <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), sets forth when a "genuine issue of material fact" exists. In <u>Celotex Corp.</u>, the Court explained that:

> One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.
>
> 477 U.S. at 323-24.

A fact is "material" if a dispute over that fact "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 247-48. A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," <u>Id.</u> at 248, but not if it merely involves "some metaphysical doubt about the material facts." <u>Matsushita</u>, 475 U.S. at 586. The nonmoving party must "introduce more than a scintilla of evidence showing that there is a genuine issue for trial; [it] must introduce evidence from which a rational finder of fact could find in [its] favor." <u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 319 (3d Cir. 2005) (<i>citing</i> <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1020 (3d Cir. 1991)); <u>see also</u>, <u>Anderson</u>, 477 U.S. at 252.

Under both New Jersey and Federal law, "the interpretation of an insurance contract is a question of law...." <u>Simonetti v. Selective Ins. Co.</u>, 372 N.J. Super. 421, 428 (App. Div. 2004); <u>see also</u>, <u>Oritani Sav. and Loan Ass'n v. Fidelity and Deposit Co. of Maryland</u>, 989 F.2d 635, 638 (3d Cir. 1993) (<i>citing</i> <u>Cooper Labs. v. International Surplus Lines Ins. Co.</u>, 802 F.2d 667, 671 (3d Cir. 1986)). AHA submits that there are no genuine issues of material fact that preclude entry of judgment in its favor as a matter of law as to Fidelco's claim for insurance coverage for its costs of defending and settling the underlying arbitration instituted against it by BMS.

## POINT I

### FIDELCO IS NOT ENTITLED TO ADDITIONAL INSURED COVERAGE FOR DEFENDING AND SETTLING CLAIMS ASSERTED AGAINST IT BY BMS, ITS TENANT AND AHA'S NAMED INSURED, FOR DAMAGES TO *BMS'S* PROPERTY CAUSED BY *FIDELCO'S* OPERATIONS CONDUCTED PURSUANT TO *FIDELCO'S* OWN LEASE OBLIGATIONS.

Fidelco seeks additional insured coverage under the AHA Policies issued to its tenant, BMS, for the costs of defending and settling BMS's lease arbitration claims of injury *to BMS* caused by Fidelco's roof replacement and repair work. As explained herein, Fidelco had no reasonable expectation that its risk of injuring its tenant's property would be passed back to the tenant by way of the tenant's grant of additional insured liability coverage. Fundamentally, the claim is a lease dispute between Fidelco and BMS, and does not concern injuries to a third party or the question of whether such risks were transferred under the lease to BMS by way of contractual indemnity or third party "additional" insurance. The AHA Policies simply do not provide coverage to Fidelco for BMS's own damages caused by *Fidelco's* negligent performance of its own lease obligations.

### A.    Fidelco Did Not Contract With BMS For Additional Insurance Covering Its Liability to BMS For Damages Caused In Repairing the Roof Under the Lease.

Under specified circumstances, the AHA Policies apply to extend additional insured coverage to a landlord where required under the terms of a written

contract.[3]  However, for the reasons explained herein, no such coverage is afforded

to Fidelco for its liability to BMS.

It is a basic tenant of insurance law that liability insurance policies insure for

an insured's tort liability owed to a third party.  <u>Weedo v. Stone-E-Brick, Inc.</u> 81

N.J. 233, 239-40 (1979); <u>see</u> <u>also</u>, 7A <u>Couch on Ins. 3d</u> § 103:19 (2009)("policies

---

[3]  Fidelco has never specified which additional insured endorsement is the alleged source of its purported coverage for the claim at issue.  AHA submits that the relevant endorsement is that explicitly applicable to "Managers or Lessors of Premises," which provides additional insured coverage for scheduled Premises and Persons or Organizations "AS PER WRITTEN CONTRACT," but "*only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [BMS] and shown in the Schedule,*" and subject to exclusions for "*[s]tructural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule*."  Statement of Facts at ¶5 (emphasis added); <u>see</u> <u>also</u>, Exhibit D at AHA 0204 and Exhibit E at AHA 0343.  Thus, even if the "Managers or Lessors Endorsement" could be read to extend Fidelco additional insured status for the claim at issue, which it cannot, there can be no dispute that the roofing work qualifies as "structural alterations, new construction or demolition operations" within the intent of the Endorsement's exclusionary terms.  Either way, Fidelco is not insured for BMS's claim under the Managers or Lessors Endorsement.

Alternatively, Fidelco may also claim additional insured coverage under the "Where Required Under Contract or Agreement Endorsement," which extends additional insured status to persons or organizations with which BMS contracts to provide such coverage, "*but only with respect to liability arising out of [BMS's] operations or premises owned by or rented to [BMS].*" Statement of Facts at ¶6 (emphasis added); <u>see</u> <u>also</u>, Exhibit D at AHA 0182 and Exhibit E at AHA 0310 and AHA 0349.  That Endorsement further provides that the insurance will not "exceed the lesser of" the policy limits or the limits required by said contract or agreement, and is therefore subject to a maximum coverage of $100,000, the minimum coverage required under the lease agreement. <u>Id</u>.

AHA submits that the more specific Managers or Lessors Endorsement applies to the Fidelco/BMS lease insurance requirement.  <u>See</u>, <u>generally</u>, Donald S. Malecki, CPCU, *et al.*, <u>The Additional Insured Book</u>, 215 (5th Ed. July 2004)("The Additional Insured-Managers or Lessors of Premises…endorsement is the primary form used to add as an additional insured the owner of premises from whom the named insured leases property"); <u>Jane D. v. Ordinary Mutual</u>, 32 Cal.App.4th 643, 651, 38 Cal.Rptr.2d 131 (1995) ("In construing insurance contracts, a specific provision relating to a particular subject will govern in respect to that subject as against a general provision, even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates").

of liability insurance are designed to cover an insured's tort liability"); 7A <u>Couch on Ins. 3d</u> § 104:27 (2009)("If...there is liability only for the negligence of the insured, it necessarily follows that the third-party claimant has no right or cause of action against the insurer if the insured was not negligent")(*citing* <u>Finlay v. Standard Acc. Ins. Co.</u>, 19 So.2d 302 (La.Ct.App. 1st Cir. 1944)).

New Jersey courts have further held that additional insured endorsements such as those potentially at issue here generally afford an additional insured coverage for a *third party's injury* "originating from" or "growing out of," or having a "substantial nexus" to the work, operations, or premises of the named insured.  <u>See</u>, <u>e.g.</u>, <u>County of Hudson v. Selective Ins. Co.</u>, 332 N.J. Super. 107, 115 (App. Div. 2000); <u>Pennsville v. American Motorists Ins. Co.</u>, 315 N.J. Super. 519, 523 (App. Div. 1998); <u>see</u> <u>also</u>, <u>Franklin Mut. Ins. Co. v. Security Indem. Ins. Co.</u>, 275 N.J. Super. 335, 340-41 (App. Div.)*, certif. denied*, 139 N.J. 185 (1994)(coverage sought by landlord for injury to third party pedestrian); <u>Harrah's Atlantic City, Inc. v. Harleysville Ins. Co.</u>, 288 N.J. Super. 152, 158-59 (App. Div. 1996)(landlord casino sought coverage under tenant policy for injury to tenant's patrons crossing public street to get to garage); <u>Liberty Village Associates v. West American Ins. Co.</u>, 308 N.J. Super. 393, 401-02 (App. Div.), *certif. denied*, 154 N.J. 609 (1998)(slip and fall of patron while entering tenant's store held to arise out of tenant's use of leased premises entitling landlord to coverage); <u>Campbell v.</u>

Shrewsbury Surgicenter, 2009 WL 383364, *7-8 (N.J. App. Div., February 18, 2009), *certif. denied*, 199 N.J. 134 (2009)(landlord entitled to coverage for slip and fall of two patrons in parking lot of tenant because it arose out of tenant's business).[4] Such cases grapple with the contracting parties' expectations regarding the transfer of risk of a *third party's* injury, and in that context, the question whether the injury "arises out of" a named insured's work, operations or premises is a rational inquiry.

Here, Fidelco seeks coverage for its lease liability owed to its tenant under the tenant's own policy. It does not seek coverage for its liability owed to a third party allegedly arising out of its tenant's own operations, work or premises.

A substantially similar issue was addressed in Insurance Corp. of New York v. Cohoes Realty Associates, LP, 50 A.D.3d 1228, 854 N.Y.S.2d 815, 818 (3d Dep't 2008). There, a property owner sought coverage under the Managers or Lessors Endorsement in its tenant's liability policy for claims asserted against the property owner by a tenant and its property insurer to recover for damage to the tenant's property resulting from a fire at the leased premises. Id. at 818. The New York appellate court denied the property owner's claim for additional insurance under the tenant's liability policy, finding that the additional insured grant "only

---

[4]  A copy of this case is attached as Exhibit W to the Cohen Dec.

refers to liability stemming from third party actions, not any potential liability of the landlord or the property owner" owed to the tenant. Id.[5]

Similarly, in the instant case there was no claimed injury to a third party, only damages to the tenant sought pursuant to the provisions of the lease under which the landlord retained responsibility for and control over performing repair to the roof.  It is undisputed that BMS did not participate in any aspect of the roofing work performed at the Somerville Facility.  Statement of Facts at ¶¶21-23, 35; see also, Stipulation of Facts in underlying arbitration at ¶¶8, 10-12, Exhibit F; Wheatley Report at page 6 of 7, Exhibit Q to the Cohen Dec.  Nor did it participate in any aspect of the roofing survey conducted by Fidelco in May 2005 which led to Fidelco's ultimate determination to replace a roof that had a history of leaking as far back as 1996.  Statement of Facts at ¶¶20-23; see also, Leavy Report at

---

[5]   Thus, while general liability insurance policies frequently extend incidental contractual liability coverage, such coverage extends only to an insured's contractually assumed indemnity obligation owed to another for the risk of injury to a *third party.*  Weedo, supra, 81 N.J. at 239-40; see also, Krastanov v. K. Hovnanian/Shore Acquisitions, LLC, 2008 WL 2986475, *6 (N.J. App. Div., August 6, 2008), *certif. denied*, 198 N.J. 311 (2009)("no language [in subcontractor agreement] requires a contractual liability endorsement solely to cover the obligations assumed by the subcontractor under the indemnity provisions"), Exhibit X to the Cohen Dec.; 7A Couch, supra, at § 103:19 ("liability based upon contract is generally excluded from coverage"); Commercial Union Ins. Co. v. Basic Am. Medical, Inc. 703 F.Supp. 629, 633 (E.D. Mich. 1989)(insurer does not intend to "underwrite its insureds' contracts but to limit coverage to the insured's tort liability"); Ostrager & Newman, Handbook on Insurance Coverage Disputes, Vol. I at §7.05, pg. 460 (12th Ed. 2004)("courts have consistently interpreted the phrase 'liability assumed by the insured under any contract' to apply only to indemnification and hold-harmless agreements, whereby the insured agrees to 'assume' the tort liability of another.  This phrase does not refer to the insured's breaches of its own contracts").

SF00536, Exhibit I to the Cohen Dec. In no regard may Fidelco's liability to BMS be said to arise from BMS's operations or premises.[6]

The Lease in this case makes clear that sole responsibility for the maintenance and repair of the roof at the Somerville Facility rests with Fidelco, which contracted with BMS to be responsible for "...any damage to [BMS's] property or...damage caused by [Fidelco's] or its agent's or contractor's negligence" and "damages...for any...damages or losses to person or property...that may be suffered by [BMS]...in, on or about the demised premises or any part thereof...[if] such damage is caused by the sole negligence of [Fidelco], its agents, servants or employees."[7] Lease at Sections 5.1, 11.4 and 29.1, Exhibit G to the Cohen Dec.; see also, Statement of Facts at ¶¶14, 18-19. More to the

---

[6] AHA anticipates that Fidelco may attempt to argue that it challenged BMS's claim in part by alleging that BMS was itself responsible under the Lease for replacement of a portion of the roof. Statement of Facts at ¶36; see also, Arbitration Submission of Fidelco at pages 4-5, Exhibit R to the Cohen Dec. However, Fidelco never submitted an expert report in the underlying arbitration to rebut that of BMS expert Wheatley. Statement of Facts at ¶¶34-36; see also, "Report on the Interpretation of Terminology" by Wheatley US Limited at page 6 of 7, Exhibit Q. Nevertheless this allegation is irrelevant. The scope of coverage is determined not on the basis of Fidelco's affirmative defense alleging a right of set off for the cost of roof repair as BMS's alleged obligation under the Lease, but upon the basis of *BMS's claims against Fidelco*, the only claims defended, settled and for which coverage is sought. See, e.g., Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992)(the duty to defend is triggered by a complaint alleging a covered claim); Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22 (1984).

[7] Conversely, BMS agreed to indemnify Fidelco from "any and all claims, demands, liability, suits, actions, proceedings...costs, expenses and attorney's fees arising from or in connection with any breach of this Lease by [BMS] or the use [or] operation of the demised premises by [BMS] or the conduct of [BMS's] business (unless caused solely by negligence of the Landlord, its employees or agents)." Lease at Section 6.7, Exhibit G. BMS clearly did not, by operation of this clause, agree to indemnify Fidelco for *Fidelco's* breach of *its* lease obligations, nor for a roofing project which, for the reasons explained above, did not arise in any way out of BMS's operations or BMS's use of the premises.

point, it is perfectly obvious that in suing Fidelco, BMS was not alleging that the roofing project was in any way its own "operation" or lease obligation. See, Demand for Arbitration, Exhibit P ("[c]laim for breach of commercial lease by tenant against landlord arising out of asbestos contamination at leased premises...caused by landlord's roofing contractor"). Rather, its claim was predicated upon the allegation that the roof repair obligation rested with Fidelco under the lease. Id.; see also, BMS's Arbitration Submission at pages 17-19, Exhibit S to the Cohen Dec.

In Pennsville, the Appellate Division held that "the question whether a party is insured at all may be ...susceptible of resolution by reference to...an underlying contract...which clarifies the intendments of the parties in apportioning responsibility and providing for insurance coverage." 315 N.J. Super. at 523; see also, County of Hudson, supra, 332 N.J. Super. at 116-17 (looking to content of underlying contract to ascertain whether the putative additional insured would "reasonably expect coverage"). In Pennsville, the lease agreement expressly called for the landlord to indemnify the tenant from loss or liability for damages "resulting from Landlord's failure to carry out repairs or maintenance of the common areas required of it by this Lease," whereas the lease delineated that the tenant bore no responsibility for the common areas. 315 N.J. Super. at 521-23. Thus, the landlord was not entitled to coverage under the tenant's policy when a

customer of the tenant fell in the parking lot, a designated "common area," since the landlord had agreed to indemnify the *tenant* for such liability. Id. at 521-22.

The facts of the instant case are even more compelling than those presented in Pennsville, because here there is an absence of any claim by a third party, only a claim between the parties to the Lease. Lease at Sections 6.2, 6.5 and 6.7, Exhibit G to the Cohen Dec. There is no evidence of any contractual intent that BMS would obtain insurance for Fidelco's liability owed to BMS, which was the only liability that Fidelco defended against and settled in the arbitration proceedings. To grant coverage to Fidelco through BMS's own insurance is to place Fidelco's lease obligations, and the risks associated with its performance of those obligations, on the back of BMS and would be inconsistent with the contracting parties' risk transfer expectations. Pennsville, 315 N.J. Super. at 523; compare, Campbell, supra, 2009 WL 383364 at *7-8 (tenant's insurance policy responsible for insuring the landlord against injury to third persons because the lease did not specify that tenant's responsibility was limited to the demised premises and did not provide that landlord would indemnify tenant for any accident occurring in the parking lot or other common area). Exhibit W to the Cohen Dec.

B.    **The AHA Policies' "Owned Property" Exclusion Clearly and Unequivocally Excludes Coverage For Damage to BMS's Property.**

Even if Fidelco did qualify as an additional insured for purposes of BMS's lease arbitration claims, coverage would be barred because the Policies contain an operative exclusion for "property damage" to property owned, rented or occupied by BMS.   Such damages were precisely what BMS sought from Fidelco in the underlying arbitration proceedings.    Arbitration Demand, Exhibit P; see also, BMS's Arbitration Submission, Exhibit S.

Exclusion j in the AHA Policies provides in relevant part:

> This insurance does not apply to:
>
> **j.  Damage to Property**
>
> "Property Damage" to:
>
> 1.  Property you[8] own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

Statement of Facts at ¶7, see also, Exhibit D at AHA 0153 and Exhibit E at AHA 0269.

---

[8] "You" refers to the Policies' named insured, BMS.  Statement of Facts at ¶4; see also, Exhibit D at AHA 0150 and Exhibit E at AHA 0268.

Liability insurance contracts are distinct from first party insurance, and are not intended to insure for the risk of injury or loss to an insured's own property. See, 12 Couch on Ins. 3d § 172:26 (2009)("[l]iability insurance, by contrast to property insurance, covers the liability of the insured for property damage to property that is not owned by, or in the care or custody of, the insured"); see also, Aetna Cas. & Sur. Co. v. General Time Corp, 704 F.2d 80, 83 (2d Cir. 1983)("there can be no recovery for intangible losses unless there has been actual physical damage to property other than the property of the insured"). As noted above, they insure for liability for damage to *third parties*, not to a named insured. 7A Couch, supra, at §§ 103:19 & 104:27.

Fidelco essentially demands coverage under its *tenant's* policy for claims asserted by the *tenant* for injuries to the *tenant's* property. However, the AHA Policies plainly exclude coverage for damages because of property damage to BMS's property. The owned property exclusion is clear and should be enforced as written. State v. Signo Trading International, Inc., 130 N.J. 51, 63 (1992); Reliance Ins. Co. v. Armstrong World Industries, Inc., 292 N.J. Super. 365, 385 (App. Div. 1996); see also, Cohoes Realty Associates, supra, 854 N.Y.S.2d at 818 (noting that there would be no coverage for the property owner for damage to property owned by the insured).

This exclusion gives further expression to the underwriting intent that the risk of injury to BMS's property occasioned by Fidelco's negligence would remain with Fidelco, and would not effectively pass back to BMS through BMS's own liability insurance. See, Liberty Mut. Ins. Co. v. Travelers Indem. Co., 78 F.3d 639, 642 (D.C. Cir. 1996)(an additional insured has the same rights to a defense and indemnity as the named insured, but no more); see also, Massachusetts Turnpike Auth. v. Perini Corp., 349 Mass. 448, 208 N.E.2d 807, 813 (1965)("[t]he naming of additional insureds does not extend the nature of the substantive coverage originally given by the policy but merely gives to other persons the same protection afforded to the principal insured").

Fidelco at all times maintained the risk of liability to BMS arising from Fidelco's maintenance and repair of the roof at the Facility, and such was the nature of the allegations against Fidelco in the underlying arbitration. Statement of Facts at ¶¶33-38; see also, BMS Demand for Arbitration and Arbitration Submission, Exhibits P and S to the Cohen Dec. It is that alleged liability which Fidelco defended and settled, and such is distinctly beyond the scope of additional insurance granted to Fidelco by BMS under the Lease.

Accordingly, for all of the reasons set forth above, additional insured coverage is not provided to Fidelco for its liability defended and settled in the arbitration proceedings with AHA's named insured, BMS.

{00588247.DOC}

15

## POINT II

## IN THE ALTERNATIVE, AHA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT DECLARING THAT THERE IS NO COVERAGE AFFORDED UNDER THE 06-07 AHA POLICY.

The 06-07 AHA Policy does not provide coverage for "property damage" which the named insured knew had occurred, in whole or in part, prior to the policy period, nor to any "continuation, change or resumption of such…'property damage' during or after the policy period…." Statement of Facts at ¶8; see also, Exhibit E at AHA 0266. Pursuant to the limiting provisions of the 06-07 AHA Policy's insuring agreement, an insured is deemed to have "known" that the property damage occurred no later than when it receives a written or verbal demand or claim for damages because of the property damage; or otherwise becomes aware of a claim for damages "by any other means." Id.

The 06-07 AHA Policy incepted January 1, 2006. Exhibit E at AHA 0257. By no later than September 22, 2005, Fidelco's roofing contractor had ceased roofing work due to BMS's complaints of dust and debris infiltration, and by November 11, 2005, BMS had placed Fidelco on notice, in writing, that BMS might seek reimbursement of "costs and expenses that have resulted from the debris and dust that is in the interior of the leasehold, which is affecting BMS' [sic] ability to use the leasehold for the purpose for which it is intended." Statement of Facts at ¶¶ 24-25, 29; see also, Incident Report, Exhibit J; "Notes: (September 22,

2005)" and transcript to deposition of Barry Ages at 36:3 – 39:19, both attached as Exhibit K, and November 11, 2005 letter, Exhibit L to the Cohen Dec.

Accordingly, BMS clearly had knowledge of the alleged property damage contemporaneously with it taking place, and certainly by no later than September 22, 2005, when it demanded that Badger cease operations due to infiltration.

Thus, AHA submits in the alternative that there is no coverage for Fidelco under the 06-07 AHA Policy because BMS was well aware that the alleged property damage had occurred and/or was continuing prior that Policy's inception on January 1, 2006.

## CONCLUSION

For the foregoing reasons, AHA respectfully submits that it is entitled to summary judgment, dismissing the entirety of the Third Party Complaint with prejudice.

Respectfully submitted,

**SAIBER LLC**
One Gateway Center, 13th Floor,
Newark, New Jersey 07102-5311
TEL: 973-622-3333
Attorneys for Third Party Defendant
American Home Assurance Company

_**s/Michael H. Cohen**_

MICHAEL H. COHEN

DATED: October 9, 2009