Michael H. Cohen, Esq.
SAIBER LLC
One Gateway Center, 13th Floor,
Newark, New Jersey 07102-5311
TEL: 973-622-3333
Attorneys for Third Party Defendant
American Home Assurance Company

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>                Plaintiff,<br>vs.<br><br>SOMERVILLE FIDELCO ASSOCIATES,<br>L.P. and BADGER ROOFING CO., INC.,<br><br>                Defendants. | Civil Action No.: 3:07-cv-02763 (AET) (TJB)<br><br>**ELECTRONICALLY FILED**<br><br><u>Return Date:</u><br>**TO BE DECIDED** |
| SOMERVILLE FIDELCO ASSOCIATES,<br>L.P.,<br>              Third Party Plaintiffs,<br>vs.<br><br>QUINCY MUTUAL FIRE INSURANCE<br>COMPANY, AMERICAN HOME<br>ASSURANCE COMPANY,<br><br>              Third Party Defendants. | **RULE 56.1 STATEMENT OF<br>MATERIAL FACTS NOT IN DISPUTE**<br><br>**ORAL ARGUMENT REQUESTED** |

      In support of its motion for summary judgment, Third Party Defendant American Home Assurance Company ("AHA") submits that the following material facts are not in dispute:

**I.    THE DJ SUIT**

    1.    Scottsdale Insurance Company ("Scottsdale") commenced this lawsuit against Somerville Fidelco Associates, L.P. ("Fidelco") and Badger Roofing Co., Inc. ("Badger") on June 13, 2007 seeking a declaration that: (1) Fidelco is not an additional insured on Scottsdale's general liability policy issued to Badger for the claims arbitrated between Fidelco and its tenant, Bristol Myers-Squibb ("BMS"), in connection with damage suffered by BMS during a roofing project performed by Fidelco and Badger, its contractor (see Section IV, below); (2) it does not owe coverage to Badger for the BMS arbitration claims nor for Badger's own

{00586651.DOC}                              1

poor workmanship; and (3) any coverage for Badger and Fidelco is barred under the asbestos and pollution exclusions contained in the Scottsdale policy. See, Complaint for Declaratory Judgment (PACER Document 1), Exhibit A to the Declaration of Michael H. Cohen, Esq. submitted in support of this Motion ("the Cohen Dec.").

2. On March 14, 2008, Fidelco filed a Third Party Complaint asserting that it is an additional insured under consecutive general liability policies issued by AHA to BMS ("the AHA Policies") for the arbitration claims, and seeking coverage under its own Businessowner's (GL) policy issued by Quincy Mutual. See, Third Party Complaint (PACER Document 17), Exhibit B to the Cohen Dec.

3. On August 8, 2008, AHA filed a First Amended Answer, largely denying Fidelco's allegations. See, First Amended Answer (PACER Document 32), Exhibit C to the Cohen Dec.[1]

## II. **THE AHA POLICIES**

4. AHA issued general liability policy numbers GL 554-87-75 ("the 05-06 AHA Policy") and GL 575-14-52 ("the 06-07 AHA Policy") to BMS for the period extending from January 1, 2005 through January 1, 2007, each subject to a $5 million per occurrence limit. "You" refers only to the Policies' named insured, BMS. See, the 05-06 AHA Policy at AHA 0145 and AHA 0150 and the 06-07 AHA Policy at AHA 0258 and AHA 0268, attached as Exhibits D and E, respectively, to the Cohen Dec.

5. Both AHA Policies contain an Additional Insured-Managers or Lessors of Premises Endorsement, which provides in relevant part:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> SCHEDULE
>
> 1. Designation of Premises (Part Leased to You): AS PER WRITTEN CONTRACT
> 2. Name of Person or Organization (Additional Insured): AS PER WRITTEN CONTRACT
> 3. Additional Premium: INCLUDED
>
> (If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
>
> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule ***but only with respect to liability arising out of the ownership, maintenance or use of that part of***

---

[1] AHA had filed its initial Answer to the Third Party Complaint on May 15, 2008 (PACER Document 26).

*the premises leased to you* and shown in the Schedule and subject to the following additional exclusions:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

See, the 05-06 AHA Policy at AHA 0204, Exhibit D and the 06-07 AHA Policy at AHA 0343, Exhibit E (emphasis added).

6. Both AHA Policies contain an Additional Insured-Where Required Under Contract or Agreement Endorsement which provides in relevant part:

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Section II – Who is an Insured, 1., is amended to add:

f) Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, **but only with respect to liability arising out of your operations or premises owned by or rented to you**. However, the insurance provided will not exceed the lesser of:

1. The coverage and/or limits of this policy; or

2. The coverage and/or limits required by said contract or agreement.

See, the 05-06 AHA Policy at AHA 0182, Exhibit D and the 06-07 AHA Policy at AHA 0310 & AHA 0349, Exhibit E (emphasis added).

7. Both AHA Policies contain the following exclusion:

SECTION I – COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

2. Exclusions

This insurance does not apply to:

\* \* \*

    j.    Damage To Property

    "Property Damage" to:

    1.    Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

\* \* \*

See, the 05-06 AHA Policy at AHA 0153, Exhibit D; the 06-07 AHA Policy at AHA 0269, Exhibit E.

8.    The 06-07 AHA Policy contains the following language in its Insuring Agreement:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

    1.    Insuring Agreement

\* \* \*

    a.    This insurance applies to "bodily injury" and "property damage" only if:

    (3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

    d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

See, the 06-07 AHA Policy at AHA 0266, Exhibit E.

9. The 06-07 AHA Policy contains the following language under SECTION II – WHO IS AN INSURED:

    1. If you are designated in the Declarations as:

        \* \* \*

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their duties as stockholders.

        \* \* \*

See, the 06-07 AHA Policy at AHA 0274, Exhibit E.

10. BMS is designated in the Declarations of the 06-07 AHA Policy as an "Organization (Other than Partnership or Joint Venture)," and is further identified as a corporation. See, the 06-07 AHA Policy at AHA 0258, Exhibit E.

### III. THE LEASE AGREEMENT

11. Fidelco is the owner of 76 Fourth Street, Somerville, New Jersey ("the Somerville Facility") at which BMS has been the sole tenant since 1987. See, Stipulation of Facts in the matter of Bristol Myers-Squibb Co. v. Somerville Fidelco Associates, L.P., American Arbitration Association Case No. 18 115 Y 01071 06 ("the underlying arbitration"), at ¶¶1-3, Exhibit F to the Cohen Dec.; see also, Lease dated October 23, 1987 at SF01346 – SF01347, Exhibit G to the Cohen Dec.

12. At all relevant times, BMS utilized the Somerville Facility to house and quarantine monkeys to be used in pharmaceutical drug testing. See, Stipulation of Facts at ¶6, Exhibit F.

13. The original Lease between Fidelco and BMS is dated October 23, 1987, with extensions through October 31, 2008. See, Stipulation of Facts at ¶¶3-5, Exhibit F; see also, Lease, Exhibit G; Lease Extension Agreement No. 2 dated November 25, 2002; Lease Extension Agreement No. 1 dated May 14, 1993; and Amendment to Lease dated October 23, 1988, all attached at Exhibit H.

14. Section 5.1 of the Lease falls under the subtitle "Repairs," and provides in relevant part:

> *[Fidelco] shall make the necessary structural repairs to the roof and walls of the building of which the Premises are a part (such obligation not to include operating parts such as overhead ducts or fans or skylights).* Except for the above and for what any otherwise be specifically provided for in this Lease, [BMS] shall be responsible for all maintenance and repairs of and to the premises…
>
> Notwithstanding anything above to the contrary, all damage or injury to the premises or to any other part of the said building, or to its fixtures, equipment and appurtenances, whether requiring structural or non-structural repairs caused by or resulting from carelessness, omission, neglect or improper conduct of [BMS], its servants, employees, invitees or licensees, shall be repaired promptly by [BMS] at its sole cost and expense, to the reasonable satisfaction of [Fidelco]…
>
> See, Lease at SF01349 – 01350, Exhibit G (emphasis added).

15. Section 6.2 of the Lease falls under the subtitle "Insurance," and provides in relevant part:

> Tenant [BMS], at its sole cost and expense, but for the mutual benefit of the Landlord [Fidelco] and [BMS], shall maintain:
>
> (a) personal injury and property damage liability insurance against claims, for bodily injury, death or property damage, occurring thereon, in or about the demises [sic] premises or the elevators or any escalator therein and on, in or about the adjoining streets, property and passageways, such insurance to afford minimum protection, during the term of this Lease…of not less than $100,000 for property damage….
>
> See, Lease at SF01350, Exhibit G.

16. Section 6.5 of the Lease falls under the subtitle "Insurance," and provides in relevant part:

> All policies of insurance provided for in this Article 6 shall name [Fidelco] and [BMS] as insureds, as their respective interest may appear…The loss, if any, under any policies provided for in this Article 6 shall be adjusted with the insurance companies by [Fidelco], and its mortgagee, if any. Each such policy shall contain a provision, that no act or omission of [BMS] shall affect or limit the obligations of the insurance company to pay to [Fidelco] the amount of any loss sustained.
>
> See, Lease at SF01351, Exhibit G.

17. Section 6.7 of the Lease falls under the subtitle "Insurance," and provides in relevant part:

> In addition to the foregoing, [BMS] covenants and agrees to indemnify and save harmless [Fidelco] from any and all claims, demands, liability, suits, actions, proceedings, judgments, executions, levies, costs, expenses and attorney's fees arising from or *in connection with any breach of this Lease by [BMS] or the use [or] operation of the demised premises by [BMS] or the conduct of [BMS'] business (unless caused solely by the negligence of [Fidelco], its employees or agents).*
>
> See, Lease at SF01351, Exhibit G (emphasis added).

18. Section 11.4 of the Lease falls under the subtitle "Landlord's Right to Inspect and to Make Repairs," and provides in relevant part:

> …[Fidelco] shall not in any event be liable for inconvenience, annoyance, disturbance, loss of business or any damages that [BMS] may suffer or sustain by reason of making any repairs or the performance of any work in the demised premises during usual business hours and obligations of [BMS] under this Lease shall not thereby be affected in any manner whatsoever. [Fidelco] agrees to do all such work at all reasonable times during usual business hours and in connection with the doing of any such work to cause as little inconvenience, annoyance, disturbance, loss of business or other damage to [BMS] as may reasonably be possible in the circumstances, and *in the event [Fidelco] shall cause any damage to [BMS's] property or if damage caused by [Fidelco's] or its agents or contractor's negligence, [Fidelco] shall be liable for the damage.*
>
> See, Lease at SF01353, Exhibit G (emphasis added).

19. Section 29.1 of the Lease falls under the subtitle "Non-Liability of Landlord for injury or damage," and provides:

> From and after the commencement of the initial or demised term, [Fidelco] shall not be liable or responsible in damages during the term of this Lease for any personal injury, death, damages or losses to person or property, of every kind, nature and description from any source or cause whatsoever that may be suffered or sustained by [BMS], it agents, servants, employees, patrons, customers, invitees, visitors or licensees, or to any other person in, on or about the demised premises or any part thereof, including all streets, curbs, sidewalks and roadways adjoining or abutting the demised premises or appurtenances thereto, *unless such damage or injury is caused by the sole negligence of the Landlord, its agents, servants or employees.*
>
> See, Lease at SF01363 – SF01364, Exhibit G (emphasis added).

## IV. THE ROOFING PROJECT

20. The roof at the Somerville Facility had a history of leaks dating back to at least 1996. See, Stipulation of Facts at ¶7, Exhibit F to the Cohen Dec.

21. On May 25, 2005, Harry H. Leavy, Inc., a roofing consultant hired by Fidelco, rendered a report to Fidelco (and specifically to Barry Ages) wherein it noted "[t]he overall condition of the roof membrane appears to be very poor and there is ample evidence of many leaks and repairs," and recommended "…all roofing be removed down to the metal deck, new insulation installed and a new roof system installed also." See, "Presentation of Visual Roof Survey" at SF00539 – SF00540, Exhibit I to the Cohen Dec.; see also, Stipulation of Facts at ¶¶13-14, Exhibit F.

22. At all relevant times, Barry Ages acted as a duly authorized representative of Fidelco. See, Stipulation of Facts at ¶9, Exhibit F.

23. In July 2005, Fidelco (through Mr. Ages) hired Badger to perform the removal and replacement of the roof at the Somerville Facility. Badger commenced roof removal at the Facility in September 2005. See, Stipulation of Facts at ¶¶8, 10 & 12, Exhibit F.

24. On September 22, 2005, Badger ceased the roof removal work at the demand of BMS because of the amount of dust and debris entering the interior of the Somerville Facility. See, Stipulation of Facts at ¶¶22-24, Exhibit F; see also, Incident Report dated September 27, 2005, Exhibit J to the Cohen Dec.

25. On September 22, 2005, BMS had also expressed concern to Fidelco regarding the dust and debris entering the Facility because of the roofing work. See, "Notes: (September 22, 2005)" of Barry Ages; see also, transcript to deposition of Barry Ages at 36:3 – 39:19, both attached as Exhibit K to the Cohen Dec.

26. Environmental testing performed thereafter by two different companies hired by BMS showed the presence of asbestos in some of the wipe samples and bulk samples of the materials that entered the Facility and in the core samples obtained from the roof, though no asbestos above permissible concentrations was found in the air samples taken. See, Stipulation of Facts at ¶¶25-27, Exhibit F.

27. In October 2005, Fidelco hired Slavco Construction to complete the roof removal work at the Somerville Facility, which work was performed between December 16, 2005 and December 19, 2005. Badger completed the remainder of the roof replacement work during the same time period. See, Stipulation of Facts at ¶¶28-31, Exhibit F.

28. BMS retained the services of Bristol Environmental, Inc. to clean-up the interior of the Somerville Facility, which was conducted in two phases: in October 2005, and from January to March 2006. See, Stipulation of Facts at ¶ 33, Exhibit F.

29. By letter dated November 11, 2005, BMS advised Fidelco that, inter alia, *"BMS is reserving all of its rights as related to the adverse impacts, including costs and expenses, that have resulted from the debris and dust that is in the interior of the leasehold, which is*

*affecting BMS's ability to use the leasehold for the purpose for which it was intended."* See, Exhibit L to the Cohen Dec. (emphasis added).

30. By letter dated March 24, 2006, BMS demanded that Fidelco reimburse it $662,857.27 incurred in "considerable costs and expenses to prevent its employees and research monkeys from being exposed to asbestos and asbestos containing materials...that were released into the Somerville Facility by a roofing contractor who, during the period of September 20th to 22nd, 2005 conducted roof renovations...on behalf of, and as agent for, [Fidelco] the owners of the subject facility." See, Exhibit M to the Cohen Dec.

31. By letter dated May 12, 2006, Fidelco's counsel rejected the March 24, 2006 demand and reserved the right to backcharge BMS for all costs incurred in replacing the roof membrane, including "all added costs generated by the delays imposed upon [Fidelco] by [BMS]." Counsel also stated that it was the lease responsibility of BMS to replace the "roof membrane," while Fidelco's obligations "...relate only to the 'structure', which includes only the roof decking." See, Exhibit N to the Cohen Dec.

32. By letter dated June 20, 2006, BMS's counsel rejected that BMS was responsible for replacing the roof membrane, stating that *"[a]s a result of the asbestos contamination at the facility caused by Badger, BMS has incurred significant damage including asbestos abatement expenses and business interruption at the Somerville Facility,"* and that Fidelco is liable to BMS for these damages under the Lease, as well as rent abatement for the 6-month time period when BMS was not able "to fully utilize the facility for its intended purpose." Counsel also advised that he had been directed to file an arbitration demand in accordance with the Lease. See, Exhibit O to the Cohen Dec. (emphasis added).

## V. THE UNDERLYING ARBITRATION

33. On or about August 4, 2006, BMS filed a Demand for Arbitration against Fidelco, seeking $734,175.00 for "[c]laim for breach of commercial lease by tenant against landlord arising out of asbestos contamination at leased premises (located in Somerville, New Jersey) caused by landlord's roofing contractor." See, Demand for Arbitration, Exhibit P to the Cohen Dec.

34. In the arbitration, BMS submitted an expert report wherein it was opined that, inter alia, it was not the lease responsibility of BMS to perform repairs of the roof membrane at the Somerville Facility, and that "...as the terms 'roof,' 'structure,' 'structural' and 'component' are used in the design, construction, and real estate development industries, the language of the lease would require the landlord to perform repairs to the roof membrane in the event of leaks." See, "Report on the Interpretation of Terminology" by Wheatley US Limited, dated March 7, 2007 ("the Wheatley Report"), at page 6 of 7, Exhibit Q to the Cohen Dec.

35. In the Wheatley Report, it was also stated that "John Chapman [of BMS] has testified that it was always his understanding that the landlord was responsible for the roof. At no time did [Fidelco] involve BMS in the re-roofing project. BMS had no input to selection of contractor(s), the specification of the roof, or the form of contract. [Fidelco] did not seek BMS's approval of the contract prior to letting the contract." Id.

36. Fidelco never submitted a rebuttal to the Wheatley Report, but maintained simply that it was only responsible for the "structural components" of the roof, the replacement of which was not a cause of any damage to BMS. See, Arbitration Submission of Fidelco, dated March 30, 2007, at pages 4-5, Exhibit R to the Cohen Dec.

37. Going into the arbitration hearing, BMS was seeking a total of $746,191.00 from Fidelco: $449,981 for costs incurred by BMS to decontaminate the Somerville Facility; $224,210 for animal care and alternative boarding of the test monkeys; and $72,000 in rent abatement during the six-month period (October 2005 through March 2006) that BMS had limited use of the Somerville Facility. See, BMS's Arbitration Submission, dated March 29, 2007, at page 15, Exhibit S to the Cohen Dec.

38. On or about April 25, 2007, the eve of the hearing, Fidelco and BMS reached a settlement in principle of the underlying arbitration, with Fidelco paying to BMS the sum of $575,000 "…in full settlement and satisfaction of any claims which were asserted, or which could have been asserted, in the Arbitration." Fidelco also released all claims against BMS. See, Settlement Agreement, separate Releases and settlement check, Exhibit T to the Cohen Dec.

## VI. FIDELCO'S REQUEST FOR COVERAGE FROM AHA

39. Fidelco alleges that it first tendered its claim for additional insured coverage to AHA under the AHA Policies by letter dated March 14, 2007, wherein it also advised AHA for the first time of the pending arbitration filed in August 2006 and of the underlying roof project at the Somerville Facility. See, Third Party Complaint at ¶48, Exhibit B and March 14, 2007 letter, Exhibit U to the Cohen Dec. (also Exhibit K to Third Party Complaint).

40. By letter dated April 26, 2007, Fidelco advised AHA that the parties had reached a settlement in principle, which it would finalize if it did not receive any objection from AHA by the close of business the next day. See, Third Party Complaint at ¶50, Exhibit B and April 26, 2007 letter, Exhibit V to the Cohen Dec.

                                       Respectfully submitted,

                                       SAIBER LLC
One Gateway Center, 13th Floor,
Newark, New Jersey 07102-5311
TEL: 973-622-3333
Attorneys for Third Party Defendant
American Home Assurance Company

                                             **s/Michael H. Cohen**

                                             MICHAEL H. COHEN

DATED: October 9, 2009