# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | : CIVIL ACTION NO. 3:07-cv-02763 |
| Plaintiffs, | : (AET) (TJB) |
| | : |
| v. | : |
| | : |
| SOMERVILLE FIDELCO ASSOCIATES, L.P. and BADGER ROOFING CO., INC. | : |
| Defendants. | : |
| and | : |
| SOMERVILLE FIDELCO ASSOCIATES, L.P. | : |
| Third Party Plaintiff, | : |
| v. | : |
| QUINCY MUTUAL FIRE INSURANCE COMPANY and AMERICAN HOME ASSURANCE COMPANY, | : |
| Third Party Defendants. | : |

**BRIEF ON BEHALF OF DEFENDANT/THIRD PARTY PLAINTIFF, SOMERVILLE FIDELCO ASSOCIATES, L.P. IN OPPOSITIONS TO MOTIONS FOR SUMMARY JUDGMENT FILED BY PLAINTIFF, SCOTTSDALE INSURANCE COMPANY AND THIRD PARTY DEFENDANTS, QUINCY MUTUAL FIRE INSURANCE COMPANY AND AMERICAN HOME ASSURANCE COMPANY**

**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Attorneys for Defendant/Third Party
   Plaintiff, Somerville Fidelco Associates, L.P.

**Of Counsel:**
Jay J. Rice, Esq.
**On the Brief:**
Jay J. Rice, Esq.
Randee M. Matloff, Esq.

# TABLE OF CONTENTS

|  |  | Page(s) |
|---|---|---|
| TABLE OF AUTHORITIES | ......................................... | ii |
| PRELIMINARY STATEMENT | .................................... | 1 |
| STATEMENT OF FACTS | ..................................... | 2 |
| ARGUMENT | ......................................... | 6 |
| POINT I | ......................................... | 6 |
| THE LEGAL STANDARD FOR SUMMARY JUDGMENT | ........ | 6 |
| POINT II |  |  |
| THE LAW WITH RESPECT TO INSURANCE POLICY INTERPRETATION | ...................................... | 7 |
| POINT III |  |  |
| SCOTTSDALE'S MOTION MUST BE DENIED | .................. | 11 |
| A. FIDELCO IS AN ADDITIONAL INSURED | .......... | 12 |
| B. SCOTTSDALE'S ASBESTOS EXCLUSION DOES NOT APPLY | .............................. | 17 |
| C. FIDELCO IS NOT SEEKING COVERAGE FOR BREACH OF CONTRACT | ....................... | 30 |
| D. EXCLUSION J(5) AND (6) DOES NOT PRECLUDE COVERAGE | .................................. | 35 |
| E. SCOTTSDALE'S EXCLUSION J DOES NOT PRECLUDE RELIEF TO FIDELCO | ........................... | 37 |
| POINT IV |  |  |
| QUINCY IS NOT ENTITLED TO SUMMARY JUDGMENT | ........ | 38 |

A.     THE ASBESTOS EXCLUSION IS INAPPLICABLE . . . .     39

B.     THE OWNED PROPERTY EXCLUSION IS
INAPPLICABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     41

**POINT V**

AMERICAN HOME IS NOT ENTITLED TO SUMMARY  JUDGMENT     44

CONCLUSION     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     48

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Advantage Homebuilding, LLC v. Maryland Casualty Co., 470 F.3d
  1003, 1012 (10th Cir. 2006)………………………………………………..36

Aetna Ins. Co. v. Weiss, 174 N.J. Super. 292, 296 (App. Div.), *certif.*
  *denied*, 85 N.J. 127 (1980)……………………………………………………**9**

Allstate Ins. Co. v. Dana Corp., 759 N.E. 2d 1049 (Ind. 2001)………………………42

American Wrecking Corp. v. Burlington Ins. Co., 400 N.J. Super
  276 (App. Div. 2008) ……………………………………………………15

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) …………………………6

Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J.
  245, 257 (2004) …………………………………………………………...9

Blackburn, Nickels & Smith, Inc. v. National Farmers Union
  Property & Casualty Co., 482 N.W. 2d 600 (N.D. 192)…………………………14

Butler v. Boner & Barnewell, Inc., 56 N.J. 567, 576 (1970)………………………..8

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)………………………………6

Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety, 71
  F. Supp. 2d. 394, 400 n.6 (D.N.J. 1999)……………………………………………14

Connor v. Catastrophic Prop. Restoration, LLC, 2007 Kan. App. Unpub.
  LEXIS 73 (2007)…………………………………………………………27

Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), *aff'd o.b.,* 15
  N.J. 573 (1954)……………………………………………………………10

Doto v. Russo, 140 N.J. 544, 557 (1995)…………………………………………… 8, 19

Elglert v. The Home Depot, 389 N.J. Super. 44 (App. Div. 2006), *certif.*
  *denied* 192 N.J. 71 (2007)……………………………………………………15

Elizabethtown Water Co. v. Hartford Casualty Ins. Co., 18 F. Supp. 2d
  464 (D.N.J. 1998)........................................................................30, 35, 37

Ellmex Construction Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195,
  205 (App. Div. 1985) *certif. denied* 103 N.J. 453 (1986)............................8

Estate of Philip Mini v. Metro Supply & Service, 2004 WL 1884173
  (App. Div. June 8, 2004)...............................................................22

Fireman's Fund Ins. Co. v. Fibreboard Corp., 182 Cal. App. 3d 462
  (Cal. App. 1st Dis. 1986)..............................................................19

Fireman's Ins. Co. of Newark v. National Union Fire Ins. Co., 387 N.J.
  Super. 434 (App. Div. 2006).........................................................33

Franklin Mut. Ins. Co. v. Sec. Indem. Ins. Co., 275 N.J. Super. 335,
  340 (App. Div.) *certif. denied*, 139 N.J. 185 (1994).............................45

In re Asbestos Products Liability Litigation, 1997 WL 539916 (E.D.
  La. Sept. 2, 1997).......................................................................26

Insurance Corp. of New York v. Cohoes Realty Associates, LP, 50 A.D. 3d
  1228, 854 N.Y.S.2d 815, 818 (3d Dept. 2008)..................................45

Kievit v. Loyal Prot. Life Ins. Co., 34 N.J. 475, 483 (1961)...........................8

Kimmins Indus. Serv. Corp. v. Reliance Co., 19 F. 3d 78 (2d Cir. 1994)............24, 26

Latino v. Greg's Landscaping, Inc., 2006 WL 2457837
  (Law Div. Aug. 18, 2006).............................................................15

Lennar Corp. v. Great American Ins. Co., 200 S.W. 3d 651, 692 (Tex-App.
  Houston 2006)...........................................................................42

Lubermen's Mutual Casualty Co. v. Logan, 88 A.D. 2d 971, 451 N.Y.S.
  2d 804 (2d Dept. 1982)................................................................29

Lucker Mfg. A Unit of Amclyde Engineered Prods., Inc. v. Home
  Ins. Co., 23 F.3d 808, 815 (3d Cir. 1994)........................................34

Marino v Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)........................6

Mazzili v. Accident & Cas. Ins. Co., 35 N.J. 1, 7 (1961)................................7

<u>Meier v. New Jersey Life Ins. Co.</u>, 101 N.J. 597, 612 (1986)...........................8

<u>Mid-Continent Cas. Co. v. JHP Dev., Inc.</u>, 557 F.3d 207 (5th Cir. 2009)..............36

<u>Morrone v. Harleysville Mut. Ins. Co.</u>, 283 N.J. Super. 411, 420
   (App. Div. 1995)................................................................................8

<u>Morton Inter., Inc. v. General Acc. Ins. Co.</u>, 134 N.J. 1, 76 (1993)
   *cert. denied* 512 U.S. 1245 (1994)..........................................................8

<u>Muller Fuel Oil Co. v. Insurance Co. of North American</u>, 95 N.J. Super.
   564 (App. Div. 1967).........................................................................13

<u>Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.</u>, 562 F.3d 591 (3d Cir. 2009).............31

<u>Newark Ins. Co. v. Acupac Packaging, Inc.</u>, 328 N.J. Super. 385 (App. Div. 2000)..33

<u>Nunn v. Franklin Mutual Insurance Company</u>, 274 N.J. Super. 543 (App.
   Div. 1994)......................................................................................40

<u>Owens Corning v. National Union</u>, 1998 WL 774109 (6th Cir. Oct. 13, 1998)...........28

<u>Pennsylville Shopping Center Corp. v. American Motorist</u>, 315 N.J. Super.
   519 (App. Div. 1998), *certif. denied* 157 N.J. 647 (1999)................................46

<u>Reliance Ins. Co. v. Armstrong</u>, 292 N.J. Super. 365 (App. Div. 1996)................42

<u>Rupp v. American Crystal Sugar Co.</u>, 465 N.W. 2d 614, 617 (N.D. 1991)............14, 15

<u>Simonetti v. Selective Insurance Co.</u>, 372 N.J. Super. 421, 431 (App. Div.
   2004)........................................................................................7, 29

<u>Sparks v. St. Paul Ins. Co.</u>, 100 N.J. 325 (1985).............................................8

<u>SL Indus., Inc. v. Am. Motorists Ins. Co.</u>, 128 N.J. 188, 198-99 (1992).................10, 22, 46

<u>St. Hudson Engineers, Inc. v. Pennsylvania National Mutual Casualty Co.</u>,
   388 N.J. Super. 592, 604 (App. Div. 2006), *cert. denied* 189 N.J. 647 (2007)......... 8, 10, 29

<u>State v. Ernst & Young LLP</u>, 386 N.J. Super. 600, 612 (App. Div. 2006)..............13

<u>State v. Signo Trading International, Inc.</u>, 130 N.J. 51 (1992)..........................41

State Farm Fire & Cas. Co. v. English Cove Ass'n., Inc., 121 Wash. App.
   358, 88 P.3d 986, 992 (2004)................................................................42

Tandy v. Allen, 14 N.J. 1, 6 (1953)................................................................13

Travelers Indemnity CO. v. Dammann & Co., 2008 WL 370914 (D.N.J.
   Feb. 11, 2008)................................................................31

United National Ins. Co. v. St. Paul Reinsurance Co., 2008 WL 4671780
   (M.D. Pa. Oct. 17, 2008)................................................................31

United Services Automobile Assn. V. Olin, 178 A.D. 2d 528, 577 N.Y.S.2d
   447 (2 Dept. 1991)................................................................29

Van Orman v. American Insurance Co., 680 F.2d 301, 306 (3d Cir. 1982)............13, 16

Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)..........................8, 10, 46

Walnut Grove Partnership LP v. American Family Mutual Ins. Co., 2004
   WL 5348863 (S.D. Iowa Oct. 4, 2004)................................................................42

Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 249 (1979)................................32

Willing v. Community Association Underwriters of Ameican, 2007
   WL 1991038 (W.D. Wash. July 5, 2007)................................................................42

Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 320 (1985)......................8

Zurich v. American Ins. Co. v. Keating Bldg. Corp., 513 F. Supp. 2d 55
   (D.N.J. 2007)................................................................9

## OTHER

Lee R. Russ and Thomas F. Segalla, *Couch on Insurance* 3d, § 129:2 (1997).........11

5 John Alan Appleman, Insurance Law & Practice, §3083, at 309-11 (1970).........10

## PRELIMINARY STATEMENT

Before the Court are three motions for summary judgment filed by three different insurers seeking to be relieved of their contractual obligations to provide coverage for an occurrence which resulted in property damage and loss of use of tangible property. This brief is submitted on behalf of Somerville Fidelco Associates LP ("Fidelco" or "SF") in opposition to these motions.

We contend that it is beyond peradventure of doubt that Fidelco is entitled to insurance coverage for the damages it paid to settle its dispute with Bristol Myers Squibb ("BMS") and that each insurer breached its contractual obligation to defend and indemnify, as well as its duty of good faith and fair dealing. Each insurer contends that there is no coverage for this claim. While we strenuously disagree with this conclusion, whether or not any of the insurers will prevail cannot be determined by way of summary judgment. Factual disputes abound, including but not limited to: whether the facility was actually infiltrated with asbestos, whether Fidelco's retention of Slavco Construction, Inc. was merely good client relations, whether the contract between Badger and Fidelco included the duty to provide insurance, whether the discovery produced during the previous arbitration established that certain elements of damages were covered by the applicable insurance policies, whether the insurers belatedly raised certain policy exclusions and whether this belated notice results in a waiver, whether Badger's insurance

1

agent had the actual or apparent authority to bind Scottsdale when issuing Certificates of Insurance.

In addition, there are ambiguities in several policy provisions that preclude summary judgment in favor of the insurers. For example, the asbestos exclusions relied upon by two of the insurers is worded ambiguously and do not apply given the facts of this case. Indeed, there may even a factual dispute as to the presence or absence of an asbestos exclusion in Quincy's policy. In addition, each insurer attempts to take refuge in the "owned property" exclusion contained in its policy, thereby contradicting each other as to which entity owns the "property" in question.

Hence, we respectfully submit that this Court deny all of the motions for summary judgment.

## STATEMENT OF FACTS[1]

Fidelco is the owner of commercial property in Somerville that was leased to Bristol-Myers Squibb ("BMS") for the housing of monkeys used in drug testing at other BMS facilities. The roof on the building was in need of replacement, so Fidelco entered into a written contract with co-defendant, Badger Roofing Co.

---

[1] In addition to this factual summary, Fidelco relies upon the Certification of Randee Matloff and the Counterstatement of Material Facts submitted pursuant to Local Rule 56.1 in response to each movant's submission which contains references to the applicable evidential materials.

("Badger") to replace the roof. On September 22, 2005, just a short time after the work commenced, BMS demanded that Badger cease work because of the amount of dust and debris from the roof work that was entering the interior of the facility. BMS was concerned that the dust could impact the animals and the sterile environment they were in and additionally might contain asbestos; hence, a roofing and asbestos abatement company, Slavco Construction, Inc. was retained by Fidelco to complete the roof removal.  Air sampling done for BMS did not detect asbestos above permissible exposure limits. Nevertheless, in an overabundance of caution, BMS undertook a complete cleaning and dust removal of the leased premises and incurred very large boarding expenses because BMS refused to accept a delivery of monkeys until all the work was completed.

On August 6, 2006, BMS served Fidelco with a demand for arbitration seeking to recover the costs for damages to its property and loss of use of the property allegedly caused by Badger in removing the roof. BMS's initial demand in its Arbitration Complaint sought $734,175 in damages. A spreadsheet prepared for use in the arbitration established that $214,878.80 was for boarding monkeys during November 2006 to March 2006. Damages were also sought for the cost of trailers, replacement of tiles, new ceiling grids, painting, air filters, diffusers, collars, dampers and ducts, none of which were required because of asbestos, but only because of alleged property damages from dust. While there are charges of

3

$79,240 for supposed asbestos debris clean-up, only two pieces of the bulk roofing material that was found in the building contained asbestos and the vast majority of this work was for removal of non-asbestos containing dust.

Upon receipt of the arbitration demand, Fidelco and Badger provided Scottsdale Insurance Company ("Scottsdale") with notice of the claim. Scottsdale was Badger's insurer having issued a Comprehensive General Liability Policy to Badger. Fidelco was an additional insured under the Scottsdale policy with Badger. Scottsdale denied coverage and declined to participate in the arbitration, claiming that Fidelco had not proven that it was an additional insured and that the Asbestos Exclusion barred coverage.

Fidelco also provided Quincy Mutual Fire Insurance Company ("Quincy"), its own carrier, with notice of the claim on August 4, 2006. Quincy had issued a business owner's policy that included both Commercial Property coverage and Commercial General Liability coverage at yearly premiums exceeding $15,000. Quincy was notified of the claim as soon as the arbitration demand was received and denied coverage based upon purported late notice (which denial was subsequently withdrawn) and then belatedly, the asbestos exclusion and even more belatedly, exclusion "j". [2]

---

[2] During paper discovery in this case, Fidelco requested a Certified Copy of the applicable Quincy Policy for the relevant time period. This copy was not received until after Quincy filed its motion for summary judgment. The Certified Copy of

Prior to the commencement of the arbitration hearing, on March 14, 2007, Fidelco provided notice of claim to American Home Assurance Company ("AHA"), the insurer for BMS, under which Fidelco is listed as an additional insured. AHA never responded to the request for defense and indemnification.

On the eve of the commencement of the arbitration hearing, BMS settled with Fidelco, and BMS was paid a total of $575,000 by Fidelco in settlement of the claims in the Arbitration. Scottsdale, Quincy and AHA were all advised prior to the consummation of the settlement, and Scottsdale and Quincy confirmed that the settlement with BMS would not prejudice Fidelco's rights under the various insurance policies. AHA, again, failed to respond.

Scottsdale commenced this action against Fidelco and Badger seeking a declaratory judgment that it had no duty to defend or indemnify these claims. Fidelco counterclaimed against Scottsdale, asserting claims of breach of contract and the covenant of good faith and seeking coverage for the arbitration settlement and attorneys' fees, both in connection with the defense of the arbitration proceeding in the amount of $122,000 and in connection with the instant litigation. Fidelco also cross-claimed against Badger for its negligent work. Thereafter,

---

the Policy does not contain any asbestos exclusion. Inquiry was made to Quincy's counsel who investigated and then advised that the Certified Copy of the Policy provided was incorrect. This by itself, should be a sufficient basis to deny summary judgment to Quincy. However, we contend that even if the asbestos exclusion is contained in Quincy's policy, it is inapplicable in this case.

Fidelco filed a Third Party Complaint against Quincy and AHA also alleging breach of contract and breach of the covenant of good faith and fair dealing for failing to provide a defense and indemnification pursuant to the insurance policies issued by these insurers.

## ARGUMENT

## POINT I

## THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is only appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The district court is not to make credibility determinations or engage in any weighing of the evidence in deciding the motion. The non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). The movant must show, on all the essential elements of its case on which it would bear the burden of proof at trial, that no reasonable jury

could find for the non-moving party. <u>In re Bressman</u>, 327 F.3d 229, 238 (3d Cir. 2003).

Although the interpretation of an insurance contract is typically a question of law for the Court, where there is a dispute as to whether facts give rise to coverage, summary judgment must be denied. <u>Simonetti v. Selective Ins. Co.</u>, 372 N.J. Super. 421, 429-430 (App. Div. 2004). In the case before the Court there are many disputed issues of fact which impact whether or not the exclusions in the policies that the movants rely upon may apply. As will be set forth immediately below, the insurers bear the burden of proof as to the applicability of all policy exclusions. Hence, summary judgment is not appropriate in this case.

## POINT II

## THE LAW WITH RESPECT TO INSURANCE POLICY INTERPRETATION

Fidelco contends that each of these insurers have breached their contract of insurance and are improperly hiding behind inapplicable exclusions.  It is beyond peradventure of doubt that any ambiguities in contracts of insurance will be resolved against the drafter, the insurance company, so that the insured will be protected "to the full extent that any fair interpretation will allow." <u>Mazzilli v. Accident & Cas. Ins. Co.</u>, 35 N.J. 1, 7 (1961). Thus, where policy language will support two meanings, the ambiguity must be resolved in favor of coverage.

Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992); Meier v. New

Jersey Life Ins. Co., 101 N.J. 597, 612 (1986). Indeed, the New Jersey Supreme

Court has held that, in some instances, even unambiguous policy language will be

liberally construed to meet the insured's reasonable expectation, because insurance

policies are contracts of adhesion. See Sparks v. St. Paul Ins. Co., 100 N.J. 325

(1985); Morton Inter., Inc. v. General Acc. Ins. Co., 134 N.J. 1, 76 (1993), *certif.*

*denied* 512 U.S. 1245 (1994); Kievit v. Loyal Prot. Life Ins. Co., 34 N.J. 475, 483

(1961); St. Hudson Engineers, Inc. v. Pennsylvania National Mutual Casualty Co.,

388 N.J. Super. 592, 604 (App. Div. 2006), *certif. denied* 189 N. J. 647

(2007)(citing  Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970) and

Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 320 (1985).

It is further well-settled that "exclusionary clauses are enforceable only if

clearly applicable, are narrowly read and any ambiguities are resolved in favor of

the insured." Morrone v. Harleysville Mut. Ins. Co., 283 N.J. Super. 411, 420

(App. Div. 1995); Ellmex Construction Co., Inc.v. Republic Ins. Co., 202 N.J.

Super. 195, 205 (App. Div. 1985), *certif. denied*, 103 N.J. 453 (1986). Further,

when a court construes an ambiguous clause in an insurance policy, it should

consider whether more precise language by the insurer, had such language been

included in the policy, 'would have put the matter beyond reasonable question.'"

Doto v. Russo, 140 N.J. 544, 557 (1995). Our courts squarely place the burden on

the insurer to establish that the exclusion bars coverage and that the insured's interpretation of the exclusion is entirely unreasonable. Aetna Ins. Co. v. Weiss, 174 N.J. Super. 292, 296 (App. Div.), *certif. denied*, 85 N.J. 127 (1980). Zurich American Ins. Co. v. Keating Bldg. Corp., 513 F. Supp.2d 55 (D.N.J. 2007)(burden is on the insurer to bring the case within the exclusion.).

As will be set forth below, neither Scottsdale's nor Quincy's asbestos exclusion apply because these exclusions do not specifically apply to "alleged" asbestos. In addition, the damages were not "arising out of" and were not caused by the asbestos.

Further, in New Jersey when an insurance policy uses an exclusion which bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the "efficient proximate cause" of the loss. Zurich American Ins. Co. v. Keating Bldg. Corp. supra, 513 F. Supp. 2d at 70, citing Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J. 245 257 (2004) (*Appleman* rule applies in New Jersey). In Auto Lenders, *supra* 181 N.J. at 257, the Court discussed *Appleman*'s rule as follows:

> Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss . . . In other words, it has been held that recovery may be allowed where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or

9

> where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk. [5 John Alan Appleman, *Insurance Law & Practice*, §3083, at 309-11 (1970)]

The duty of an insurer to defend its insured, which is itself a valuable right, is broader than the duty to indemnify. The duty is triggered when the complaint against the insured "states a claim constituting a risk insured against." St. Hudson Engineers, supra 388 N.J. Super. at 606, citing Danek v. Hommer, 28 N.J. Super. 68,77 (App. Div. 1953), *aff'd o.b.*, 15 N.J. 573 (1954). When multiple alternative causes of action are stated, the duty will continue until every covered claim is eliminated and the wording of the complaint need not be articulate. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 174 (1992). Most important for the instant case, extrinsic facts outside the complaint, which are later revealed in discovery, may also trigger the duty to defend. SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 198-99 (1992).

As will be set forth below, Fidelco's counsel clearly advised each insurer of the evidence that developed during discovery in the Arbitration; most notably, that it became clear that the feared asbestos contamination was non-existent. Hence, in providing this information to the insurers their duty to defend and indemnify was triggered.

10

Fidelco contends, that with these well-established principles in mind, the insurers have violated their duty to the insured and coverage should be provided under the policies.

## POINT III

## SCOTTSDALE'S MOTION MUST BE DENIED

The Scottsdale Policy issued to Badger is a Commercial General Liability ("CGL") Policy. The policy provides coverage, *inter alia*, for claims alleging property damage, which is defined as "(a) Physical injury to tangible property, including all resulting use of that property" or "(b) Loss of use of tangible property that is not physically injured".  Fidelco indicated in its demand for coverage that BMS was alleging physical injury to interior of the structure, which under its lease, was BMS's property, including the walls, tiles and ceilings of the building. In addition, BMS was seeking to recover for the storage costs for its monkeys during the lengthy cleaning process, as well as a rent abatement in the amount of $72,000, which constitutes loss of use of tangible property.

CGL policies are designed to protect the insured against losses to third parties that arise out of the insured's business operation. See Lee R. Russ and Thomas F. Segalla, *Couch on Insurance* 3d, §129:2 (1997).  The losses to BMS (a third party) for which Fidelco was responsible, clearly arose out of Badger's

business operations; Badger is a roofer who was hired by Fidelco to remove and replace the roof on the building leased to BMS, and Badger performed the roof removal in a negligent manner resulting in extensive dust and debris infiltration into the building. The Third Count of Fidelco's cross claim against Badger asserts a claim sounding in negligence.

Despite repeated notification and requests for coverage Scottsdale refused to provide coverage primarily relying upon two grounds. First, the insurer claimed that Fidelco was not an additional insured under Badger's policy, and second, Scottsdale relied upon the asbestos exclusion in its policy. Neither assertion has merit. In addition, neither the contractual liability exclusion, nor exclusion "j", which is belatedly raised by Scottsdale and should not be considered for that reason alone, preclude relief to Fidelco.

## A.   <u>**FIDELCO IS AN ADDITIONAL INSURED**</u>

There is no dispute that Badger was covered by Scottsdale under policy number BCS0010238 at the time of the accidental dust infiltration. However, Scottsdale has raised a material factual dispute by asserting that Fidelco has no right to assert a claim for coverage as an additional insured under this policy. Scottsdale asserts that "The most important fact relevant to determining whether SF qualifies as an "additional insured" under the Policy issued to Badger is that SF and Badger never entered into a written contract as specifically required by the

Policy." (Br. At 2) However, Fidelco contends that there was a written contract, and that Badger was contractually obligated to and <u>did</u> fulfill its contractual obligation to make Fidelco an additional insured under the Badger Policy.

On or about July 14, 2005 Fidelco and Badger entered into a written contract. Badger submitted a proposal outlining the scope of work and costs, which was accepted and signed by Barry Ages on behalf of Fidelco, creating a written contract. These documents clearly constitute a written contract. *See* <u>State v. Ernst & Young LLP</u>, 386 N.J. Super. 600, 612 (App. Div. 2006)(a bid is an offer which once accepted constitutes an executory contract mutually binding upon the parties.)

To the extent that Scottsdale asserts that Fidelco would only be an additional insured if the agreement in writing required that Fidelco be named as an additional insured, we submit that the Certificates of Insurance provided by Badger to Fidelco as proof of Fidelco's additional insured status is such an agreement in writing. Under New Jersey law two or more writings may constitute a single contract even though they do not refer to each other. <u>Van Orman v. American Insurance Co.</u>, 680 F.2d 301, 306 (3d Cir. 1982); <u>Tandy v. Allen</u>, 14 N.J. 1,6 (1953). In other words, Fidelco contends that the Certificate of Insurance itself, when taken together with the signed and accepted Badger proposal, qualifies as the written agreement that Fidelco was to be named as an additional insured on Badger's insurance policy. Indeed, why would Badger have provided any Certificate to Fidelco if not pursuant

to the parties' contractual agreement? This was clearly not a gratuitous act on Badger's part.

While Scottsdale contends that the Certificate of Insurance does not entitle Fidelco to coverage since it was not issued by Scottsdale, if it was issued by an entity authorized to bind Scottsdale it will be binding on the carrier.[3] See Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property & Casualty Co., 482 N.W. 2d 600 (N.D. 1992) (court finds that agency exercised actual and ostensible authority and thus insurer was estopped to deny coverage based upon Certificate of Insurance).

As acknowledged by Scottsdale no New Jersey court has addressed the enforceability of endorsement CG2033(07/04) to the Badger policy. However, we assert that these written documents satisfy the requirements contained in the endorsement and provides Fidelco with automatic status as an additional insured whether or not the actual Certificates of Insurance issued were valid on their own to create coverage.

---

[3] In any event, if Badger's insurance producer was an agent of Scottsdale then Scottsdale may be estopped from relying upon its contention that the policy required a written contract provision between Badger and Fidelco given the issuance of the Certificate of Insurance. See Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety, 71 F. Supp. 2d. 394, 400 n.6 (D.N.J. 1999); Muller Fuel Oil Co., v. Insurance Co. of North American 95 N.J. Super. 564 (App. Div. 1967) (insurers are held to authorize agents to do what is necessary to transact insurance business); Rupp v. American Crystal Sugar Co., 465 N.W.2d 614, 617 (N.D. 1991).

The cases cited by Scottsdale in support of its argument that Fidelco is not an additional insured are inapposite. American Wrecking Corp. v. Burlington Ins. Co., 400 N.J. Super. 276 (App. Div. 2008) cited by Scottsdale at p 2, did not address in any manner the enforceability of a provision requiring an agreement in writing with respect to additional insured coverage but concerned the enforceability of a cross-liability exclusion. Similarly, Englert v. The Home Depot, 389 N.J. Super. 44 (App. Div. 2006), *certif. denied* 192 N.J. 71 (2007), is miscited as the issue was whether the additional insured coverage was primary or excess. However, cases such as Latino v. Greg's Landscaping, Inc., 2006 WL 2457837 (Law Div. August 18, 2006) establish that the existence of Certificates of Insurance raise, at the very least, a factual issue precluding summary judgment at this stage of the proceedings. In that case a landscaper promised to name the owner of property as an additional insured. When someone fell on ice that the landscaper failed to remove and sued the owner, the owner sued both the landscaper and his insurer. The insurer moved for summary judgment, providing a copy of the policy that did not include the owner listed as an additional insured. The court held that the fact that the owner was mentioned in the Certificate of Liability Insurance of the landscaper raised a sufficient factual issue to deny summary judgment to the insurer. See also Rupp v. American Crystal Sugar Co., 465 N.W. 2d 614, 617 (N.D. 1991)(The district court construed Greenberg's liability insurance policies

and determined that "the Certificate of Insurance which we have been dealing with does satisfy the terms of the contract in that, ... [it] has all the effect of actually naming them as an additional named insured through the incidental contract coverage provisions.")

Alternatively, there is a factual dispute concerning the applicability of an additional written contract governing the relationship between Fidelco and Badger. On August 3, 2005 Badger forwarded to Mr. Ages a form AIA contract incorporating the terms of the proposal previously accepted. This document was never executed, but this document was in the nature of an addendum and incorporates the general conditions of AIA Document A201-1997. Article 11 of the general provisions clearly requires that the contractor obtain coverage for the benefit the owner and requires the contractor to provide Certificates of Insurance to the Owner. (See Exhibit _ to Matloff Cert.)   There has never been a factual determination made as to whether or not the AIA contract became operative. *See* Van Oman, *supra*. If it is applicable, then there can be no question that Fidelco is entitled to coverage as an additional insured of Badger's policy. This presents a clear basis to deny summary judgment to Scottsdale.[4]

---

[4] It was not until Scottsdale responded to Fidelco's notification that the matter had settled that Scottsdale indicated that it was rejecting Fidelco's argument that the Certificates of Insurance constituted proof of an agreement by Badger to insure Fidelco. At that point, Fidelco's counsel indicated that they were looking for the written contract in question.

**B.**    **<u>SCOTTSDALE'S ASBESTOS EXCLUSION DOES NOT APPLY</u>**

As acknowledged by Scottsdale, no New Jersey Court has considered the enforceability of the asbestos exclusion. Moreover, legal research has uncovered <u>no</u> case in the entire country that is factually analogous to the instant case. Indeed, the few out of state cases cited by Scottsdale where the Court enforces an asbestos exclusion arise from a situation where it is clear that there is <u>actually</u> asbestos causing the injury or property damage. In this case, factual issues abound because the presence of asbestos both during the initial phase of the project and second phase of the project are highly relevant factual issues, as is the issue of whether the claims can be said to 'arise out of' any of the excluded activities set forth in the asbestos exclusion. Thus, it is left to this Court to construe Scottsdale's asbestos exclusion in the light of the rules of construction of insurance policies, bearing in mind that <u>ambiguities must be construed in Fidelco's favor</u>. In addition, if more precise language could have been used to avoid the ambiguity, the clause must be construed in favor of the insured and the reasonable expectation of the insured must be considered. These are all issues that preclude summary judgment in Scottsdale favor.

Scottsdale anticipates Fidelco's argument that the asbestos exclusion is inapplicable because the evidence shows that the building did not test positive for asbestos. Indeed, BMS found no friable asbestos and yet they conditioned the

super cleaning. Scottsdale claims this argument "is irrelevant because BMS's alleged damages arise solely from their <u>assumption</u> that the Facility was contaminated with asbestos." (emphasis added) However, the policy language does not provide that damages resulting from the faulty assumption that there is asbestos are encompassed by the exclusion; it is only actual asbestos that can trigger the clause.

The policy language states:

> The coverage afforded by this policy does not apply to bodily injury, personal injury or property damage arising out of:
> 1.   Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or
> 2.   The use of asbestos in construction or manufacturing any good, product or structure, or
> 3.   The removal of asbestos from any good, product or structure; or
> 4.   The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The language of this exclusion is simply inapplicable to the facts of the current case. BMS's claim does not arise out of inhaling, ingesting or prolonged physical exposure to asbestos. BMS's claim does not arise out of the use of asbestos in construction or manufacturing. It does not arise out of the removal of asbestos from any structure, which is implicated when an insured undertakes asbestos abatement of a contaminated site. Finally, it does not arise out of the manufacture, sale, transportation, storage or disposal of asbestos. Instead, BMS's

claim arises out of the dust infiltration experienced when Badger commenced the roof removal.

In Fireman's Fund Ins. Co. v. Fibreboard Corp., 182 Cal. App.3d 462 (Cal. App. 1st Dist. 1986) relied upon by Scottsdale, the exclusion was deemed applicable, but there was no question that asbestos was implicated because the insured was an asbestos manufacturer. While Fireman's is factually inapposite, the case is relevant because it demonstrates how an asbestos exclusion could be worded more precisely. In that case, the policy wording provided that coverage was excluded for "liability for personal injury, sickness of disease including death, arising from exposure and/or alleged exposure to asbestos dust created during use of products manufactured by the Insured which contain asbestos." (emphasis added) Id. at 465.   In our case, the exclusion does not include the "alleged exposure" language; thus Scottsdale's exclusion can only be triggered where there is proof that the damages sought arise out of actual asbestos, not feared asbestos. As noted in Doto v. Russo, 140 N.J. 544, 557 (1995), in construing an ambiguous clause the court should consider whether more precise language could have been used. Clearly, Scottsdale could have worded the exclusion to preclude coverage for damages arising from the presence or alleged presence of asbestos, but it did not.

Although BMS's arbitration demand referenced asbestos, discovery provided in preparation for the arbitration hearings established that Scottsdale's

asbestos exclusion was inapplicable, because the dust infiltration, which caused BMS to undertake the extensive cleanup efforts, did not contain asbestos. Moreover, the claims brought by Fidelco against Badger by way of cross claim do not raise claims relating to asbestos. Fidelco is suing Badger for failing to take reasonable precautions in undertaking the roof removal process which resulted in extensive dust infiltration on BMS, who was a tenant in need of a pristine facility to protect the integrity of tests to be performed on the monkeys. Badger and Fidelco are entitled to defense and indemnification from Scottsdale on this cross claim.

By its terms, the asbestos exclusion does not apply because BMS's claim alleges property damage and loss of use arising out of Badger's roofing work. Dust entering the building caused damage and loss of use of the facility. Although the old roof contained non-friable asbestos, BMS's claim does not arise out of the use of asbestos in construction or manufacturing or the removal or disposal of asbestos from any good, product or structure.  Moreover, discovery during the arbitration process established that while a few samples taken from the roofing material itself contained non-friable asbestos, none of the air samples or vacuum samples taken within the building contained any asbestos requiring asbestos abatement. The original sampling in September 2005 detected asbestos in two out of four samples of the roofing material at low levels, but significantly no asbestos was found in the

air samples or in the vacuum samples.  Results from air sampling from October 2005 also were found to be "non detected for asbestos structure."  Samplings taken during the second phase of the roof replacement in December 2005 indicated "no airborne asbestos hazard," and sampling of the roof material demolition debris found in the building at that time was "negative for asbestos content."

When the damages being sought by BMS are examined, it is clear that the vast majority of damages relate to cleaning and removal of dust and other non-asbestos containing materials and replacement of damaged walls, ceilings and floors, and boarding of the monkeys during the period when the building could not be used as well as a rent abatement.

Even if Scottsdale was initially justified, which it was not, in refusing to defend Fidelco and/or Badger at the outset of the Arbitration, based upon the reference to asbestos in BMS's arbitration demand, the information provided to Scottsdale during discovery for the arbitration triggered, at the very least, a duty to defend, since test samples taken in the building did not test positive for asbestos and Scottsdale was repeatedly advised of this fact on more than one occasion by Fidelco's prior counsel, as repeated requests for defense and indemnification were made. Yet Scottsdale did nothing. The very need to understand the facts surrounding its refusal to act render summary judgment inappropriate.

In SL Industries v. American Motorists, *supra* 128 N.J. at 198, the Court

stated:

> The first question is whether the duty to defend is
> triggered by facts indicating potential coverage that arise
> during the resolution of the underlying dispute. We
> conclude that facts outside the complaint may trigger the
> duty to defend.
>
> Our holding is in accord with most insureds' objectively
> reasonable expectations. Insureds expect their coverage
> and defense benefits to be determined by the nature of
> the claim against them, not by the fortuity of how the
> plaintiff, a third party, chooses to phrase the complaint
> against the insured. To allow the insurance company "to
> construct a formal fortress of the third party's pleadings
> and to retreat behind its walls, thereby successfully
> ignoring true but unpleaded facts within its knowledge
> that require it, under the insurance policy, to conduct the
> putative insured's defense" would not be fair.

In SL Industries, the Court held that if the insured conveys information to

the insurer that will trigger coverage, the insured will be reimbursed for previously

expended defense costs. Id. at 200. *See, e.g.* Estate of Philip Mini v. Metro Supply

& Service, 2004 WL 1284173 (App. Div. June 8, 2004) where the insurer

disclaimed coverage under its pollution exclusion because the Complaint charged

that Mini's death was caused by exposure to cedar mulch containing unsafe and

dangerous toxins.   As discovery progressed it became apparent that plaintiff's

claim that the mulch contained a foreign substance meeting the definition of

pollutant was speculative. The Court held that the insurer breached its duty to

defend since "[a]s the litigation progressed, all of the information that unfolded strengthened Metro's contention that the allegation that the mulch contained a toxin was baseless and that there were no facts to support a claim of a "discharge" of any pollutant." Id at *5. The court held that the insurer was obliged to reimburse Metro for the reasonable costs of its defense, as well as its costs incurred in the coverage litigation from the commencement of the case, including the appeal.[5] Id. at *5.

In the instant case, Fidelco clearly put Scottsdale on notice that BMS's fears of asbestos contamination were unfounded. Despite continually apprising Scottsdale of facts sufficient to trigger the duty to defend, Scottsdale refused right up through the point when the matter between Fidelco and BMS settled on the eve of the arbitration hearing. Hence, Scottsdale breached its duty to defend or, at the very least, there is a genuine factual dispute as to whether or not they did so. This is sufficient to preclude summary judgment to Scottsdale on this issue.

Further, while Scottsdale repeatedly looks at the arbitration demand as the pleading from which it should measure its obligations, this insurer ignores the pleading filed against its actual insured by Fidelco on October 26, 2007, [D.E. 3] wherein Fidelco sets forth claims against Badger in three separate counts asserting that Badger breached its express and implied covenants that it would perform the

---

[5] In Mini, since the case was dismissed, there was no need to address the issue of indemnification, only of defense costs.

roof replacement in a competent and workmanlike manner and in accordance with all applicable regulations, that it failed to do so resulting in extensive roofing debris and dust infiltration entering the building causing BMS to perform a comprehensive cleaning, incur extraordinary expense for protective equipment and security and storage costs for its monkeys, and that as a result of Badger's improper conduct Fidelco was required to participate and defend against a lengthy arbitration proceeding resulting in a payment of $575,000 to BMS as a result of Badger's failure to perform the roof replacement. (See Paras. 111-117 of Fidelco cross claim against Badger) The Second Count of the cross claim against Badger charges negligence and reckless conduct (See Paras. 121-123). The Third Count of the Cross claim against Badger seeks indemnification for the amounts paid to BMS because Badger's liability is primary while Fidelco's is secondary. (See Paras. 126-130)

The allegations contained in Fidelco's cross claim against Badger clearly fall within the four corners of Badger's CGL Policy with Scottsdale. Scottsdale therefore has the duty to defend and indemnify Badger for any liability Badger is found to have to Fidelco in the adjudication of the cross claim pending in this Count for these events which occurred during the policy period.

Scottsdale's reliance upon Kimmins Indus. Serv. Corp v. Reliance Ins. Co., 19 F.3d 78 (2d Cir. 1994) baffles the mind. In that case, the court construed the

identical asbestos exclusion and found that it did not apply to workers who were burnt by steam while working at a job site removing asbestos.  In finding that the asbestos exclusion did not apply, the Court examined the "arising out of" language in the exclusion and found that the asbestos removal was incidental to their injuries because "while it is true that Mr. Samson and Mr. Bailey would not have been on that platform had they not been removing asbestos, the asbestos was not the proximate cause of their injury. The operation of the railroad car, having nothing to do with asbestos, was the cause. " Id. at 80. Although applying New York law, the Court cited to standard rules of insurance contract construction equally applied by the Court in New Jersey, which require that exclusions be strictly construed, "specific and clear", and "are not to be extended by interpretation or implication." Id. at 81.  The Court held that "an injury does not arise out of a specified set of conditions unless it is proximately caused by these conditions. Id. at 82. The Court explicitly rejected the insurer's contention that "arising out of" should be read to mean "occurring while". Id at 83. In requiring defense and indemnification the court concluded:

> In sum, we conclude that the injuries in question were not caused by asbestos, nor related to the intrinsic nature of asbestos, nor proximately caused by the removal of asbestos. Hence, they cannot be said to have "aris[en] out of" the removal of that substance." 19 F.3d at 83.

The same result must obtain in the instant case. The injuries in question were caused by Badger's negligent removal of the roof which resulted in dust infiltration. The injuries were not caused by asbestos, the intrinsic nature of asbestos nor the removal of asbestos, since the extensive testing undertaken never found levels of asbestos necessitating the precautions taken by BMS. As noted in Kimmins, the Court must read the policy language strictly; none of the 4 prongs of the asbestos exclusion in the Scottsdale policy come into play. If in Kimmins a person suffering bodily injury while actually engaged in the asbestos removal process is not barred by the clause, then certainly damages which occur when there is only a fear of asbestos and no actual friable asbestos should not be barred by the clause. It is certainly possible to have framed an exclusion which would encompass the activities engaged in in this case, but the clause in the Scottsdale policy does not do so. Scottsdale cannot extend the meaning of the exclusion.

Similarly, the other two cases relied upon by Scottsdale are inapplicable.

In In re Asbestos Products Liability Litigation, 1997 WL 539916 (E.D. La. Sept. 2, 1997), employees working on a hotel renovation sued for asbestos related injury and sought compensatory and punitive damages, as well as damages predicated upon violation of a Louisiana statute precluding wanton disregard of public safety in handling asbestos. While several different insurers sought summary judgment based on a variety of exclusions, two insurers relied upon the

asbestos exclusions in their policies. Only one was successful. It should be noted that the court specifically stated that it was assuming without deciding that the asbestos exclusion was valid and enforceable.  One policy included an exclusion for liability for damages arising from "Bodily Injury", sickness, disease, disability or shock including death at any time resulting therefrom, caused by the following diseases: 1) Asbestos or any lung disease or any ailment caused by, or aggravated by exposure, inhalation, consumption, or absorption of asbestos fibers or dust or silica dust." The court found that the policy could not be read to exclude plaintiffs' damages from asbestos exposure which included emotional distress, risk of future disease, cost of medical monitoring, punitive damages, etc. As to the second insurer, the court specifically found that "Plaintiffs' claims for damages hinge solely on asbestos exposure," thus the court found the exclusion applicable. The same is not true in our case.

Finally, Conner v. Catastrophic Prop. Restoration, L.L.C., 2007 Kan. App. Unpub. LEXIS 73 (2007), a case that has absolutely no precedential worth, is also factually distinguishable. In that case, plaintiff alleged that the restoration company hired to engage in asbestos removal had negligently hired its workers. The asbestos exclusion included a provision which excluded damages caused by negligent supervision with respect to advise regarding asbestos. Moreover, there was no question that the restoration work resulted in asbestos contamination.

This should be contrasted with <u>Owens Corning v. National Union</u>, 1998 WL 774109 (6th Cir. Oct. 13, 1998), where the court reversed summary judgment in favor of the insurer and held that National Union was required to provide coverage with respect to the settlement of a class action lawsuit brought by certain Owens Corning shareholders. The alleged misrepresentations triggering the alleged Rule 10(b)(5) liability focused on notes to the financial statements which set forth details concerning the company's reserves and charges to earnings on account of contingent asbestos liability. National Union denied coverage relying upon its asbestos-claims exclusion. In rejecting the applicability of this exclusion the Court held that the class action was not "based upon" the use of asbestos since it was a securities class action. It did not "arise out of" actions taken in the products liability context because the wrongful acts of the directors in the context of asbestos personal injury claims did not form a causal link to the class action claims. Finally, the class litigation was not "related to" the asbestos. The Court concluded: ". If National Union had intended to exclude coverage of shareholder derivative suits and securities class-action suits entirely, it could have done so specifically. Instead, it only excluded certain claims arising from asbestos-related injuries, and from the use of asbestos products. "<u>Id</u>. at *6.

Language in an insurance policy which grants coverage "arising out of" is broadly construed; when the term "arising out of" is used in an exclusion it must be

narrowly construed. *See* S.T. Hudson Engineers, Inc. v. Pennsylvania National Mutual Casualty Company, 388 N.J. Super. 592 (App. Div. 2006), *certif. denied*, 189 N.J. 647(2007); Lumbermen's Mutual Casualty Co. v. Logan, 88 A.D.2d 971, 451 N.Y.S.2d 804 (2d Dept. 1982)(injury does not arise out of a specified set of conditions unless it is proximately caused by these conditions); United Services Automobile Assn v. Olin, 178 A.D.2d 528, 577 N.Y.S.2d 447 (2 Dept. 1991)(stabbing of one vehicle passenger by passenger in other vehicle did not arise out of ownership, maintenance, operation or use of vehicle). *See also* Simonetti v. Selective Insurance Co., 372 N.J. Super. 421, 431 (App. Div. 2004)(insured entitled to coverage where either the first or last step in the chain of causation leads to the loss).

In this case, the damage to BMS for which Fidelco had to compensate its tenant arose out of Badger's negligent removal of the roof without taking adequate precautions to prevent dust infiltration. Had Badger exercised due care in doing its job, the dust and debris would not have entered the facility and BMS would not have felt compelled to take the measures to protect its test monkeys and clean the facility. Thus, the damages did not arise out of the removal or disposal of asbestos, particularly since testing established that there was no asbestos problem at the premises. Hence, we respectfully submit that the asbestos exclusion in this policy is inapplicable. In Simonetti v. Selective Ins. Co., *supra*, 372 N.J. Super. at 429-

430, the court held that summary judgment was improvidently granted based upon a mold exclusion and remanded so that plaintiff could develop the facts as to the cause of the loss because:

> "This distinction between mold damage and loss caused by mold is supported by the very language of Selective's policy: "[w]e do not insure, however, for loss caused by . . . mold . . ." (emphasis added). If Selective had intended to exclude not only losses caused by mold, but also mold itself, it could have easily expressed that intention. . . We, therefore, conclude that if plaintiffs prove the mold resulted from a covered peril, then the cost of removing the mold is not a loss separate from, or caused by, the mold itself, but rather is within the coverage provided to the homeowners under defendant's policy. In other words, when a covered event causes mold, the mold damage includes the cost of removal.

So too in this case, factual issues must be resolved thereby rendering summary judgment inappropriate. Hence the asbestos exclusion should be deemed inapplicable to preclude coverage in this case.

## C.   FIDELCO IS NOT SEEKING COVERAGE FOR BREACH OF CONTRACT

Firstly, as Scottsdale never raised this issue when it previously denied coverage, the insurer should be precluded from raising this issue now. Elizabethtown Water Co. v. Hartford Casualty Ins. Co., 18 F. Supp. 2d 464 (D.N.J. 1998) (question of waiver by insurer of right to rely on exclusion is generally one of fact that should not be decided on motions for summary judgment).

Secondly, whether or not Fidelco's obligation to BMS arises under the lease, the triggering events giving rise to Scottsdale's liability is Badger's negligent conduct in undertaking the roof removal without adequate precautions to prevent extensive dust infiltration. This constitutes negligence on the part of Badger, and Fidelco's prior counsel clearly and repeatedly expressed this position to Scottsdale when demanding coverage on several occasions. Indeed, Fidelco's pending cross claim against Badger clearly contains a claim predicated upon this negligence which triggered Scottsdale's duty to defend.

Thirdly, Scottsdale's reliance upon Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591 (3d Cir. 2009) and United National Ins. Co. v. St. Paul Reinsurance Co., 2008 WL 4671780 (M.D. Pa. Oct. 17, 2008) both of which construe the parties obligations under Pennsylvania law, rather than New Jersey law, is misplaced.

Fourthly, Scottsdale presents an overly simplistic view of the definition of an occurrence and glosses over an analysis of the applicable New Jersey case law, which clearly establishes that neither the definition of occurrence nor the contractual liability exclusion precludes coverage in this case. Indeed, in Travelers Indemnity Co. v. Dammann & Co., 2008 WL 370914 (D.N.J. Feb. 11, 2008) Judge Debevoise denied a motion for summary judgment brought by Travelers on analogous grounds in a suit where Dammann and IFF entered into a contract which

31

required Dammann to deliver vanilla beans to IFF. Certain lots of vanilla beans were contaminated with mercury, so IFF sent a claim letter to Dammann seeking over $5 million in damages which included the value of the vanilla extract shipped, testing, remediation/cleaning, disposal, replacement costs, etc. Dammann put Travelers on notice of its claim for defense and indemnification under its CGL policy and Travelers commenced suit for a declaration that it had no duty under its policy. In denying the motion for summary judgment filed by Travelers, the court examined New Jersey law and concluded that there was an occurrence, and property damage within the meaning of the policy and that neither the contractual liability or business risk exclusions applied.

As IFF had not commenced suit, the Court looked to its claim letter to determine whether there was a duty to defend and concluded:

> In cases where "multiple alternative courses of action are set forth," such as the case sub judice, "the duty to defend will continue until every covered claim is eliminated." *Id.* In this case, the Claim Letter enumerates damages which include the cost to IFF of the contaminated vanilla extract, the loss of use of the vanilla extract and production equipment, exposure to liability for bodily injury, and the cost of clean-up of its equipment and remediation. Taking these allegations as true, the court must determine whether the alleged facts square with the Policies.

In holding that there was an occurrence, the court relied upon Weedo v Stone-E-Brick, Inc., 81 N.J. 233, 249 (1979) where the court held:

> The consequence of not performing well is part of every business venture; the replacement of repair of faulty goods or works is a business expense, to be borne by the insured-contractor in order to satisfy customers. There exists another form of risk in the insured-contractor's line or work, that is injury to people and damage to property caused by faulty workmanship. Unlike [faulty workmanship on its own], where the tradesman commonly absorbs the cost attendant upon the repair of his faulty work, the accidental injury to property or persons substantially caused by his unworkmanlike performance exposes the contractor to almost limitless liabilities. While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting. The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.

*Id.* at 239 (citations omitted).

Judge Debevoise distinguished cases such as Firemen's Ins. Co. of Newark v. National Union Fire Ins. Co., 387 N.J. Super. 434 (App. Div. 2006) because there the defendant's claim for replacing substandard firewalls did not constitute an occurrence since the third party was suing exclusively for the defendant's failure to uphold the bargained-for exchange. In Dammann, as in our case, the claim includes property damage arising from the faulty workmanship, as was true in Newark Ins. Co. v. Acupac Packaging, Inc., 328 N.J. Super 385 (App. Div. 2000), where the Court held that there was an occurrence because the complaint asserted damages to

33

a third party's property. Thus, the court rejected Travelers reliance upon the same arguments and exclusions asserted by Scottsdale in this case.

In opposition to the motion, Dammann also raised IFF's allegations regarding the shutdown of its operation following the mercury contamination, and the "loss of use" associated with its product in general.

Judge Debevoise found that "loss of use" in this context, constituted "property damage" citing to <u>Lucker Mfg. A Unit of Amclyde Engineered Prods., Inc. v. Home Ins. Co.</u>, 23 F.3d 808, 815 (3d Cir. 1994). Judge Debevoise continued:

> Travelers does not directly address the matter of IFF's cleaning and remediation of its own facilities, and whether they constitute allegations of "property damage," either as physical injury or "loss of use," under the Policies. The court finds that they do constitute "property damage" for these purposes, and by themselves probably prevent the court from granting Traveler's motion for summary judgment.

<u>Id</u>. at *10. So too in the instant case, Scottsdale ignores this category of damages, which constituted a large part of what BMS sought in the arbitration from Fidelco resulting from Badger's negligent performance regarding the roof repairs. Scottsdale's reliance upon the contractual liability exclusion is similarly misplaced for another reason. An exception to that exclusion is found in (b)(1) which provides that the exclusion does not apply to liability for damages: "That the insured would have in the absence of the contract or agreement." Clearly, as set

forth in Fidelco's cross claim, Badger's negligence is separate and apart from its contractual obligations.

Finally, as set forth above, the insured under the Scottsdale policy is Badger. Badger did not have any contractual obligations to BMS under its lease with Fidelco. It is Badger's negligence that triggers the duty to defend and indemnify, a duty breached by Scottsdale for which this Court should afford a remedy.

**D.    EXCLUSION J (5) AND (6) DOES NOT PRECLUDE COVERAGE**

Scottsdale asserts that exclusion j(5) and (6) preclude coverage to Badger for damages caused by Badger's work. This provision provides that the insurance does not apply to "Property damage" to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

> Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products completed operations hazard.'

Here again, Scottsdale never raised this exclusion in any of its previous denial letters and should therefore be precluded from raising this issue now. See Elizabethtown Water Co. , *supra*. Moreover, they cite to several cases on page 16 of their brief, but none of the cases applying New Jersey law even mentions this

exclusion. As to the out of state authority cited on this exclusion, one case they rely upon, applying Texas law, finds the exclusion inapplicable. See Mid-Continent Cas. Co. v. JHP Dev., Inc., 557 F.3d 207 (5th Cir. 2009)((j)(5) only applies to damage caused during active physical construction activity and j(6) limits the scope of the exclusion to damage to parts of the property that were actually worked on by the insured).The other case, applying Kansas law, finds the exclusion applicable but language in that case on how it is to be construed supports the notion that it cannot be applied against Badger in this case. See Advantage Homebuilding, LLC v. Maryland Casualty Co., 470 F.3d 1003, 1012 (10th Cir. 2006):

> [A]ssume that a contractor is building a home. The contractor first erects the walls and completes the roof and then begins finishing the interior. Unfortunately, the roofing was poorly installed and later leaks, thereby damaging partially completed parquet floors. The damage to the floors [which was a consequence of the faulty workmanship that occurred after the work was complete] would be covered, but replacement of the poorly constructed roof [which was a direct result of faulty workmanship that occurred while the work was ongoing] would be excluded.

Contrary to Scottsdale's contentions, BMS was not seeking restoration or repair of the roof because Badger's roof repairs were faulty. Rather BMS was seeking recovery for loss of use of the facility and repair or replacement of other parts of the facility damaged by the dust infiltration, such as ceiling tiles, i.e.

damage to other areas while installing the roof. Hence, these exclusions should not be deemed applicable to bar recovery.

**E.    SCOTTSDALE'S EXCLUSION J DOES NOT PRECLUDE RELIEF TO FIDELCO**

Fidelco contends again, that this exclusion should be deemed waived since it was not previously raised in the numerous denial letters provided by Scottsdale. Elizabethtown Water Co., *supra*. However, even if the Court considers Scottsdale's argument, it is without merit.

Without citation to any authority, Scottsdale contends that the policy excludes coverage because the damage was done to Fidelco's property. However, this argument fails for two reasons. Firstly, Badger is the primary insured, not Fidelco. Scottsdale has strenuously argued that Fidelco is not an additional insured under Badger's policy. Badger is not seeking damages for the cost to repair, replace, enhance or restore its own property. Moreover, BMS has exclusive use and possession of the facility and all the elements of the property which had to be replaced due to the dust intrusion. Indeed, that is why BMS undertook the cleanup and repairs and then through the arbitration charged it back to the landlord. Thus, the damage was done to "BMS property" not Fidelco property.

At the very least, a genuine issue of material fact is raised by Scottsdale's attempt to invoke this exclusion. A review of AHA's brief in support of its motion

for summary judgment reveals that BMS's insurer disclaims coverage based upon the very same exclusion, stating:

> "Fidelco essentially demands coverage under its tenant's policy for claims asserted by the tenant for injuries to the tenant's property. However, the AHA Policies plainly exclude coverage for damages because of property damage to BMS's property. The owned property exclusion is clear and should be enforced as written."
> (See AHA Memorandum of Law , D.E. 47-2 at p14)

Both insurers may not take refuge in the owned property exclusion as the property that was damaged either belongs to Fidelco or BMS. Hence, exclusion j should not be deemed a bar to recovery as against Scottsdale in this case.

## POINT IV

## QUINCY IS NOT ENTITLED TO SUMMARY JUDGMENT

In its brief supporting summary judgment, Quincy relies upon the alleged asbestos exclusion in its policy and the owned property exclusion.[6]   Neither exclusion precludes coverage in this case.

---

[6] Whether or not the Absolute Asbestos Exclusion is actually contained in Quincy's policy is a factual dispute since the Certified Policy provided during discovery does not contain any asbestos exclusion. If the court find the exclusion applicable, Fidelco wants an opportunity to explore the issue of why the Certified Policy did not contain this clause.

## A.   THE ASBESTOS EXCLUSION IS INAPPLICABLE

The "absolute asbestos exclusion" which Quincy asserts was included in the Fidelco policy, provides that there is no coverage for "any loss, claim or expense caused by, resulting from or arising out of asbestos, exposure to asbestos or any product containing asbestos."

As can be seen when comparing Quincy's asbestos exclusion with Scottsdale's asbestos exclusion, Quincy's is more general and would appear, at least at first blush, to apply to a greater set of circumstances. However, as set forth below, Quincy's exclusion is inapplicable or at the very least, ambiguous.

Quincy asserts, as does Scottsdale, that BMS's claim "arose out of asbestos" stating, at page 4 of its brief that "What they paid for arose out of asbestos . . . They paid a large amount of money for asbestos decontamination." This is simply factually inaccurate. In actually, compared to the more than $700,000 that that BMS sought initially, only $79, 240.00 was listed by BMS as invoiced for disposal of materials that BMS feared contained asbestos. Quincy was advised of the fact that the discovery in the arbitration revealed that there was no friable asbestos found in the samplings taken and that the vast bulk of damages being sought was for monkey storage, and repair to dust-damaged items in BMS's facility, which should have been covered.

Quincy contends that its asbestos exclusion is unambiguous. The only case that Quincy relies upon for this proposition is <u>Nunn v. Franklin Mutual Insurance Company</u>, 274 N.J.Super. 543(App. Div. 1994), which is predicated upon an absolute <u>pollution</u> exclusion, not an <u>asbestos</u> exclusion. As stated above, there are no New Jersey case construing the asbestos exclusion. Moreover, when the language of the exclusion upheld in <u>Nunn</u> is examined, it becomes crystal clear that the exclusion in Quincy's policy **is** ambiguous. The pollution exclusion in <u>Nunn</u> provided in pertinent part:

> The policy does not provide any insurance for any sort of costs, expenses, loss, or liability – regardless of how such may arise or be imposed or whether insured elsewhere in this policy – arising directly or indirectly out of the actual, alleged, or threatened discharge, dispersal, escape, or release of pollutants.

<u>Id</u>. at 546.  If Quincy's exclusion were worded similarly, but with respect to asbestos, the insurer would have an argument that the exclusion applies to the instant case, because the exclusion in <u>Nunn</u> is worded to cover alleged and threatened discharges as well as actual discharges. Hence, Quincy's citation to <u>Nunn</u> is not on point, and actually supports Fidelco's argument that the asbestos exclusion purportedly in Quincy's policy is ambiguous since it could have easily been worded to clearly be applicable to the circumstances presented in this case.

## B.   THE   OWNED   PROPERTY   EXCLUSION   IS   INAPPLICABLE

Quincy argues that the "owned property" exclusion in its policy also precludes coverage because it was its insured's, Fidelco's, building "which suffered property damage as a result of debris from the roofing work." (Quincy brief at p. 5). Interestingly, AHA, BMS's insurer, also asserts that the owned property exclusion in its policy applies because it was BMS's property that was damaged. (See AHA Brief at p. 14: "Fidelco essentially demands coverage under its tenant's policy for claims asserted by the tenant for injuries to the tenant's property.") Which is it? The insurers cannot have it both ways. We submit that with respect to Quincy, both the express language and the intentions of the "owned property" exclusion require that Quincy provide coverage for the damages sought because the recovery sought is for loss of use and damages to <u>BMS</u>'s property.

Quincy relies upon <u>State v. Signo Trading International, Inc.</u>, 130 N.J. 51 (1992) in arguing that the owned property exclusion is unambiguous and enforceable. However, in that case the court found the exclusion applicable because "there is no evidence whatsoever in the record before us that any third party suffered a "physical injury to or destruction of tangible property," nor is there evidence of a "loss of use" of tangible property owned by an entity other than the insured." In our case, BMS brought the arbitration because of the damage to its own property within the facility for which it had sole responsibility, as well as the

loss of use of the facility as evidence by the need to store the monkeys elsewhere, obtain a trailer, etc.

Section 5.1 of the lease between BMS and Fidelco provides that "Tenant shall take good care of the premises and the fixtures, appurtenances, and systems in or affecting the premises (including but not limited to plumbing, sewers, gutters, downspouts, doors, painting, windows, electrical heating and sprinkler and air conditioning, if any), and shall make all repairs thereto or replace as and when needed . . ." Thus the inside of the facility injured by the dust infiltration contained property that belonged to the tenant and was the tenant's responsibility.

The owned property exclusion is designed to prevent a liability policy from providing first-party benefits to the insured. *See* Reliance Ins. Co. v. Armstrong, 292 N.J. Super. 365 (App. Div. 1996)(owned property exclusion did not preclude coverage for remediation of groundwater contamination). *See also* Lennar Corp. v. Great American Ins. Co., 200 S.W. 3d 651, 692 (Tex-App. Houston 2006); State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc., 121 Wash. App. 358, 88 P.3d 986, 992 (2004); Willing v. Community Association Underwriters of American, 2007 WL 1991038 (W. D. Wash. July 5, 2007); Allstate Ins. Co. v. Dana Corp., 759 N.E. 2d 1049 (Ind. 2001)(liability owing to third parties is purpose for which policy was obtained so coverage even if the clean up occurred on insured's land).

In <u>Walnut Grove Partnership LP v. American Family Mutual Ins. Co</u>., 2004 WL 5348863 (S. D. Iowa Oct. 4, 2004), American Family issued a CGL policy to Walnut Grove. The insured was a landlord that leased space in its building to a law firm. As a result of water infiltration, the tenant law firm had its space inspected and discovered mold. The law firm sued Walnut Grove for 1) a declaration that the space was not habitable and, 2) for breach of the lease for failing to maintain and repair the premises, and 3) for reimbursement of expenses the had incurred in attempting to repair and remediate the water infiltration and mold. American Family relied on several exclusions, including the "owned property" exclusion in denying coverage and moved for summary judgment. While the Court acknowledged that this exclusion was designed to prevent the insured from obtaining insurer funded improvements to its own property, the court noted that an exception existed where there was harm to third party property. In denying summary judgment, the court held that it was up to the trier of fact to determine which expenditures were solely to remedy the insured's own property and which were undertaken on account of damage to third party property.

A similar situation is presented in this case. Contrary to Quincy's contentions, Fidelco is not seeking to recover its expense in replacing the roof, or for damages to its own property. Rather, Fidelco is seeking recovery of the damages that BMS suffered to BMS's property, the loss of use by BMS of its

property and the costs to remediate the dust during the roof replacement process. Hence, the "owned property" exclusion is inapplicable, and Quincy should be held responsible for defense costs incurred by Fidelco in the arbitration as well as indemnification for the amount paid to BMS in settlement of the arbitration. At the very least, there are genuine factual disputes as to the nature of the damages for which coverage is sought, precluding summary judgment to Quincy.

### POINT V

### AMERICAN HOME IS NOT ENTITLED TO SUMMARY JUDGMENT

AHA argues that Fidelco does not have a reasonable expectation of coverage despite the fact that Fidelco is an additional insured under BMS's policy. AHA also asserts that only tort liability to a third party is covered, relying upon Weedo, *supra*. However, there is nothing in either the "Managers or Lessors of Premises Endorsement" or the "Where Required Under Contract or Agreement Endorsement" which precludes coverage to Fidelco for the claims which arise out of BMS's allegations of negligence asserted against Fidelco. (See page 2 of Exhibit S to Cohen Cert. wherein BMS sets out an argument to the arbitrator charging Fidelco with negligent conduct.)

AHA then asserts that an exclusion in the Managers or Lessors Endorsement with respect to structural alterations, new construction or demolition operations

precludes coverage; however, even AHA acknowledges that this endorsement conflicts with the "Where Required Under Contract or Agreement Endorsement" which does not contain any such exclusion. At the very least, this creates an ambiguity. The insured should be entitled to rely upon the promise of coverage under any applicable endorsement, without having an exclusion present in a totally different endorsement "grafted" on to the other applicable endorsements. Where language in a policy supports two interpretations, one favorable to the insurer and the other favorable to the insured, the interpretation sustaining coverage must be applied. Franklin Mut. Ins. Co. v. Sec. Indem. Ins. Co., 275 N.J. Super. 335, 340 (App. Div.) *certif. denied*, 139 N.J. 185 (1994).

Under the "Where Required Under Contract or Agreement Endorsement" coverage is provided for additional insureds, such as Fidelco, with respect to liability arising out of BMS's operations or premises owned by or rented to BMS. There appears to be a maximum coverage of $100,000 under this provision.

AHA relies upon Insurance Corp. of New York v. Cohoes Realty Associates, LP ,50 A.D.3d 1228, 854 N.Y.S.2d 815, 818 (3d Dept. 2008). However, in that case the court held that the landlord was not entitled to coverage because the tenant did not include the landlord as an additional insured under the business owners' property portion of the tenant's policy and the loss resulted from

a fire. Thus, this case is not on all fours with the instant case. Moreover, <u>Cohoes</u> arises under New York, rather than New Jersey law.

At pages 9-10 of its brief, AHA asserts that Fidelco's liability to BMS does not arise from BMS's operations or premises because Fidelco was responsible for the roof repairs. However, it is BMS's operation as a near-sterile environment for the purpose of housing the test monkeys which resulted in the extensive cleaning and additional expenses of monkey storage and testing. Thus, construing the term 'arising out of' broadly, as the Court must when the phrase is used to provide insurance, rather than limit it, the endorsement should grant coverage to Fidelco.

In any event, the extent to which the responsibility for the roof and other items replaced as a result of the negligent work performed rests with Fidelco or BMS is a fact issue. While AHA is correct in its assertion that the duty to defend is triggered by reference to the Complaint, as set forth in <u>Vorhees v. Preferred Mut. Ins. Co.</u>, 128 N.J. 165, 173 (1992), it is also true that this duty expands to encompass covered claims disclosed during the course of discovery in a case. *See* <u>SL Indus., Inc. v. Am. Motorists Ins. Co.</u>, 128 N.J. 188, 198-99 (1992) and discussion above. The scope of the responsibility for the roof was an issue raised during the arbitration but never conclusively determined due to the settlement. (See Exhibit R to Cohen Certification) <u>Pennsville Shopping Center Corp. v. American Motorist</u>, 315 N.J. Super. 519 (App. Div. 1998), *certif. denied* 157 N.J. 647 (1999),

46

relied upon by AHA, was resolved without reference to the policy language based solely upon the landlord's unconditional obligations to indemnify the tenant for liability resulting from failure to repair the common elements. However, in this case there is a factual dispute as to the scope of responsibility.

AHA also relies upon the "Owned Property" exclusion as a defense to Fidelco's claims. However, there is a genuine dispute of material fact precluding summary judgment vis`-a-vis´ the owned property exclusion in this case. As set forth above Quincy declined coverage to Fidelco claiming that the owned property exclusion precludes relief because it was Fidelco's property that was injured or destroyed. Now AHA claims, citing to various lease provisions and BMS's arbitration statement, that the owned property exclusion precludes relief because it was BMS's property that was injured or destroyed. While one of these insurers may have a valid argument regarding the owned property exclusion, they cannot both succeed on this claim.

Hence, this presents yet another issue where there is a factual dispute that must await further discovery and trial to be resolved. Summary judgment is not appropriate on this issue at this juncture.

In addition, AHA ignores the fact that a large portion of the damages sought by BMS had to due with the tenant's loss of use of the property which is encompassed by the definition of property damage in the CGL policy. This would

47

include the expense of boarding the monkeys which consists of over $225,000 as well as the rent abatement sought in the amount of $72,000.

Finally, AHA seeks partial summary judgment declaring that there is no coverage under the 06-07 AHA Policy. Although Fidelco was aware that there was a problem with the manner in which the roofing project was being performed in September 2005, the Demand for Arbitration seeking monetary damages was not served upon Fidelco until August 4, 2006, which is during the 06-07 AHA policy period. While BMS "expressed concern" regarding the dust, and indicated by letter dated November 11, 2005 that it was reserving its rights, (See Exhibit J and L to Cohen Cert.) this does not constitute a claim for damages sufficient to trigger knowledge that would preclude coverage under an insurance policy. Again, summary judgment on this issue is not appropriate.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the motions for summary judgment filed by Scottsdale, Quincy and AHA.

Respectfully submitted,


JAY J. RICE

Dated: December 7, 2009