# EXHIBIT 35

# GREENBAUM, ROWE, SMITH & DAVIS LLP

| | | | |
|---|---|---|---|
| PAUL A. ROWE | MICHAEL K. FEINBERG | | |
| WENDELL A. SMITH | CARLTON T. SPILLER | | |
| ALAN E. DAVIS | JOSEPH H. ORIOLO | | |
| DAVID L. BRUCK | ARON M. SCHWARTZ | | |
| MICHAEL A. BACKER | SABRINA A. KOGEL | | |
| MARTIN E. DOLLINGER | JACQUELINE M. PRINTZ | | |
| DEAN A. GAVER | STEVEN C. DELINKO | | |
| ROBERT C. SCHACHTER | DAVID A. ROTH | | |
| MARTIN L. LEPELSTAT | GARY K. WOLINETZ | | |
| DENNIS A. ESTIS | KEVIN T. MCNAMARA | | |
| WILLIAM D. GRAND | RICHARD L. HERTZBERG | | |
| RAYMOND M. BROWN | ELLEN A. SILVER | | |
| ALAN S. NAAR | ANDREA J. SULLIVAN | | |
| STEPHEN H. KNEE | MARC D. POLICASTRO | | |
| ROBERT M. GOODMAN | MARC J. GROSS | | |
| DOUGLAS K. WOLFSON | LUKE J. KEALY | | |
| MARK H. SOBEL | C. BRIAN HORNBREK | | |
| HAL W. MANDEL | CIPORA S. WINTERS | | |
| BARRY S. GOODMAN | GALIT KIERKUT | | |
| LAWRENCE P. MAHER | BRIAN R. SELVIN | | |
| THOMAS J. DENITZIO, JR. | PETER D. CRAWFORD, JR. | | |
| ROBERT S. GOLDSMITH | EMILY A. KALLER | | |
| JOHN D. NORTH | ARREN S. GOLDMAN | | |
| KENNETH T. BILLS | DARREN C. BARREIRO | | |
| THOMAS C. SENTER | OLIVIER SALVAGNO | | |
| MARGARET GOODZEIT | STEVEN NUDELMAN | | |
| W. RAYMOND FELTON | DINA M. VANIDES | | |
| CHRISTINE F. LI | HANY A. MAWLA | | |
| MERYL A.G. GONCHAR | | | |

WM. L. GREENBAUM (1914-1983)
ALLEN RAVIN (1957-1997)

COUNSELORS AT LAW

METRO CORPORATE CAMPUS ONE
P.O. BOX 5600
WOODBRIDGE, N. J. 07095-0988
(732) 549-5600
FAX (732) 549-1881

DELIVERY ADDRESS:
99 WOOD AVE. SOUTH
ISELIN, NEW JERSEY 08830-2712

75 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068-3701
(973) 535-1600
FAX (973) 535-1698

EMAIL: INFO@GREENBAUMLAW.COM
WWW.GREENBAUMLAW.COM

OF COUNSEL

ROBERT S. GREENBAUM   ARTHUR M. GREENBAUM
FRANKLIN M. SACHS
J. WARREN WOOD III

COUNSEL

| | |
|---|---|
| CHRISTINE F. MARKS | HOWARD B. HANDER |
| ROBERT S. UNDERHILL | LORA L. FONG |
| STEVEN FIRKSER | JODI L. ROSENBERG |
| ALLEN V. BROWN | MICHELE GIBSON |

| | |
|---|---|
| ROSEMARY CULCASI | JEFFREY A. SIROT |
| ERIC H. MELZER | MICHAEL A. GOROKHOVICH |
| MARINA SOLO | LISA J. CLAPP |
| ROBERT BECKELMAN | GREGG H. HILZER |
| MAJA M. OBRADOVIC | LISA B. DIPASOUA |
| JANE J. FELTON | MEGHAN O. MURRAY |
| STACEY R. COHEN | ERNEST E. D'ANGELO |
| MICHAEL A. KLEIN | JORDAN A. STERN |
| DEAN E. LOVENTHAL | CATHLENE S. BANKER |
| SENWAN AKHTAR | LAURA M. BILOTTA |
| BRYAN D. PLOCKER | JAMIE A. YONKS |
| DAVID T. SHIVAS | JEANETTE TANNER |
| DAVID S. SCHECHTER | MICHAEL G. D'ALBA |
| ADAM B. KAPLAN | BLAKELY D. FISHLIN |
| JESSICA F. BATTAGLIA | KATIE M. HOLDEN |
| JEMI M. GOULIAN | JULIE KUSHNER |
| JOHN B. NANCE | CHRISTOPHER J. LEDOUX |
| MICHELLE M. SEKOWSKI | CATHERINE S. SHIMSKY |

REPLY TO: Woodbridge

March 14, 2007

*Privileged and Confidential*

**BY CERTIFIED MAIL R.R.R. - 7002315000047150 2760**
**AND REGULAR MAIL**
Mr. Mark V. Bissanti
Senior Claims Examiner
Quincy Mutual Fire Insurance Company
57 Washington Street
Quincy, MA  02169

Re:  ***Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.***
***American Arbitration Association No.  18 115 Y 01071 06***
***Your Claim No.  06L1015***

Dear Mr. Bissanti:

We are in receipt of your letter dated November 17, 2006 in which you advised that

Quincy Mutual Fire Insurance Company ("Quincy Mutual") was denying coverage for the claim

filed by Bristol-Myers Squibb Company ("Bristol-Myers") against the insured in the referenced

matter due to the asbestos exclusion contained in the Quincy Mutual insurance policy.  As set

forth below, based upon information that has been learned in discovery regarding the plaintiff's

alleged damages, we are writing to request that Quincy Mutual reconsider its coverage position

GREENBAUM, ROWE, SMITH & DAVIS LLP

Mr. Mark V. Bissanti                                          *Privileged and Confidential*
Quincy Mutual Fire Insurance Company
March 14, 2007
Page 2

and agree to provide insurance coverage, including defense and indemnification, for the claims

against the insured in the arbitration captioned <u>Bristol-Myers Squibb Company v. Somerville</u>

<u>Fidelco Associates, L.P.</u>, American Arbitration Association No. 18 115 Y 01071 06.

*This letter is written to assist in the defense of the insured and as such it is privileged and*

*confidential. The letter and its contents may not be disclosed to, distributed to or discussed with*

*any other person or used for any other purpose.*

To assist in your review, we have enclosed the following:

1.      Letter dated September 29, 2005 from Mr. David Burkhardt of Eagle Industrial

Hygiene Associates, Inc. to Ms. Barbara Owen of Bristol-Myers (BMS00891-00893), annexed

as <u>Exhibit 1</u>;

2.      Letter dated November 15, 2005 from Mr. David Burkhardt of Eagle Industrial

Hygiene Associates, Inc. to Ms. Barbara Owen of Bristol-Myers (BMS00894), annexed as

<u>Exhibit 2</u>;

3.      Letter dated January 26, 2006 from Mr. David Burkhardt of Eagle Industrial

Hygiene Associates, Inc. to Ms. Barbara Owen of Bristol-Myers (BMS00895), annexed as

<u>Exhibit 3</u>; and

4.      Spreadsheet of Plaintiff's Alleged Damages prepared by Bristol-Myers, annexed

as <u>Exhibit 4</u>.

GREENBAUM, ROWE, SMITH & DAVIS LLP

Mr. Mark V. Bissanti                                    *Privileged and Confidential*
Quincy Mutual Fire Insurance Company
March 14, 2007
Page 3

## The Basic Rules of Insurance Policy Construction

The Supreme Court of New Jersey has declared, on numerous occasions spanning more

than 30 years, that insurance contracts are subject to principles of adhesion contract analysis and

that where there is an ambiguity in the contract that will reasonably support two meanings, the

ambiguity must be resolved in favor of coverage.  Voorhees v. Preferred Mut. Ins. Co., 128 N.J.

165, 175 (1992); Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 612-613 (1986); Sparks v. St.

Paul Ins. Co., 100 N.J. 325, 338 (1985); Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 7

(1961).  The Supreme Court has held as well that "courts are bound to protect the insured to the

full extent that any fair interpretation will allow."  Mazzilli, 35 N.J. at 1.  After noting that

repeated cautions by New Jersey courts have not stopped insurers from continuing to persist in

using obscure terminology, the New Jersey Supreme Court held "while the courts are in no

position to dictate the terminology they are in a position to mold the pertinent legal doctrines

with a view toward affording just measures of protection to the assured."  Bryan Const. Co. v.

Employers' Surplus Lines Ins. Co., 60 N.J. 375, 377-378 (1972).  In light of these guiding

principles, the Court further has held that even where the policy language itself may be

considered unambiguous to a sophisticated reader, because insurance policies are contracts of

adhesion they will be construed liberally in favor of the insured in order to meet the insured's

reasonable expectations.  See Sparks v. St. Paul Ins. Co., 100 N.J. 325 (1985); Morton Intern.,

Inc. v. General Acc. Ins. Co., 134 N.J. 1, 76 (1993); Kievit v. Loyal Protect. Life Ins. Co., 34

N.J. 475, 483 (1961) ("[w]here particular provisions, if read literally, would largely nullify the

GREENBAUM, ROWE, SMITH & DAVIS LLP

Mr. Mark V. Bissanti                                    *Privileged and Confidential*
Quincy Mutual Fire Insurance Company
March 14, 2007
Page 4

insurance, they will be severely restricted so as to enable fair fulfillment of the stated policy

objective").

     In addition to the general principles of insurance policy construction applicable to all

terms of the policy, it is settled law that "exclusionary clauses are enforceable only if clearly

applicable, are narrowly read and any ambiguities are resolved in favor of the insured." Morrone

v. Harleysville Mut. Ins. Co., 283 N.J. Super. 411, 420 (App. Div. 1995).  See also Ellmex

Construction Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195, 205 (App. Div. 1985), certif.

denied; 103 N.J. 453 (1986) (Courts must construe exclusionary clauses strictly against the

insurer).  The insurer has the burden of showing that the exclusion bars coverage, and that the

insured's interpretation of the exclusion is entirely unreasonable.  See Aetna Ins. Co. v. Weiss,

174 N.J. Super. 292, 296 (App. Div.), certif. denied, 86 N.J. 127 (1980).  As set forth below,

since this claim involves the application of an exception to a policy exclusion, the settled rules

requiring narrow application of the exclusion in favor of the insured must be applied.

<u>**Quincy Mutual's Insurance Policies**</u>

     As set forth in your letter dated November 17, 2006, the insuring agreement in the

Quincy Mutual general liability insurance policies states:

> *[Quincy Mutual] will pay those sums that the insured becomes*
> *legally obligated to pay as damages because of "bodily injury" or*
> *"property damage" to which this insurance applies.  [Quincy*
> *Mutual] will have the right and duty to defend the insured against*
> *any "suit" seeking those damages...*

As set forth in the insuring agreement, the insurance is provided for claims alleging "property

damage."  "Property damage" is defined by Quincy Mutual to mean "(a) physical injury to

GREENBAUM, ROWE, SMITH & DAVIS LLP

Mr. Mark V. Bissanti                                          *Privileged and Confidential*
Quincy Mutual Fire Insurance Company
March 14, 2007
Page 5

tangible property, including all resulting use of that property .... or (b) loss of use of tangible

property that is not physically injured ...."  Plaintiff is alleging physical injury to the walls, tiles

and ceilings of the building, as well as loss of use of tangible property.   Accordingly, the

insurance policy must respond with coverage unless there is a policy exclusion that applies.

In your November 16, 2006 letter was a reference to an endorsement containing an

asbestos exclusion which states "In consideration of the premium charge, it is agreed that the

insurance provided by this policy shall not apply to any loss, claim or expense caused by,

resulting from or arising out of asbestos, exposure to asbestos or any product containing

asbestos."  As set forth below, based upon the facts revealed in discovery, this exclusion will not

preclude coverage for the claim by Bristol-Myers in this matter.

### Bristol-Myers' Claim

The Arbitration proceeding filed by Bristol-Myers involves alleged property damage and

loss of use of the building located at 76 Fourth Street in Somerville, New Jersey (the "Building")

due to roofing replacement work that was performed by a roofing contractor retained by the

insured.  The Building was being used by Bristol-Myers as a facility for evaluating, preparing

and testing animals to be participants in drug studies performed by Bristol-Myers at other sites.

The plaintiff's Demand for Arbitration asserted that the alleged damage at the Building arose out

of "asbestos contamination".

After the Demand for Arbitration was filed, the parties engaged in discovery.  It has been

learned through discovery that while samples taken from the roofing material itself did contain

GREENBAUM, ROWE, SMITH & DAVIS LLP

Mr. Mark V. Bissanti                                    *Privileged and Confidential*
Quincy Mutual Fire Insurance Company
March 14, 2007
Page 6

asbestos, <u>none</u> of the air samples or vacuum samples taken within the Building contained any

asbestos requiring asbestos abatement.  The original sampling in September 2005 detected

asbestos in two out of four samples of the roofing material at levels of 5% and 10%, but

significantly <u>no</u> asbestos was found in the air samples or in the vacuum samples.  <u>See</u> letter dated

September 29, 2005 annexed hereto as <u>Exhibit 1</u>.  Results from air sampling that was done in

October 2005 also were all found to be "non detected for asbestos structures".  <u>See</u> letter dated

November 15, 2005, annexed hereto as <u>Exhibit 2</u>.  Sampling taken in December 2005, during the

second phase of the roof replacement, air indicated that there was "no airborne asbestos hazard"

and sampling of the roof material demolition debris found in the Building at that time was

"negative for asbestos content".  <u>See</u> letter dated January 26, 2006 annexed hereto as <u>Exhibit 3</u>.

Based upon this information provided by Bristol-Myers, the majority of the damages sought by

the plaintiff are for **(1)** clean-up and removal of dust and other materials, which did not contain

asbestos and replacement of damaged walls, ceilings and floors, and **(2)** boarding of monkeys

because the Building could not be used.  While Bristol-Myers initially characterized this claim as

one involving asbestos, the reality is that the materials that allegedly were released in the

Building were dust, which <u>did not</u> contain asbestos.

A spreadsheet of plaintiff's alleged costs is annexed hereto as <u>Exhibit 4</u>.  The alleged

damages total $404,589.81 for past invoices, and $258,267.43 remainder to be billed.  Of the

total past invoices, $214,878.80 was for monkey boarding during November 2005 through

March 2006 because the Building could not be used during the clean-up work which was

GREENBAUM, ROWE, SMITH & DAVIS LLP

Mr. Mark V. Bissanti                                        *Privileged and Confidential*
Quincy Mutual Fire Insurance Company
March 14, 2007
Page 7

necessary to remove the dust and not because of any asbestos.   There also is a charge for

supposed asbestos debris clean-up of $79,240.   Since only two pieces of the bulk roofing

material that was found in the Building contained asbestos, the majority of the costs associated

with this work were for removal of non-asbestos containing dust.   Other costs on plaintiff's

spreadsheet are for trailers, replacement of tile, new ceiling grids, new ceilings, new tiles,

painting, new air filters, diffusers, collars, dampers and ducts – none of which were required

because of asbestos, but only because of alleged property damage from dust that did not contain

asbestos.

*          *          *

For the reasons set forth above and other reasons, we respectfully request that Quincy

Mutual reconsider its coverage position and agree to provide insurance coverage, including

defense and indemnification, for the claims asserted by Bristol-Myers in the Arbitration.  Please

be advised that the insureds are under the reasonable expectation that coverage applies.

Currently, the Arbitration proceeding is scheduled for April 17, 2007, April 18, 2007, and

if necessary, April 25, 2007 and April 26, 2007.

We look forward to receipt of a favorable coverage decision from Quincy Mutual as soon

as possible.   On behalf of the insureds, we continue to reserve all rights under the insurance

policies and applicable law.

GREENBAUM, ROWE, SMITH & DAVIS LLP

Mr. Mark V. Bissanti                                        *Privileged and Confidential*
Quincy Mutual Fire Insurance Company
March 14, 2007
Page 8

       Thank you for your courtesies in this matter.

                                                Very truly yours,

                                                Ellen A. Silver

EAS/sjg
Encls:
cc:    Mr. Max Feldman, The Feldman Agency *(w/encls.)*

359 DRESHER ROAD
HORSHAM, PA 19044
(215) 672-6088
FAX (215) 443-0899
WEB SITE: http://www.eagleih.com



**INDUSTRIAL HYGIENE ASSOCIATES, INC.**

September 29, 2005

Mrs. Barbara Owen
Manager, Safety and Industrial Hygiene
Bristol-Myers Squibb Company
P.O. Box 4000
Princeton, NJ  08543-4000

Re:   Eagle Industrial Hygiene Associates, Inc.  -  Project #050982
       Asbestos Evaluation
       76 Fourth Street, Somerville, NJ  08876

Dear Mrs. Owen:

On September 24, 2005, Eagle Industrial Hygiene Associates, Inc. conducted an evaluation of the indoor environmental conditions at the above referenced facility and directed limited debris cleanup, which was performed by Bristol Environmental, Inc.  The evaluation and cleanup were requested by Bristol-Myers Squibb after demolition debris entered the building during roof replacement work contracted by the building owner to a third party contractor.

When the BMS Environment, Health, and Safety Department was notified of the debris intrusion into the building, the roofing work was halted and workers were evacuated from the building. Samples of removed roofing material were obtained by Bristol-Myers Squibb and sent to an analytical laboratory for testing.  Two of the five samples were positive for asbestos content (25% chrysotile).  The old roofing material remains in place on approximately 50% of the roof.

Inspection of the interior spaces of the building discovered roof material demolition debris on horizontal surfaces in the building.  The heaviest concentration of visible debris was in the southeast quadrant of the building (loading dock, storage room, and lunchroom, feed storage) primarily around the building perimeter walls.  Demolition debris was observed on the floors, storage shelves, boxes of supplies, on top of suspended ceiling tiles, light fixtures, ventilation ducts, pipes, roof joists, etc.

Based on these findings, Bristol Environmental initiated cleanup of the roof demolition debris. The cleanup included HEPA vacuuming and wet wiping of accessible surfaces in the following areas:

- Loading dock
- Storage closet
- Lunch room, including the top side of the ceiling tiles
- Storage area on top of the feed storage room
- Technician work stations adjacent to the feed storage area
- The roll covers of the overhead doors on the east and south walls of the building
- Hallways from the reception area, past the boiler room, to the loading dock, along the rear of the building to the overhead door, past the locker rooms to the entrance to the reception area

**EXHIBIT**

tabbies*

*69*

BMS00891

Asbestos Evaluation
76 4th Street, Somerville, NJ  08876

- In the hallways instrument panels, fixtures, and other horizontal surfaces were cleaned. The horizontal surfaces in the hallway were cleaned up to the level of the animal room ceilings.  Overhead ducts, pipes, the top side of ceiling panels, etc. were not cleaned. Horizontal surfaces more than approximately eight feet above the floor were not cleaned.

Air, surface vacuum, and bulk debris samples were collected from various locations inside the building to evaluate environmental conditions related to the potential asbestos exposures from the roof demolition debris.  The following table lists the sample collection locations and sample analysis results.  Additional information on sample collection and analysis is outlined on the laboratory analysis report pages.

| Sample Type | Sample Number | Sample Location | Asbestos Detected | Concentration (structures/cc) |
|---|---|---|---|---|
| Air | DB092408 | Animal room #11 | None | <0.0035 |
| Air | DB092409 | Animal room #5 | None | <0.0043 |
| Air | DB092410 | Animal room #6 | None | <0.0043 |
| Air | DB092414 | At the partition of M. Buttcher's work station | None | <0.0049 |
| Air | DB092416 | Hallway outside of the men's locker room | None | <0.0037 |
| Air | DB092418 | Hallway outside of animal room #3 | None | <0.0049 |
| Bulk debris | DB092402 | Loading dock floor, southwest corner | Chrysotile | 5% |
| Bulk debris | DB092403 | Loading dock floor, southeast corner | None | |
| Bulk debris | DB092404 | Storage room floor, at midpoint of exterior wall | None | |
| Bulk debris | DB092405 | Storage room, box on left side top shelf | Chrysotile | 10% |
| Surface vacuum | DB092406 | Cover on table in the loading dock | None | |
| Surface vacuum | DB092407 | Top of box on second shelf in the storage room | None | |
| Surface vacuum | DB092411 | Light fixture in the center of animal room #6 | None | |
| Surface vacuum | DB092412 | Top of door closer in animal room #5 | None | |
| Surface vacuum | DB092413 | Animal room #11, overhead strut for electrical conduit | None | |
| Surface vacuum | DB092415 | Bookshelf above M. Butcher's workstation | None | |

| Sample Type | Sample Number | Sample Location | Asbestos Detected | Concentration (structures/cc) |
|---|---|---|---|---|
| Surface vacuum | DB092417 | Top of box stored on top of the feed storage room | None | |

The bulk debris and vacuum samples were collected before cleanup work was started by Bristol Environmental in the designated sample collection locations.

The air samples were collected while the debris cleanup work was underway in the southwest quadrant of the building. The air samples in the animal rooms where collected while the animal handlers were working in these areas. No debris cleanup work was conducted in the animal rooms. The results of the air samples indicate there was no airborne asbestos hazard in the building at the time of this evaluation.

Based on the sample results, interviews with individuals knowledgeable of the conditions and circumstances surrounding the roof replacement work, and visual inspection of the roof and the interior of the building, we recommend the following course of action.

1. Collect core samples from the remaining areas of the old roof to identify the type and location of asbestos containing material. Samples should be taken from the roof field, perimeter flashing and roof penetration flashings. The results of these samples will be a determinant in the procedures used for the removal of the remaining section of the roof.

2. Protect with HEPA filtration or otherwise isolate the ventilation system air inlets during the roof removal work, if HEPA filtration is not already installed on the inlets.

3. Identify debris entry points into the building (edge of the roof deck, stacks, and other roof penetrations) and isolate these entry points with critical barriers to prevent additional debris entry into the building.

4. Collect air samples for asbestos evaluation inside the building during the remainder of the roof replacement work.

5. Collect wipe samples from the interior surfaces of the ventilation ducts to determine if the previous demolition work introduced debris into the ventilation system. Duct cleaning may be needed, based on the results of these samples.

6. After the roof replacement is complete, conduct debris cleaning throughout the building. The cleaning will include HEPA vacuuming and wet wiping of all building surfaces and contents in the building. A detailed scope of work for this cleaning will be developed based on work scheduling and other considerations.

If you have any questions about this evaluation or need additional information, please give me a call.

Thank you for selecting Eagle Industrial Hygiene Associates, Inc. for this evaluation.

Sincerely,

David Burkhardt, CIH, CSP

359 DRESHER ROAD
HORSHAM, PA 19044
(215) 672-6088
FAX (215) 443-0899
WEB SITE: http://www.eagleih.com



# EAGLE

## INDUSTRIAL HYGIENE ASSOCIATES, INC.

November 15, 2005

Ms. Barbara Owen
Manager, Safety and Industrial Hygiene
Bristol-Myers Squibb Company
P.O. Box 4000
Princeton, NJ  08543-4000

Re:   Eagle Industrial Hygiene Associates, Inc.  -  Project #050982
      Asbestos Evaluation (Interim) after Phase I Roof Work
      76 Fourth Street, Somerville, NJ  08876

Dear Ms. Owen:

Eagle Industrial Hygiene Associates, Inc. conducted an asbestos evaluation at the above referenced facility from October 3 to November 3, 2005.  The scope of services performed by Eagle consisted of collecting and analyzing applicable personnel breathing zone and fixed location area air samples during animal room and cage cleaning activities.  The samples were analyzed for asbestos fiber content.  In addition, roof core bulk samples were collected and PLM analyzed for asbestos content.

The evaluation was performed in response to concerns that roofing removal procedures may have rendered the materials friable and caused an asbestos infiltration into the interior occupied space of the facility. The project is ongoing at the time of this report.

Personnel breathing zone asbestos exposure air samples (13) were collected from 5 employees during their work activities.  The analysis of the samples did not detect any asbestos structures on the filters, providing evidence that the employees were not exposed to airborne asbestos during their work activities on October 4th, 5th and 7th.  The analysis of the area air samples (28) that were collected as part of this evaluation were all non detected for asbestos structures.  For detailed sample results and locations, see attached laboratory data sheets.

Bulk (roof core) samples (18) were collected from various locations of the facility. Analysis of the samples indicates the roofing materials contain Chrysotile asbestos ranging from 2-15%. For detailed sample results and locations see attached laboratory data sheets.

If you have any questions, please call.

Sincerely,

Keith E. Crawford, CIH

BMS00894



359 DRESHER ROAD
HORSHAM, PA 19044
(215) 672-6088
FAX (215) 443-0899
WEB SITE: http://www.eagleih.com

# *EAGLE*

## INDUSTRIAL HYGIENE ASSOCIATES, INC.

January 26, 2006

Mrs. Barbara Owen
Manager, Safety and Industrial Hygiene
Bristol-Myers Squibb Company
P.O. Box 4000
Princeton, NJ  08543-4000

Re:    Eagle Industrial Hygiene Associates, Inc.  - Project #050982
        Asbestos Evaluation During Roof Work
        76 Fourth Street, Somerville, NJ  08876

Dear Mrs. Owen:

Eagle Industrial Hygiene Associates, Inc. conducted an asbestos evaluation at the above referenced location during roof removal and installation work conducted from 12/16/05 through 12/21/05.  The evaluation included observation of the roof removal and installation work, monitoring of activities inside the building, and the collection of air samples in the building while Bristol Myers Squibb employees were in the facility and throughout the time work was underway on the roof.

Air samples were collected from various locations inside the building to evaluate environmental conditions related to potential asbestos exposures from the roof demolition debris.  Analysis of the roof debris generated during the first phase of the roof replacement indicated four (4) of the nine (9) debris samples contained between 5 and 25 percent chrysotile asbestos.  The roofing material debris is classified as non-friable Category I asbestos containing material (ACM).

The air sample results indicate there was no airborne asbestos hazard in the building during the time of this evaluation.  The attached table summarizes the sample collection dates, locations, and sample analysis results.  Additional information on air sample collection and analysis is outlined on the daily field work logs, chain of custody forms, and laboratory analysis report pages.

Inspection of the interior spaces of the building while the old roof removal was under way discovered roof material demolition debris continued to enter the building during this work. Demolition debris was observed on the floors in the hallway outside of the boiler room, in front of the emergency exit, and around the building perimeter walls.  Debris samples were collected from the floor in these areas and were analyzed for asbestos content.  The samples were negative for asbestos content and the debris was removed from the hallway areas.

If you have any questions or need additional information, please give me a call.

Sincerely,

David Burkhardt, CIH, CSP

BMS00895

| VENDOR | PO NUMBER | DESCRIPTION | AMOUNT | INVOICED |
|---|---|---|---|---|
| **2005** | | | | |
| EAGLE INDUSTRIAL | 80637139 | Asbestos Services | $17,362.50 | 18,404.25 |
| BRISTOL ENVIRONMENTAL | 80605918 | Bristol Environmental | $4,950.00 | 5,246.00 |
| BLASLAND,BOUCK & LEE | 80606177 | Asbestos Analysis | $5,500.00 | 3,120.96 |
| EAGLE INDUSTRIAL | 80615884 | Asbestos Services | $12,583 | 13,337.45 |
| EAGLE INDUSTRIAL | 80605606 | Asbestos Services | $5,235.00 | 5,549.10 |
| CENTRAL SHEET METAL | 80620841 | Curb-Extenders | $1,780.00 | 1,886.80 |
| | | | | |
| **2006** | | | | |
| EAGLE INDUSTRIAL | 80637138 | Air Monitoring for Asbestos | $28,500 | $26,547.70 |
| BROADWAY MOVERS | 11632532 | Temporary Storage Trailer | $1,000 | $1,000.00 |
| BRISTOL ENVIRONMENTAL | 80637123 | Asbestos Debris Cleanup | $283,000.00 | $79,240.00 |
| MR. JOHN | 80636347 | Restroom Trailer | 3,000.00 | $0.00 |
| RON CARUSO | 80637193 | Replace Tile | $31,150.00 | $0.00 |
| RON CARUSO | 80636346 | Furniture Move | $6,350.00 | 6,731.00 |
| GENERAL AIR SYSTEMS | 41874201 | Air Filters | $2,251.72 | 2,386.82 |
| RON CARUSO | 80640973 | New Ceiling Grid | $10,900.00 | 11,554.00 |
| WASTE MANAGEMENT | 80640992 | Somerville Abatement Cleanup | $750.00 | 0.00 |
| WACKENHUT | 80649956 | Security Vehicle Services | 2,179.50 | 0.00 |
| RON CARUSO | 80649924 | New Ceilings | $5,825.00 | 0.00 |
| TURTLE & HUGHES | 80844166 | Ceiling Tiles | $4,309.79 | 0.00 |
| RON CARUSO | 80636986 | Paint Drywalls | $1,680.00 | $1,780.00 |
| GRAINGER | American Express | Diffusers,Collars,Damper,Duct | $630.83 | 630.83 |
| EAGLE INDUSTRIAL | 80653561 | Air Monitoring 2-27-3-6-06 | 6,745.00 | 177,414.90 |
| | | Facilities Costs | | |
| VWR Scientific | BMS Credit Card | 17 Invoices Totaling | 435,682.34 | 12,296.10 |
| | | | | |
| PRF-Monkey Boarding | | Month of January 2006 | | 33,480.00 |
| | | Month of February 2006 | | 30,240.00 |
| | | October 10-31,2005 | | 21,560.00 |
| | | Month of March 2006 | | 25,228.80 |
| | | Month of November 2005 | | 58,800.00 |
| | | December 1-12,2005 | | 5,880.00 |
| | | Month of December 2005 | | 30,380.00 |
| | | December 19,2005 | | 9,310.00 |
| | | | | |
| | | TOTAL INVOICED TO DATE | | 404,589.81 |
| | | REMAINDER TO BE BILLED | | 258,267.43 |
| | | GRAND TOTAL | | 662,857.24 |

# EXHIBIT 36



**QUINCY MUTUAL
FIRE INSURANCE
COMPANY**

*06L01015*

March 23, 2007

7005 2570 0002 1003 3845

*Via Certified and Regular Mail*

Ellen Silver, Esq.
Greenbaum, Rowe, Smith & Davis
Metro Corporate Campus one
P.O. Box 5600
Woodbridge, NJ, 07059

Re:    Insured:       Schenkman Kushner Affiliates
       Plaintiff:      Bristol-Meyers Squibb Company
       Date of Loss:  September 26, 2005-December 16, 2005

Dear Ms. Silver:

Quincy Mutual Fire Insurance Company ("Quincy Mutual") is in receipt of your March 14, 2007 correspondence wherein you request reconsideration of our coverage position with regard to the above-referenced matter. After reviewing the information provided, *Quincy Mutual has determined that it will be maintaining its coverage denial.*

As you are aware, Quincy Mutual has denied coverage for this matter pursuant to the Absolute Asbestos Exclusion contained within the policy issued to Schenkman-Kushner Affiliates. The reason for this denial was the fact that the claim presented by Bristol-Meyers Squibb ("Bristol-Meyers") related to damages caused by the infiltration of asbestos during roofing work that was being done at the facility.

In your March 14, 2007 correspondence, you indicate that discovery into this matter has revealed that certain tests performed at the facility failed to show the presence of asbestos. As such, it is your opinion that these test results trigger Quincy Mutual's obligation to provide coverage for the claim presented.

Our review of the information, however, indicates that some of the tests did in fact demonstrate the presence of asbestos. Furthermore, the invoice submitted by Bristol-Meyers lists costs associated with testing for asbestos, monitoring for asbestos, asbestos debris removal, and asbestos services. The fact that *some of the testing* did not reveal asbestos is not dispositive of the fact that the plaintiff was concerned about the asbestos that was present and incurred costs and expenses to protect against the harmful effects of *any* asbestos exposure. It is our opinion that the invoice clearly demonstrates that Bristol Meyer's damages were related to the presence of asbestos. As such, Quincy Mutual

57 Washington Street ▪ Quincy, MA 02169 ▪ Telephone 617-770-5100 ▪ www.quincymutual.com

maintains its denial pursuant to the Absolute Asbestos Exclusion as stated in our November 17, 2006 correspondence.

In addition, we note that the damages listed include the repair and replacement of certain building materials, including ceiling tiles, ceiling grids, ceilings and paint for drywalls. The invoice also lists costs associated with renovations to the premises including adding diffusers, collars, dampers and ducts. These materials are actually considered part of the insured's property and would not be covered under this policy. Our position with respect to coverage on this issue is based upon the language contained within the policy of insurance, which states in pertinent part as follows:

*COMMERCIAL GENERAL LIABILITY COVERAGE FORM  Cg 00 01 10 01*

*SECTION I – COVERAGES*
*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
  *1. Insuring Agreement*
    *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*
      *(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and*
      *(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.*
      *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.*
  *2. Exclusions*
    *This insurance does not apply to*
    *j. Damage To Property*
      *"Property damage" to:*
      *(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*
      *(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;*
      *(3) Property loaned to you;*
      *(4) Personal property in the care, custody or control of the insured;*
      *(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*
      *(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*
      *Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.*

QUINCY MUTUAL FIRE INSURANCE COMPANY  🜚  57 Washington Street, Quincy, MA 02169

*Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.*

*Paragraphs (3) , (4) , (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.*

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".*

\*        \*        \*

As indicated, Exclusion "j" of the policy excludes coverage for costs or expenses incurred by you or *any other party for the repair, replacement, enhancement and maintenance of property owned by the insured for any reason.* The information provided indicates that the portion of damages listed by Bristol-Meyers which is associated with the ceiling, paint, dampers, diffusers, and ducts is solely related to the repair, replacement and enhancement of property owned by the insured.  As such, these damages would be excluded from coverage by Exclusion "j".

Quincy Mutual reserves its right to further amend its coverage position to include any additional policy provisions or legal and/or equitable principles, which may apply to this matter.  The position stated in this correspondence is not intended and should not be construed as a waiver of Quincy Mutual's ability to assert its reliance on additional policy provisions or legal and/or equitable principles or defenses in this matter.

If you wish to discuss this correspondence, please contact the undersigned directly.  If you disagree with our coverage position, you may contact he New Jersey State Department of Banking and Insurance, 20 West State Street, Trenton, NJ 08608. You may also contact the undersigned to discuss Quincy Mutual's coverage position

Very truly yours,

Linda J. Eckman, Esq.
Claims Counsel
(800) 899-1116 x5264

QUINCY MUTUAL FIRE INSURANCE COMPANY    57 Washington Street, Quincy, MA 02169

# EXHIBIT 37

# GREENBAUM, ROWE, SMITH & DAVIS LLP

PAUL A. ROWE
WENDELL A. SMITH
ALAN E. DAVIS
DAVID L. BRUCK
MICHAEL A. BACKER
MARTIN A. DOLLINGER
DEAN A. GAVER
ROBERT C. SCHACHTER
MARTIN L. LEPELSTAT
DENNIS A. ESTIS
WILLIAM D. GRAND
RAYMOND M. BROWN
ALAN S. NAAR
STEPHEN H. KNEE
ROBERT M. GOODMAN
DOUGLAS K. WOLFSON
MARK H. SOBEL
HAL W. MANDEL
BARRY S. GOODMAN
LAWRENCE P. MAHER
THOMAS J. DENIZIO, JR.
ROBERT S. GOLDSMITH
JOHN D. NORTH
KENNETH T. BILLS
THOMAS C. SENTER
MARGARET GOODZEIT
W. RAYMOND FELTON
CHRISTINE F. LI
MERYL A. G. GONCHAR

MICHAEL K. FEINBERG
CARLTON T. SPILLER
JOSEPH M. ORIOLO
ARON M. SCHWARTZ
SABRINA A. KOGEL
JACQUELINE M. PRINTZ
STEVEN C. DELINKO
DAVID A. ROTH
GARY K. WOLINETZ
KEVIN T. MCNAMARA
RICHARD L. HERTZBERG
ELLEN A. SILVER
ANDREA J. SULLIVAN
MARC D. POLICASTRO
MARC J. GROSS
LUKE J. KEALY
C. BRIAN KORNBREK
CIPORA S. WINTERS
GALIT KIERKUT
BRIAN R. SELVIN
PETER D. CRAWFORD, JR.
EMILY A. KALLER
ARREN S. GOLDMAN
DARREN C. BARREIRO
OLIVIER SALVAGNO
STEVEN NUDELMAN
DINA M. VANIDES
HANY A. MAWLA

COUNSELORS AT LAW

METRO CORPORATE CAMPUS ONE
P.O. BOX 5600
WOODBRIDGE, N. J. 07095-0988
(732) 549-5600
FAX (732) 549-1881

DELIVERY ADDRESS:
99 WOOD AVE. SOUTH
ISELIN, NEW JERSEY 08830-2712

75 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068-3701
(973) 535-1600
FAX (973) 535-1698

EMAIL: INFO@GREENBAUMLAW.COM
WWW.GREENBAUMLAW.COM

OF COUNSEL
ROBERT S. GREENBAUM    ARTHUR M. GREENBAUM
FRANKLIN M. SACHS
J. WARREN WOOD III

COUNSEL
CHRISTINE F. MARKS    HOWARD B. HANDER
ROBERT S. UNDERHILL    LORA L. FONG
STEVEN FIRKSER    JODI L. ROSENBERG
ALLEN V. BROWN    MICHELE GIBSON

ROSEMARY CULCASI    JEFFREY A. SIROT
ERIC H. MELZER    MICHAEL A. GOROKHOVICH
MARINA SOLO    LISA J. CLAPP
ROBERT BECKELMAN    GREGG H. HILZER
MAJA M. OBRADOVIC    LISA B. DIPASQUA
JANE J. FELTON    MEGHAN O. MURRAY
STACEY R. COHEN    ERNEST E. D'ANGELO
MICHAEL A. KLEIN    JORDAN A. STERN
DEAN E. LOVENTHAL    CATHLENE Y. BANKER
SENWAN AKHTAR    LAURA M. BILOTTA
BRYAN D. PLOCKER    JAMIE A. YONKS
DAVID T. SHIVAS    JEANETTE TANNER
DAVID S. SCHECHTER    MICHAEL G. D'ALBA
ADAM B. KAPLAN    BLAKELY D. FISHLIN
JESSICA F. BATTAGLIA    KATIE M. HOLDEN
JEMI M. GOULIAN    JULIE KUSHNER
JOHN B. NANCE    CHRISTOPHER J. LEDOUX
MICHELLE M. SEKOWSKI    CATHERINE S. SHIMSKY

WM. L. GREENBAUM (1914-1983)
ALLEN RAVIN (1957-1997)

REPLY TO:
*Woodbridge*

*** Privileged and Confidential ***
*** Settlement Communication ***

April 26, 2007

## VIA TELECOPY AND REGULAR MAIL

Mark V. Bissanti, Senior Claims Examiner
Quincy Mutual Fire Insurance Company
57 Washington Street
Quincy, MA  02169

Re:   ***Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.***
      **American Arbitration Association No. 18 115 Y 01071 06**
      **Your Claim No. 06L01015**

Dear Mr. Bissanti:

This will follow-up on my voice mail messages from this morning to you and to Linda Eckman, Esq., and my letters dated March 14, 2007, October 17, 2006 and September 7, 2006 on behalf of your insured Somerville Fidelco Associates L.P. ("Somerville Fidelco") regarding our request for insurance coverage, including defense and indemnification, for the claims in the Arbitration proceeding filed by Bristol-Myers Squibb Company ("Bristol-Myers") against Somerville Fidelco in the referenced matter.

*This letter is provided to assist in the defense of the insured and as such is privileged and confidential.  This letter shall not be used by the insurer for any other purpose and shall not be disclosed to any other person.*

We previously advised that the Arbitration proceeding was scheduled to commence on April 17, 2007.  The date was adjourned until April 26, 2007.  Yesterday evening, before commencing the Arbitration, Bristol-Myers and Somerville Fidelco agreed in principle to a settlement of all claims in the matter, subject to approval of the settlement and preparation and approval of the settlement documents.  The insured Somerville Fidelco believes that this

GREENBAUM, ROWE, SMITH & DAVIS LLP

Mark V. Bissanti, Senior Claims Examiner          ** *Privileged and Confidential* **
Quincy Mutual Fire Insurance Company             ** *Settlement Communication* **
April 26, 2007
Page 2

settlement is a favorable settlement, avoids the risks and costs of the continuing Arbitration and is in the best interest of the insured and its insurer.

This letter will confirm that Quincy Mutual Fire Insurance Company agrees that the settlement between the Bristol-Myers and Somerville Fidelco will not prejudice Somerville Fidelco's claims against the insurance policies issued by Quincy Mutual Fire Insurance Company or its affiliated and related companies with regard to the claims in the referenced matter. This also will confirm that the insurer will not claim that the settlement is in violation of the terms of the insurance policy.

If we do not hear from you by the close of business on <u>Friday, April 27, 2007</u>, we will trust that the insurer has no objection to the settlement and agrees with this letter, so that our office will proceed in preparing and finalizing the settlement and the settlement documents.

On behalf of Somerville Fidelco, we continue to reserve, and specifically preserve all rights, and claims against the insurer for reimbursement of all defense costs and the settlement amount under the insurance policies and New Jersey law.

If you have any questions, please call me immediately.

Very truly yours,

Ellen A. Silver

EAS/sjg

cc:     Linda J. Eckman, Esq. *(via telecopy and regular mail)*

# EXHIBIT 38

# M E M O R A N D U M

**TO:**       **FILE**

**FROM:**    **ELLEN A. SILVER**

**DATE:**     **APRIL 27, 2007**

**RE:**        **SCHENKMAN KUSHNER/BRISTOL-MYERS SQUIBB**

---

I received the following voice mail from Mark Bissanti of Quincy Mutual on April 27, 2007:

> Attorney Silver, it's Mark Bissanti from Quincy Mutual getting back to you on Schenkman Kushner Affiliates and Bristol-Myers Squibb. Yeah, it wouldn't be any – if you guys settle, it's not going to be considered a violation of the terms of the contract. I'm faxing a letter over to you to that effect right now. If you have any questions, please give me a call at 800-899-1116 x 5294. Thanks.

EAS/sjg

# EXHIBIT 39

APR-27-2007 13:28 FROM:QMUTUAL          800 899 7790          TO:Green_m          P.2/2



**QUINCY MUTUAL
FIRE INSURANCE
COMPANY**

April 27, 2007

Greenbaum, Rowe, Smith & Davis, LLP
Counselors At Law
Metro Campus One
PO BOX 5600
Woodbridge NJ 07095-0988

RE: Our Insured: Schenkman Kushner Affiliates
    Claimant: Bristol Meyers Squibb Company
    Our Claim No: 06L01015
    Date of Loss: September 26, 2005 – December 16, 2005

Dear Attorney Silver,

Quincy Mutual Fire Insurance ("Quincy Mutual") is in receipt of your correspondence dated April 26, 2007 regarding the above referenced claim of loss.

Per our conversation this date, Quincy Mutual will be standing by its original coverage denials based upon the **"Absolute Asbestos Exclusion"** and Exclusion J, **"Damage to Property."**

Further, it is understood that the matter between Bristol Meyers Squibb and Schenkman Kushner Affiliates may soon be resolved through Arbitration between the two parties. It is understood that Quincy Mutual will not be a participant in that Arbitration or settlement between Bristol Meyers Squibb and Schenkman Kushner Affiliates due to the denial of coverage as noted.

Because we have denied coverage for the above reasons, it is expected that Schenkman Kushner Affiliates would undertake to settle this matter on their own. Should you and Schenkman Kushner Affiliates decide to dispute the original coverage denial based upon the "Absolute Asbestos Exclusion" and Exclusion J, "Damage To Property", **Quincy Mutual will not consider Schenkman Kushner's settlement directly with Bristol Meyers Squibb to be a violation of the terms of the contract of insurance.**

Please contact me at your earliest convenience if you have any questions or wish to discuss this matter further.

Sincerely,

Mark V. Bissanti
Senior Claims Examiner
800-899-1116 ext 5294

57 Washington Street ▪ Quincy, MA 02169 ▪ Telephone 617-770-5100 ▪ www.quincymutual.com

# EXHIBIT 40



**STOCKBRIDGE RISK MANAGEMENT, INC.**

Professional Insurance Advisors

40 Cutter Mill Road · Great Neck, New York 11021-3213
Phone: 516 487-1700 · Fax: 516 487-1146 · www.stockbridgerisk.com

July 6, 2007

Mr. Mark Pissanti
Sr. Claims Examiner
Quincy Mutual Fire Insurance Company
57 Washington Street
Quincy, MA 02169

Re:   Bristol-Myers Squibb Company vs. Schenkman Kushner Affiliates
      Your Policy #:  CPP800836
      Claim #:  06L01015

Dear Mark:

As we recently discussed, our firm has been engaged by Schenkman Kushner to review
the issues surrounding the arbitration between Bristol-Myers and Somerville Fidelco
Associates LP – a named insured under your policy.

The correspondence previously forwarded to you indicates only a small portion of the
sampled debris contained asbestos.  The rest was just dust particles which contained no
asbestos resulting from the work being performed.

Based on this, we believe that the asbestos exclusion would not apply to that portion of
the loss and that Quincy Mutual owes their client a defense and indemnity for that portion
of the claim.

As you are aware, a settlement has been reached between Bristol-Myers and the insured
through an arbitration proceeding of $575,000 plus legal fees in excess of $100,000.

Inasmuch as it is our opinion that there should be a defense and indemnity forthcoming
from Quincy Mutual, we would appreciate your considering a 70% contribution towards
this settlement and legal fees.

We look forward to your response and thank you in advance for your consideration in this
matter.

Yours truly,

Pat Antonacci

PA/lee

cc:    David B. Kahan, Esq.

lee\pat\paltr62707                      A Member of the Stockbridge Group

# EXHIBIT 41


QUINCY MUTUAL
GROUP

August 1, 2007

Pat Antonacci
Stockbridge Risk Management
40 Cutter Mill Road
Great Neck, NY 11021

Re:     Insured:      Schenkman Kushner
        Plaintiff:    Bristol Myers
        Claim No.:    06L01015

Dear Pat:

Quincy Mutual Fire Insurance Company ("Quincy Mutual") is in receipt of your July 6, 2007 correspondence requesting contribution to the settlement of the above-referenced matter.  Enclosed for you review please find our Declination of Coverage issued to Schenkman Kushner on March 23, 2006.  As you can see, we have denied coverage pursuant to the Absolute Asbestos Exclusion as well as Exclusion "J", which excludes coverage for property damages to the insured's property.  Unfortunately, your correspondence has not provided any additional information or documentation supporting your position that this is a covered matter.

To properly consider your request, we ask that you provide us with any documentation submitted by Plaintiff that outlines its damages.  It would also be beneficial for Quincy Mutual to have an explanation as to the breakdown of the settlement figure.

Quincy Mutual is not willing to contribute to the settlement of the above referenced matter unless we are provided documentation supporting your contention that coverage is owed under the policy issued to Schenkman Kushner.

Very truly yours,

Linda Eckman, Esq.
Claims Counsel
(800) 899-1116 x5264

57 Washington Street ▪ Quincy, MA 02169 ▪ Telephone 617-770-5100 ▪ www.quincymutual.com

# EXHIBIT 42



**STOCKBRIDGE RISK MANAGEMENT, INC.**

Professional Insurance Advisors

40 Cutter Mill Road · Great Neck, New York 11021-3213
Phone: 516 487-1700 · Fax: 516 487-1146 · www.stockbridgerisk.com

**RECEIVED**

SEP 2 5 2007

**QUINCY MUTUAL**

·September 20, 2007

Linda Eckman, Esq.
Claims Counsel
Quincy Mutual Group
57 Washington Street
Quincy, MA 02169

Re:   Schenkman Kushner)
      Plaintiff:  Bristol-Myers
      Your Claim #:  06L01015

Dear Linda:

In response to your letter of August 1st and our telephone conversation, at this time I am enclosing a letter from Schenkman Kushner which indicates the amount of the settlement for this claim, together with reports from their engineering consultant.  After your review, you will see they indicate that there was no asbestos in the dust that was removed from this premises.

In view of the enclosed, we would appreciate your reconsidering contributing towards this settlement.  Please let me know if you require any additional information or would like to discuss this with the insured.

Thank you for your attention to this matter.

Yours truly,

Pat Antonacci

PA/lee
Enclosure

cc:    David Kahan

lee\pat\paltr92007

A Member of the Stockbridge Group

# EXHIBIT 43

**SOMERVILLE FIDELCO ASSOCIATES, L.P.**
**520 US Highway 22 East**
**P.O. Box 6872**
**Bridgewater, NJ  08807**

Telephone:  (908) 725-8100

Facsimile:  (908) 575-2237

September 20, 2007

Mr. Pat Antonacci
The Stockbridge Group
40 Cutter Mill Road
Great Neck, New York  11021-3213

        RE:  Bristol-Myers Squibb Company vs. Somerville Fidelco Associates, L.P.

Dear Pat:

        This letter is to confirm that the settlement amount paid to Bristol-Myers Squibb Company was $575,000.00.  In addition, we have incurred legal fees to date in the amount of $122,862.41.

        We are in the process of pursuing our remedies against Badger Roofing and its insurance company.

        Enclosed are two (2) reports prepared by reports prepared by Environmental Health Investigations, Inc.

        Please advise if you need any further documentation.

                                        Very truly yours,

                                        David B. Kahan
                                        General Counsel

DBK:lm
Enclosures

# EXHIBIT 44

# CERTIFICATE OF INSURANCE

| | ISSUE DATE |
|---|---|
| | 12/14/2005 |

| PRODUCER | This certificate is issued as a matter of information only and confers no rights upon the Certificate Holder. This Certificate does not amend, extend or alter the coverage afforded by the policies below. |
|---|---|
| Wachovia Insurance Services<br>666 Third Avenue, 17th Floor<br>New York, NY 10017<br>USA | |

| | COMPANIES AFFORDING COVERAGE |
|---|---|

| INSURED | Company A | American Home Assurance Co |
|---|---|---|
| Bristol-Myers Squibb Company and its subsidiary companies<br>345 Park Avenue<br>New York, NY 10154 | Company B | American Int'l Ins Co of PR |
| | Company C | |
| | Company D | |
| | Company E | |

This is to certify that the policies of insurance described herein have been issued to the Insured named herein for the policy period indicated. Notwithstanding any requirement, term or condition of contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, conditions and exclusions of such policies. Limits shown may have been reduced by paid claims.

| CO<br>LT | TYPE OF INSURANCE | POLICY NUMBER | EFFECTIVE<br>EXPIRATION | LIMITS OF LIABILITY | |
|---|---|---|---|---|---|
| A<br>B | **GENERAL LIABILITY**<br>[X] Commercial General Liability<br>[ ] Claims Made [X] Occurrence<br>[ ] Owners' and Contractors' Protection<br>[ ]<br>[ ]<br>General Aggregate Limit applies per:<br>[X] Policy [ ] Project [ ] Location | RMGL5751452 US<br>005-1000288 Puerto Rico<br>RMGL2507256 Canada | 01/01/2006<br>01/01/2007 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | FIRE DAMAGE | $ 5,000,000 |
| | | | | MEDICAL EXPENSE | $ 10,000 |
| | | | | PERS. AND ADVERTISING INJURY | $ 5,000,000 |
| | | | | GENERAL AGGREGATE | $ 15,000,000 |
| | | | | PRODUCTS AND COMP. OPER. AGG. | no coverage |
| A<br>B | **AUTOMOBILE LIABILITY**<br>[X] Any Automobile<br>[ ] All Owned Automobiles<br>[ ] Scheduled Automobiles<br>[ ] Hired Automobiles<br>[ ] Non-owned Automobiles | RMCA5831756 AOS<br>RMCA5831757 TX<br>RMCA5831758 MA | 01/01/2006<br>01/01/2007 | COMBINED SINGLE LIMIT | $ 3,000,000 |
| | | | | BODILY INJURY (Per person) | |
| | | | | BODILY INJURY (Per accident) | |
| | | | | PROPERTY DAMAGE (Per accident) | |
| | | | | COMPREHENSIVE | Self Insured |
| | | | | COLLISION | Self Insured |
| A | **WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY** | RMWC 6610704 - AOS<br>RMWC 6610695 - CA<br>RMWC 6610696 - GA<br>RMWC 6610697 - OR | 01/01/2006<br>01/01/2007 | WC Statutory Limit [x] Other [ ] | |
| | | | | EL EACH ACCIDENT | $ 5,000,000 |
| | | | | EL DISEASE (Each employee) | $ 5,000,000 |
| | | | | EL DISEASE (Policy Limit) | $ 5,000,000 |
| | **EXCESS LIABILITY**<br>[ ] Occurrence [ ] Claims Made | | | EACH OCCURRENCE | |
| | | | | AGGREGATE | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Somerville Fidelco Associates, LP is/are included as additional insured, as their interests may appear, as required by written agreement with Bristol-Myers Squibb Company and its subsidiary companies for Leased Premises located at 76 Fourth Street, Somerville, NJ;.

| CERTIFICATE HOLDER | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT A FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE ISSUER, COMPANY, ITS AGENTS OR REPRESENTATIVES. |
|---|---|
| Somerville Fidelco Associates, LP<br>Fran Vicari<br>520 US Highway 22<br>PO Box 6872<br>Bridgewater, NJ 08807<br>United States | Authorized Representative<br><br>*Joan Dunner* |

Certificate ID: R2V3-0HS

Parsippany, NJ   07054
973-402-2200

# CERTIFICATE OF INSURANCE

We hereby certify that insurance coverage is now in force with our Company as outlined below. This certificate does not amend, extend or alter the coverage afforded by the policy.

**TITLE OF INSURED:**
BRISTOL-MYERS SQUIBB COMPANY
C/O RISK MANAGEMENT DEPARTMENT

| | |
|---|---|
| Policy No: LD190 | Effective: 01-Jul-2006 |
| Account No: 1-31058 | Expires: 01-Jul-2007 |

**Description & Location of Property Covered:**
Personal Property
PRG
Pharmaceutical Group & Research Institute
76 4th St
SOMERVILLE, NJ  088763232

Index No: 031820.39
Ins Loc: NJ13

**COVERAGE IN FORCE:** (Subject to limits of liability, deductibles and all conditions in the policy)

| Insurance Provided: | Peril: | Limit of Liability: |
|---|---|---|
| PROPERTY DAMAGE | ALL RISK | $4,080,000 |

**ADDITIONAL INTERESTS:**

Additional interests under the policy, consisting of, but not limited to mortgagees, lenders loss payees, loss payees, and additional named insureds, are covered in accordance with Certificates of Insurance issued to such interests and on file with this Company. Loss, if any, shall be payable to such additional interests, as their interests may appear, and in accordance with loss payment provisions of the policy.

Type - Additional Named Insured in accordance with the Additional Interests clause stated above.

Name    - SOMERVILLE FIDELCO ASSOCIATES L.P. (LANDLORD)
Address - 520 US HIGHWAY 22
          P.O. BOX 6872
          BRIDGEWATER, NJ  08807

**Personal Property consisting of:** Leasehold Improvements to Leased Premises at 76 Fourth Street, Somerville, New Jersey

Property Damage applies on a Repair or Replacement Value basis.

Mailing:

ATTN: LISA LEDRAPPIER
SOMERVILLE FIDELCO ASSOCIATES L.P.
520 US HIGHWAY 22
P.O. BOX 6872
BRIDGEWATER, NJ  08807

Certificate: 00017-001
Effective Date: 01-Jul-2006

BY *David Eelis for A Antoniou*
Authorized Signature/Date
ANDREAS M ANTONIOU 17-Jul-2006

# EXHIBIT 45

# GREENBAUM, ROWE, SMITH & DAVIS LLP

PAUL A. ROWE
WENDELL A. SMITH
ALAN E. DAVIS
DAVID L. BRUCK
MICHAEL A. BACKER
MARTIN E. DOLLINGER
DEAN A. GAVER
ROBERT C. SCHACHTER
MARTIN L. LEPELSTAT
DENNIS A. ESTIS
WILLIAM D. GRAND
RAYMOND M. BROWN
ALAN S. NAAR
STEPHEN H. KNEE
ROBERT M. GOODMAN
DOUGLAS K. WOLFSON
MARK H. SOBEL
HAL W. MANDEL
BARRY S. GOODMAN
LAWRENCE R. MAHER
THOMAS J. DENITZIO, JR.
ROBERT S. GOLDSMITH
JOHN D. NORTH
KENNETH T. BILLS
THOMAS C. SENTER
MARGARET GOODZEIT
W. RAYMOND FELTON
CHRISTINE F. LI
MERYL A. G. GONCHAR

MICHAEL K. FEINBERG
CARLTON T. SPILLER
JOSEPH M. ORIOLO
ARON M. SCHWARTZ
SABRINA A. KOGEL
JACQUELINE M. PRINTZ
STEVEN C. DELINKO
DAVID A. ROTH
GARY K. WOLINETZ
KEVIN T. McNAMARA
RICHARD L. HERTZBERG
ELLEN A. SILVER
ANDREA J. SULLIVAN
MARC D. POLICASTRO
MARC J. GROSS
LUKE J. KEALY
C. BRIAN KORNBREK
CIPORA S. WINTERS
GALIT KIERKUT
BRIAN R. SELVIN
PETER D. CRAWFORD, JR.
EMILY A. KALLER
ARREN S. GOLDMAN
DARREN C. BARREIRO
OLIVIER SALVAGNO
STEVEN NUDELMAN
DINA M. VANIDES
HANY A. MAWLA

WM. L. GREENBAUM (1914-1983)
ALLEN RAVIN (1957-1997)

## COUNSELORS AT LAW

METRO CORPORATE CAMPUS ONE
P.O. BOX 5600
WOODBRIDGE, N. J. 07095-0988
(732) 549-5600
FAX (732) 549-1881

DELIVERY ADDRESS:
99 WOOD AVE. SOUTH
ISELIN, NEW JERSEY 08830-2712

75 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068-3701
(973) 535-1600
FAX (973) 535-1698

EMAIL: INFO@GREENBAUMLAW.COM
WWW.GREENBAUMLAW.COM

OF COUNSEL
ROBERT S. GREENBAUM   ARTHUR M. GREENBAUM
FRANKLIN M. SACHS
J. WARREN WOOD III

COUNSEL
CHRISTINE F. MARKS        HOWARD B. HANDER
ROBERT S. UNDERHILL      LORA L. FONG
STEVEN FIRKSER             JODI L. ROSENBERG
ALLEN V. BROWN             MICHELE GIBSON

ROSEMARY CULCASI        JEFFREY A. SIROT
ERIC H. MELZER            MICHAEL A. GOROKHOVICH
MARINA SOLO              LISA J. CLAPP
ROBERT BECKELMAN        GREGG H. HILZER
MAJA M. OBRADOVIC       LISA B. DIPASQUA
JANE J. FELTON            MEGHAN D. MURRAY
STACEY R. COHEN          ERNEST E. D'ANGELO
MICHAEL A. KLEIN          JORDAN A. STERN
DEAN E. LOVENTHAL        CATHLENE Y. BANKER
SENWAN AKHTAR           LAURA M. BILOTTA
BRYAN D. PLOCKER         JAMIE A. YONKS
DAVID T. SHIVAS           JEANETTE TANNER
DAVID S. SCHECHTER       MICHAEL G. D'ALBA
ADAM B. KAPLAN           BLAKELY D. FISHLIN
JESSICA F. BATTAGLIA      KATIE M. HOLDEN
JEMI M. GOULIAN          JULIE KUSHNER
JOHN B. NANCE            CHRISTOPHER J. LEDOUX
MICHELLE M. SEKOWSKI     CATHERINE S. SHIMSKY

*Woodbridge*

REPLY TO:

March 14, 2007

**VIA CERTIFIED MAIL — R.R.R.** *(w/encls.)* **— 70023150000471502791**
**AND REGULAR MAIL** *(w/encls.)*

Claims Department
American Home Assurance Company
AIG Claim Services, Inc.
70 Pine Street, 21st Floor
New York, NY 10270

Re: ***Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.***
***American Arbitration Association, 18 459 01071 06***

Dear Sir/Madam:

This notice is provided on behalf of Somerville Fidelco Associates, LP ("Somerville Fidelco") regarding a claim filed by Bristol-Myers Squibb Company against Somerville Fidelco with the American Arbitration Association regarding damages at a building located at 76 Fourth Street in Somerville, New Jersey. Bristol-Myers alleges that roofing materials and dust entered the Building causing property damage and loss of use. For your convenience, a copy of the correspondence dated August 4, 2006 from plaintiff's attorney to Ms. Catherine Shanks of the American Arbitration Association along with the Demand for Arbitration is annexed hereto as Exhibit A.

This notice is provided pursuant to all insurance policies issued by American Home Assurance Company ("American Home") and its affiliated and related companies to Bristol-Myers Squibb Company, under which Somerville Fidelco is an additional insured, including but not limited to the following:

| INSURER | POLICY NUMBER | POLICY PERIOD |
|---|---|---|
| American Home | 5548775 US | 1/1/05 to 1/1/06 |
| American Home | RMGL5751452 US | 1/1/06 to 1/1/07 |

GREENBAUM, ROWE, SMITH & DAVIS LLP

Claims Department
American Home Assurance Company
March 14, 2007
Page 2

On behalf of Somerville Fidelco, we request insurance coverage including defense and indemnification for the claims in the referenced matter.

Thank you for your courtesies in this matter.

Very truly yours,

Ellen A. Silver

EAS/sjg
Encls.



DrinkerBiddle&Reath LLP
A Pennsylvania Limited Liability Partnership

Charles J. Vinicombe
609-716-6562
charles.vinicombe@dbr.com

*Law Offices*

05 College Road East
Suite 300
P.O. Box 627
Princeton, NJ
08542-0627

609-716-6500
609-799-7000 fax
w.drinkerbiddle.com

PHILADELPHIA
NEW YORK
WASHINGTON
LOS ANGELES
SAN FRANCISCO
CHICAGO
FLORHAM PARK
BERWYN
WILMINGTON

August 4, 2006

<u>Via Federal Express</u>

Ms. Catherine Shanks
Vice President-Case Management Center
American Arbitration Association
950 Warren Ave.
East Providence, RI 02914

Re:   **Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.**

Dear Ms. Shanks:

    Please find enclosed for filing with the American Arbitration Association the Arbitration Demand of Bristol-Myers Squibb Company ("BMS"). By copy of this letter, we are providing a copy of this Demand to Somerville Fidelco Associates, L.P. and its legal counsel, Mr. Dollinger. I have also enclosed a check in the amount of $325.00 for the filing fee. I thank you for your assistance in this matter.

Sincerely yours,

Charles J. Vinicombe

CJV/sds

cc:   Martin E. Dollinger, Esq.
      Somerville Fidelco Associates, LP
      (via <u>certified mail</u> return receipt
      requested and ordinary mail
      with demand)

*Jonathan I. Epstein,*
*Partner responsible for*
*Princeton Office*

<u>Established</u>
1849

PR\482418\1

 **American Arbitration Association**
· *Dispute Resolution Services Worldwide* ·

COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION

---

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐
*There is no additional administrative fee for this service.*

| Name of Respondent | | | Name of Representative (if known) | | |
|---|---|---|---|---|---|
| Somerville Fidelco Associates, L.P. | | | Martin E. Dollinger | | |
| Address | | | Name of Firm (if applicable) | | |
| 520 U.S. Highway 22 East | | | Greenbaum, Rowe, Smith & Davis LLP | | |
| P.O. Box 6872 | | | Representative's Address | | |
| | | | Metro Corporate Center, P.O. Box 5600 | | |
| City | State | Zip Code | City | State | Zip Code |
| Bridgewater | NJ | 08807 | Woodbridge | NJ | 07095-0988 |
| Phone No. | | Fax No. | Phone No. | | Fax No. |
| (908) 725-8100 | | (908) 575-2237 | (732) 549-5600 | | (732) 549-1881 |
| Email Address: | | | Email Address: | | |
| | | | mdollinger@greenbaum.com | | |

The named claimant, a party to an arbitration agreement dated **October 23, 1987**, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration. *

THE NATURE OF THE DISPUTE
Claim for breach of commercial lease by tenant against landlord arising out of asbestos contamination at leased premises (located in Somerville, New Jersey) caused by landlord's roofing contractor

| Dollar Amount of Claim $734,175.00 | Other Relief Sought: ☐ Attorneys Fees   ☐ Interest |
|---|---|
| | ☐ Arbitration Costs   ☐ Punitive/ Exemplary   ☐ Other _____ |

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) **$325.00**

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Commercial lease experience

Hearing locale **Somerville, NJ**     (check one) ☒ Requested by Claimant   ☐ Locale provision included in the contract

| Estimated time needed for hearings overall: | | Type of Business: Claimant   Property owner |
|---|---|---|
| hours or **2-3** days | | Respondent Pharmaceutical Company |

Is this a dispute between a business and a consumer? ☐Yes ☒ No  Does this dispute arise out of an employment relationship? ☐ Yes ☒ No
If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000  ☐ $100,000 - $250,000  ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA  ☐ Dallas, TX  ☒ East Providence, RI  ☐ Fresno, CA  ☐ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative)   Date: | Name of Representative |
|---|---|
| | Charles J. Vinicombe |
| Name of Claimant | Name of Firm (if applicable) |
| Bristol-Myers Squibb Company | DRINKER BIDDLE & REATH LLP |
| Address (to be used in connection with this case) | Representative's Address |
| P.O. Box 4000 | 105 College Road East, Suite 300 |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Princeton | NJ | 08845-4000 | Princeton | NJ | 08542 |
| Phone No. | | Fax No. | Phone No. | | Fax No. |
| (609) 252-5546 | | | (609) 716-6562 | | (609) 799-7000 |
| Email Address: | | | Email Address: | | |
| john.chapman@bms.com | | | charles.vinicombe@dbr.com | | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879

---

* The arbitration clause is contained in the original October 23, 1987 lease, which
  has amendments and extensions dated June 3, 1988, May 14, 1993 and November 25, 2002.

# EXHIBIT 46

# GREENBAUM, ROWE, SMITH & DAVIS LLP

ROWE
. A. SMITH
DAVIS
BRUCK
A. BACKER
C. DOLLINGER
SAVER
C. SCHACHTER
. LEPELSTAT
L. ESTIS
D. GRAND
O M. BROWN
NAAR
H. KNEE
M. GOODMAN
S K. WOLFSON
SOBEL
ANDEL
. GOODMAN
:E R MAHER
J. DENITZIO, JR
S. GOLDSMITH
NORTH
T. BILLS
C. SENTER
ET GOODZEIT
ND FELTON
IE R. LI
.G. GONCHAR

MICHAEL K. FEINBERG
CARLTON T. SPILLER
JOSEPH M. ORIOLO
ARON M. SCHWARTZ
SABRINA A. KOGEL
JACQUELINE M. PRINTZ
STEVEN C. DELINKO
DAVID A. ROTH
GARY K. WOLINETZ
KEVIN T. MCNAMARA
RICHARD L. HERTZBERG
ELLEN A. SILVER
ANDREA J. SULLIVAN
MARC D. POLICASTRO
MARC J. GROSS
LUKE J. KEALY
C. BRIAN KORNBREK
CIPORA S. WINTERS
GALIT KIERKUT
BRIAN R. SELVIN
PETER D. CRAWFORD, JR
EMILY A. KALLER
ARREN S. GOLDMAN
DARREN C. BARREIRO
OLIVIER SALVAGNO
STEVEN NUDELMAN
DINA M. VANIDES
HANY A. MAWLA

VM. L. GREENBAUM (1914-1983)
ALLEN RAVIN (1957-1997)

COUNSELORS AT LAW

METRO CORPORATE CAMPUS ONE
P.O. BOX 5600
WOODBRIDGE, N. J. 07095-0988
(732) 549-5600
FAX (732) 549-1881

DELIVERY ADDRESS:
99 WOOD AVE. SOUTH
ISELIN, NEW JERSEY 08830-2712

75 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068-3701
(973) 535-1600
FAX (973) 535-1698

EMAIL: INFO@GREENBAUMLAW.COM
WWW.GREENBAUMLAW.COM

OF COUNSEL

ROBERT S. GREENBAUM     ARTHUR M. GREENBAUM
                        FRANKLIN M. SACHS
                        J. WARREN WOOD III

COUNSEL

CHRISTINE F. MARKS      HOWARD B. HANDER
ROBERT S. UNDERHILL     LORA L. FONG
STEVEN FIRKSER          JODI L. ROSENBERG
ALLEN V. BROWN          MICHELE GIBSON

ROSEMARY CULCASI        JEFFREY A. SIROT
ERIC H. MELZER          MICHAEL A. GOROKHOVICH
MARINA SOLO             LISA J. CLAPP
ROBERT BECKELMAN        GREGG H. HILZER
MAJA M. OBRADOVIC       LISA B. DIPASQUA
JANE J. FELTON          MEGHAN O. MURRAY
STACEY R. COHEN         ERNEST E. D'ANGELO
MICHAEL A. KLEIN        JORDAN A. STERN
DEAN E. LOVENTHAL       CATHLENE Y BANKER
SENWAN AKHTAR           LAURA M. BILOTTA
BRYAN D. PLOCKER        JAMIE A. YONKS
DAVID T. SHIVAS         JEANETTE TANNER
DAVID S. SCHECHTER      MICHAEL G. D'ALBA
ADAM B. KAPLAN          BLAKELY D. FISHLIN
JESSICA F. BATTAGLIA    KATIE M. HOLDEN
JEMI M. GOULIAN         JULIE KUSHNER
JOHN B. NANCE           CHRISTOPHER J. LEDOUX
MICHELLE M. SEKOWSKI    CATHERINE S. SHIMSKY

Y TO:
*Woodbridge*

April 4, 2007

## VIA CERTIFIED MAIL – R.R.R. – 70062760000150780601 AND REGULAR MAIL

Claims Department
American Home Assurance Company
AIG Claim Services, Inc.
70 Pine Street, 21st Floor
New York, NY 10270

Re:   ***Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.***
       ***American Arbitration Association, 18 459 01071 06***

Dear Sir/Madam:

This will follow-up on my letter to American Home Assurance Company dated March 14, 2007 requesting insurance coverage for the claims filed by Bristol-Myers Squibb Company against Somerville Fidelco Associates, L.P. in the referenced matter. Please be advised that the Arbitration in this matter filed by Bristol-Myers Squibb Company against Somerville Fidelco Associates, L.P. is scheduled to begin on <u>April 17, 2007</u>.

On behalf of Somerville Fidelco Associates, L.P., we repeat our request for insurance coverage, including defense and indemnification, for these claims. Please be advised that the insureds are under the reasonable expectation that coverage applies.

GREENBAUM, ROWE, SMITH & DAVIS LLP

Claims Department
American Home Assurance Company
April 4, 2007
Page 2

We look forward to receipt of a favorable coverage decision.  In the interim, we continue to reserve all rights under the insurance policies and New Jersey law.

Thank you for your courtesies in this matter.

Very truly yours,

Ellen A. Silver

EAS/sjg

# EXHIBIT 47

# GREENBAUM, ROWE, SMITH & DAVIS LLP

PAUL A. ROWE
WENDELL A. SMITH
ALAN E. DAVIS
DAVID L. BRUCK
MICHAEL A. BACKER
MARTIN E. DOLLINGER
DEAN A. GAVER
ROBERT C. SCHACHTER
MARTIN L. LEPELSTAT
DENNIS A. ESTIS
WILLIAM D. GRAND
RAYMOND M. BROWN
ALAN S. NAAR
STEPHEN H. KNEE
ROBERT M. GOODMAN
DOUGLAS K. WOLFSON
MARK H. SOBEL
HAL W. MANDEL
BARRY S. GOODMAN
LAWRENCE P. MAHER
THOMAS J. DENITZIO, JR.
ROBERT S. GOLDSMITH
JOHN D. NORTH
KENNETH T. BILLS
THOMAS C. SENTER
MARGARET GOODZEIT
W. RAYMOND FELTON
CHRISTINE F. LI
MERYL A. G. GONCHAR

MICHAEL K. FEINBERG
CARLTON T. SPILLER
JOSEPH M. ORIOLO
ARON M. SCHWARTZ
SABRINA A. KOGEL
JACQUELINE M. PRINTZ
STEVEN C. DELINKO
DAVID A. ROTH
GARY K. WOLINETZ
KEVIN T. MCNAMARA
RICHARD I. HERTZBERG
ELLEN A. SILVER
ANDREA J. SULLIVAN
MARC D. POLICASTRO
MARC J. GROSS
LUKE J. KEALY
C. BRIAN KORNBREK
CIPORA S. WINTERS
GALIT KIERKUT
BRIAN R. SELVIN
PETER D. CRAWFORD, JR.
EMILY A. KALLER
ARREN S. GOLDMAN
DARREN C. BARREIRO
OLIVIER SALVAGNO
STEVEN NUDELMAN
DINA M. VANIDES
HANY A. MAWLA

COUNSELORS AT LAW

METRO CORPORATE CAMPUS ONE
P.O. BOX 5600
WOODBRIDGE, N. J. 07095-0988
(732) 549-5600
FAX (732) 549-1881

DELIVERY ADDRESS:
99 WOOD AVE. SOUTH
ISELIN, NEW JERSEY 08830-2712

———

75 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068-3701
(973) 535-1600
FAX (973) 535-1698

———

EMAIL: INFO@GREENBAUMLAW.COM
WWW.GREENBAUMLAW.COM

OF COUNSEL
ROBERT S. GREENBAUM    ARTHUR M. GREENBAUM
                        FRANKLIN M. SACHS
                        J. WARREN WOOD III

COUNSEL

CHRISTINE F. MARKS      HOWARD B. HANDER
ROBERT S. UNDERHILL     LORA L. FONG
STEVEN FIRKSER          JODI L. ROSENBERG
ALLEN V. BROWN          MICHELE GIBSON

ROSEMARY CULCASI        JEFFREY A. SIROT
ERIC H. MELZER          MICHAEL A. GOROKHOVICH
MARINA SOLO             LISA J. CLAPP
ROBERT BECKELMAN        GREGG H. HILZER
MAJA M. OBRADOVIC       LISA B. DIPASQUA
JANE J. FELTON          MEGHAN O. MURRAY
STACEY R. COHEN         ERNEST E. D'ANGELO
MICHAEL A. KLEIN        JORDAN A. STERN
DEAN E. LOVENTHAL       CATHLENE Y. BANKER
SENWAN AKHTAR           LAURA M. BILOTTA
BRYAN D. PLOCKER        JAMIE A. YONKS
DAVID T. SHIVAS         JEANETTE TANNER
DAVID S. SCHECHTER      MICHAEL G. D'ALBA
ADAM B. KAPLAN          BLAKELY D. FISHLIN
JESSICA F. BATTAGLIA    KATIE M. HOLDEN
JEMI M. GOULIAN         JULIE KUSHNER
JOHN B. NANCE           CHRISTOPHER J. LEDOUX
MICHELLE M. SEKOWSKI    CATHERINE S. SHIMSKY

WM. L. GREENBAUM (1914-1983)
ALLEN RAVIN (1957-1997)

REPLY TO:   *Woodbridge*

*** Privileged and Confidential ***
*** Settlement Communication ***

April 26, 2007

## VIA TELECOPY AND REGULAR MAIL

Claims Department
American Home Assurance Company
AIG Claim Services, Inc.
70 Pine Street, 21st Floor
New York, NY  10270

    Re:    ***Bristol-Myers Squibb Company v. Somerville Fidelco Associates, L.P.***
             **American Arbitration Association, 18 459 01071 06**

Dear Sir/Madam:

      This will follow-up on my voice mail message from this morning, and my letters dated April 4, 2007 and March 14, 2007 on behalf of your insured Somerville Fidelco Associates L.P. ("Somerville Fidelco") regarding our request for insurance coverage, including defense and indemnification, for the claims in the Arbitration proceeding filed by Bristol-Myers Squibb Company ("Bristol-Myers") against Somerville Fidelco in the referenced matter.

      *This letter is provided to assist in the defense of the insured and as such is privileged and confidential.  This letter shall not be used by the insurer for any other purpose and shall not be disclosed to any other person.*

      We previously advised that the Arbitration proceeding was scheduled to commence on April 17, 2007.  The date was adjourned until April 26, 2007.  Yesterday evening, before commencing the Arbitration, Bristol-Myers and Somerville Fidelco agreed in principle to a settlement of all claims in the matter, subject to approval of the settlement and preparation and

GREENBAUM, ROWE, SMITH & DAVIS LLP

Claims Department                                    ** *Privileged and Confidential* **
American Home Assurance Company                      ** *Settlement Communication* **
April 26, 2007
Page 2

approval of the settlement documents.  The insured Somerville Fidelco believes that this settlement is a favorable settlement, avoids the risks and costs of the continuing Arbitration and is in the best interest of the insured and its insurer.

This letter will confirm that American Home Assurance Company agrees that the settlement between the Bristol-Myers and Somerville Fidelco will not prejudice Somerville Fidelco's claims against the insurance policies issued by American Home Assurance Company or its affiliated and related companies with regard to the claims in the referenced matter.  This also will confirm that the insurer will not claim that the settlement is in violation of the terms of the insurance policy.

If we do not hear from you by the close of business on Friday, April 27, 2007, we will trust that the insurer has no objection to the settlement and agrees with this letter, so that our office will proceed in preparing and finalizing the settlement and the settlement documents.

On behalf of Somerville Fidelco, we continue to reserve, and specifically preserve all rights, and claims against the insurer for reimbursement of all defense costs and the settlement amount under the insurance policies and New Jersey law.

If you have any questions, please call me immediately.

Very truly yours,

Ellen A. Silver

EAS/sjg

# MESSAGE CONFIRMATION

04/26/2007  16:51
ID=GREENBAUM

| DATE | S.R-TIME | DISTANT STATION ID | MODE | PAGES | RESULT | S.C. |
|------|----------|--------------------|------|-------|--------|------|
| 04/26 | 00'30" | 2124585860 | TX | 003 | OK | 0000 |

04/26/2007    16:50    GREENBAUM → 12124585860                    NO.910    ☐001

## GREENBAUM, ROWE, SMITH & DAVIS LLP

### COUNSELLORS AT LAW

METRO CORPORATE CAMPUS ONE
P.O. BOX 5600
WOODBRIDGE, N.J. 07095-0988
(732) 549-5600
FAX (732) 549-1881

DELIVERY ADDRESS:
99 WOOD AVE. SOUTH
ISELIN, NEW JERSEY 08830-2712

75 LIVINGSTON AVENUE
ROSELAND, NEW JERSEY 07068-3701
(973) 535-1600
FAX (973) 535-1698

EMAIL: INFO@GREENBAUMLAW.COM
WWW.GREENBAUMLAW.COM

**DATE:**      April 26, 2007

## PLEASE DELIVER IMMEDIATELY TO:

**NAME:**            **CLAIMS DEPARTMENT**
**FIRM:**            **AMERICAN HOME ASSURANCE COMPANY**
                     **(AIG CLAIM SERVICES, INC.)**
**FAX NUMBER:**      **1-212-458-5860**
**TELEPHONE NUMBER:** **1-877-638-4244**

**CLIENT/MATTER NUM.** **01798-008 (S-K/BMS)**
**FROM:**            **ELLEN A. SILVER, ESQ.**
**MESSAGE:**

**Total number of pages including cover page:**    **3**

If you do not receive all the pages or there is a malfunction, please call (732) 549-5600 ext. 5010 as soon as possible.

Fax numbers:      (732) 549-1881, (732) 549-5733 or (732) 549-0315

**Confidentiality Notice**

The information contained in this facsimile message is confidential and may be privileged pursuant to the attorney-client and/or work product privilege.  This information is intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or copy of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via the U.S. Postal Service.  Thank you.

# GREENBAUM, ROWE, SMITH & DAVIS LLP

### COUNSELLORS AT LAW

**METRO CORPORATE CAMPUS ONE**
**P.O. BOX 5600**
**WOODBRIDGE, N.J. 07095-0988**
**(732) 549-5600**
**FAX (732) 549-1881**

**DELIVERY ADDRESS:**
**99 WOOD AVE. SOUTH**
**ISELIN, NEW JERSEY 08830-2712**

---

**75 LIVINGSTON AVENUE**
**ROSELAND, NEW JERSEY 07068-3701**
**(973) 535-1600**
**FAX (973) 535-1698**

---

**EMAIL: INFO@GREENBAUMLAW.COM**
**WWW.GREENBAUMLAW.COM**

---

**DATE:**      **April 26, 2007**

---

## PLEASE DELIVER IMMEDIATELY TO:

**NAME:**                    **CLAIMS DEPARTMENT**

**FIRM:**                    **AMERICAN HOME ASSURANCE COMPANY**
                             **(AIG CLAIM SERVICES, INC.)**

**FAX NUMBER:**              **1-212-458-5860**

**TELEPHONE NUMBER:**        **1-877-638-4244**

**CLIENT/MATTER NUM.**       **01798-008 (S-K/BMS)**

**FROM:**                    **ELLEN A. SILVER, ESQ.**

**MESSAGE:**

---

**Total number of pages including cover page:**      **3**

If you do not receive all the pages or there is a malfunction, please call (732) 549-5600 ext. 5010 as soon as possible.

Fax numbers:       (732) 549-1881, (732) 549-5733 or (732) 549-0315

---

**Confidentiality Notice**

The information contained in this facsimile message is confidential and may be privileged pursuant to the attorney-client and/or work product privilege.  This information is intended only for the use of the individual or entity named above.  **If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or copy of this communication is strictly prohibited.**  If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via the U.S. Postal Service.  Thank you.

# EXHIBIT 48

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (this "Agreement") is made as of this *15 ᵗʰ* day of May, 2007, by and between Bristol-Myers Squibb Company, with an address at Province Line Road and Route 206, Lawrenceville, New Jersey ("BMS") and Somerville Fidelco Associates, LP, with an address of 520 U.S. Highway 22 East, P.O. Box 6872, Bridgewater, New Jersey ("SFA") (collectively "the Parties").

### BACKGROUND:

**WHEREAS,** the Parties desire to settle all claims asserted in the arbitration proceeding captioned as <u>Bristol-Myers Squibb Company v. Somerville Fidelco Associates, LP</u>, AAA Case No.: 18 115 Y 01071 06, ("the Arbitration") for the consideration and on the terms and conditions hereinafter set forth.

### WITNESSETH:

**NOW THEREFORE,** in consideration of the promises and the mutual conditions herein contained, and intending to be legally bound hereby, the Parties, through their undersigned representatives who certify that the are fully authorized to execute and legally bind the Parties to this Agreement, agree to settle all claims in the Arbitration in accordance with the following terms and conditions:

1. **Settlement Payment:**

    a)    SFA agrees to make payment to BMS in the amount of five hundred and seventy five thousand dollars ($575,000.00) ("Payment");

    b)    The Parties agree to adjourn the Arbitration until May 18, 2007;

    c)    SFA agrees to make Payment, in full, to BMS on or before May 18, 2007;

    d)    Upon receipt of Payment, in full, by BMS on or before May 18, 2007, the Parties agree to dismiss all claims as set forth within the Arbitration;

    e)    Upon receipt of Payment, in full, by BMS on or before May 18, 2007, the Parties agree to execute releases on the form set forth on Exhibits A and B attached hereto mutually releasing SFA and BMS from all claims asserted in the Arbitration; and,

    f)    In the event that SFA fails to make Payment, in full, to BMS on or before May 18, 2007, the Parties agree that the Arbitration will proceed as scheduled on May 18, 2007 and, with the exception of this clause (1(f)), this Agreement shall otherwise become null and void.

2.      **Successors in Interest.**  All provisions of this Agreement are binding upon and shall inure to the benefit of, and are enforceable by and against, the successors and assigns of each Party hereto.

3.      **Governing Law.**  The terms and conditions of this Agreement shall be construed and controlled in accordance with the laws of the State of New Jersey.

4.      **Entire Agreement.**  This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and no statement or representation of any Party, their agents or employees, shall form any part hereof or be binding upon the other Party.  This Agreement shall not be changed or modified except by written instrument signed by the Parties hereto.

5.      **No Admission.**  This Agreement is not, and shall not be construed as or deemed to be evidence of, an admission on the part of either party of any liability or wrongdoing whatsoever or the truth of the allegations or claims filed in the Arbitration, or an admission of any lack of merit of the defenses asserted in the Arbitration.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year first written above.

BRISTOL-MYERS SQUIBB COMPANY

By: _James K. Harbaugh_____

Print/Type Name:  James. K. Harbaugh_____

Print/Type Title:  Sr. Director, Corporate Real Estate


SOMERVILLE FIDELCO ASSOCIATES, LP

By:    SF Realty Corp.
       General Partner


       _____
       Murray Kushner, V.P.

2 of 2

2.  **Successors in Interest.**  All provisions of this Agreement are binding upon and shall inure to the benefit of, and are enforceable by and against, the successors and assigns of each Party hereto.

3.  **Governing Law.**  The terms and conditions of this Agreement shall be construed and controlled in accordance with the laws of the State of New Jersey.

4.  **Entire Agreement.**  This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and no statement or representation of any Party, their agents or employees, shall form any part hereof or be binding upon the other Party.  This Agreement shall not be changed or modified except by written instrument signed by the Parties hereto.

5.  **No Admission.**  This Agreement is not, and shall not be construed as or deemed to be evidence of, an admission on the part of either party of any liability or wrongdoing whatsoever or the truth of the allegations or claims filed in the Arbitration, or an admission of any lack of merit of the defenses asserted in the Arbitration.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year first written above.

BRISTOL-MYERS SQUIBB COMPANY

By:_____

Print/Type Name: _____

Print/Type Title:_____


SOMERVILLE FIDELCO ASSOCIATES, LP

By:    SF Realty Corp.
       General Partner

       _____
       Murray Kushner, V.P.

## EXHIBIT A

## RELEASE

THIS RELEASE, dated May _15_, 2007 is given by Bristol-Myers Squibb Company, with an address at Province Line Road and Route 206, Lawrenceville, New Jersey (hereinafter the "Releasor") to Somerville Fidelco Associates, LP (hereinafter the "Releasee").

1.  <u>Preliminary Statement</u>.  The Releasor is the sole tenant in a commercial building owned by Releasee located at 76 Fourth Street in Somerville, New Jersey.  Releasor asserted a claim against Releasee for damages sustained when the roof on the building was replaced.  This claim was the subject of an arbitration proceeding captioned as <u>Bristol Myers Squibb Company v. Somerville Fidelco Associates, LP</u>, AAA Case No.: 18 115 Y 01071 06, ("the Arbitration").  Releasor and Releasee have negotiated a settlement of the Arbitration as specifically set forth in a Settlement Agreement between the parties dated as of May _____, 2007 (the "Settlement Agreement").  Pursuant to such Settlement Agreement the Releasee has paid the sum of $575,000 (the "Settlement Sum") to the Releasor in full settlement and satisfaction of any claims which were asserted, or which could have been asserted, in the Arbitration.

2.  <u>Release</u>.  For valuable consideration, including, without limitation, payment of the Settlement Sum and the mutual promises set forth in the Settlement Agreement, the Releasor hereby releases and forever discharges the Releasee, together with its past, present and future agents, representatives, partners, employees, affiliates, attorneys, successors and assigns, from any and all claims, liabilities, obligations, actions, causes of action, agreements, promises, losses, damages, costs or expenses, including, without limitation, attorney's fees and costs, of any nature or character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at

law or equity, fixed or contingent, which the Releasor has asserted, or could have asserted, in the Arbitration.

3. _Warranties_. The Releasor represents and warrants that (i) this Release has been duly authorized and executed pursuant to all requisite corporate action, and (ii) Releasor is executing and delivering this Release voluntarily after having the opportunity to consult independent legal counsel.

4. _Indemnity_. The Releasor hereby agrees to indemnify, defend and hold the Releasee harmless from and against any and all liabilities, claims, demands, losses, damages, costs, expenses (including attorney's fees and expenses), and actions or causes of action arising out of or relating to any breach of this Release.

5. _Binding Effect_. This Release is binding upon the Releasor as well as its successors and assigns.

IN WITNESS WHEREOF, the Releasor has caused this Release to be executed by its authorized officers.

BRISTOL-MYERS SQUIBB COMPANY


By: _James K. Harbaugh_

Print/Type Name: _James K. Harbaugh_

Print/Type Title: _Sr. Director, Corporate Real Estate_

## **RELEASE**

THIS RELEASE, dated May _____, 2007 is given by Somerville Fidelco Associates, LP, with an address at 520 U.S. Highway 22 East, P.O. Box 6872, Bridgewater, New Jersey (hereinafter the "Releasor") to Bristol-Myers Squibb Company (hereinafter the "Releasee").

1.    Preliminary Statement.  The Releasee is the sole tenant in a commercial building owned by Releasor located at 76 Fourth Street in Somerville, New Jersey.  Releasee asserted a claim against Releasor for damages sustained when the roof on the building was replaced.  This claim was the subject of an arbitration proceeding captioned as Bristol Myers Squibb Company v. Somerville Fidelco Associates, LP, AAA Case No.: 18 115 Y 01071 06, ("the Arbitration"). Releasor and Releasee have negotiated a settlement of the Arbitration as specifically set forth in a Settlement Agreement between the parties dated as of May _____, 2007 (the "Settlement Agreement").   Pursuant to such Settlement Agreement the Releasor has paid the sum of $575,000 (the "Settlement Sum") to the Releasee in full settlement and satisfaction of any claims which were asserted, or which could have been asserted, in the Arbitration.

2.    Release.  For valuable consideration, including, without limitation, the mutual promises set forth in the Settlement Agreement, the Releasor hereby releases and forever discharges the Releasee, together with its past, present and future agents, representatives, officers, directors, employees, affiliates, attorneys, successors and assigns, from any and all claims, liabilities, obligations, actions, causes of action, agreements, promises, losses, damages, costs or expenses, including, without limitation, attorney's fees and costs, of any nature or character whatsoever, known or unknown, suspected or unsuspected, in contract or in tort, at law or equity, fixed or contingent, which the Releasor has asserted, or could have asserted, in the Arbitration.

3.    Warranties.  The Releasor represents and warrants that (i) this Release has been duly authorized and executed pursuant to all requisite limited partnership action, and (ii) Releasor is executing and delivering this Release voluntarily after having the opportunity to consult independent legal counsel.

4.    Indemnity.  The Releasor hereby agrees to indemnify, defend and hold the Releasee harmless from and against any and all liabilities, claims, demands, losses, damages, costs, expenses (including attorney's fees and expenses), and actions or causes of action arising out of or relating to any breach of this Release.

5.    Binding Effect.  This Release is binding upon the Releasor as well as its respective successors and assigns.

IN WITNESS WHEREOF, the Releasor has caused this Release to be executed by its authorized general partner.

SOMERVILLE FIDELCO ASSOCIATES, LP


By:    SF Realty Corp.
       General Partner

       _____
       Murray Kushner, V.P.

SCHENKMAN/KUSHNER
AFFILIATES, INC.
P.O. BOX 6872
BRIDGEWATER        NJ 08807

FLEET BANK
62650 COMMERCIAL REAL EST
SOUTH PLAINFIELD, NJ 0708

55-33/212
CHECK NO.  71366

DATE  05/15/07

AMOUNT  $***575,000.00

PAY EXACTLY        FIVE HUNDRED SEVENTY FIVE THOUSAND DOLLARS AND NO CENTS

PAY
TO
THE
ORDER
OF

BRISTOL-MYERS SQUIBB CO.
ROUTE 206
PROVINCELINE ROAD
PRINCETON          NJ 08543

AUTHORIZED SIGNATURE

⑈071366⑈  ⑆021200339⑆  8163098858⑈

# EXHIBIT 49



# Bristol-Myers Squibb Company

PO Box 4500.
Princeton, NJ  08543–4500

SENT VIA FED EX

November 11, 2005

Mr. Eugene Schenkman
Somerville Fidelco Associates, L. P.
520 US Highway 22
PO Box 6872
Bridgewater, NJ  08807

RE:   76 Fouth Street
       Somerville, New Jersey

Dear Mr. Schenkman:

We have received your letter dated November 4, 2005 are are a bit confused.  BMS has tried to work cooperatively with representatives of Somerville Fidelco Associates, L. P. ("SFA"), so that our mutual interests could be satisfactorily addressed; SFA's repair of the leaking roof and BMS's continued occupation of the leasehold for the intended purpose.  While BMS is concerned with the delay to repair the roof, we would hope that SFA is interested in assuring that the roof is repaired in compliance with all applicable legal requirements.

Your letter includes several inaccuracies that BMS must address for the record:

- On or about September 26 or 27th, BMS provided to SFA the bulk sample results of the materials that fell inside the building during SFA's initial roof removal activities.  These sample results showed that the materials contained asbestos and were from the exterior of the building.  Furthermore, subsequent to supplying SFA with the bulk samples, core sampling -- which SFA actively participated in and has copies of sampling results -- also showed that the roof materials contained asbestos.

- SFA is not receiving conflicting directives from the tenant.  SFA sent a contractor, TuffWrap, to the BMS leasehold to evaluate the potential of installing plastic in the underside of the roof to capture any dust and/or asbestos containing materials from the roof removal.  BMS understands that SFA believes that BMS told Tuff Wrap that the building was "dirty" and that BMS could not guarantee the cleanliness of the current operation.  This simply is not true.  I informed Jeff Persky last Friday, November 4, 2005, that this comment came directly from TuffWrap after consultation with their own counsel.

- BMS has not indicated its responsibility to clean the building.  BMS is reserving all of its rights as related to the adverse impacts, including costs and expenses, that have resulted from the debris and dust that is in the interior of the leasehold, which is affecting BMS's ability to use the leasehold for the purpose for which it was intended.  BMS and SFA have not even started the discussions on the clean up of the interior of the building.  BMS and SFA have been concentrating on getting the roof repair completed in accordance with all environmental and safety requirements.



EXHIBIT
112

BMS00015

- BMS is most perplexed about SFA's indication in the letter that it would be starting work during the week of November 7. Representatives of SFA agreed that they would not start any work on the roof until we were all in agreement with the process moving forward. We understand from discussions with Jeff Persky that SFA will continue to abide by that agreement. Please advise me immediately if this is not the case.

BMS appreciates that SFA has provided BMS with a copy of the "Procedure for the Removal of Roofing" that will be followed as well as the Safety Operation Procedures Handbook of Slaveo Construction., Inc., the company that we understand will be performing the roof removal and repair. BMS has been requesting information concerning the roof removal procedures for several weeks. Upon BMS's completion of its review of these documents, BMS would like to meet with the appropriate representatives of SFA to establish a mutually acceptable plan to expeditiously ad appropriately move forward in compliance with all applicable laws and regulations.

Please advise me of your availability to meet early next week.

Sincerely yours,

Robert Papa

cc:   David Kahan, Esquire
      Mr. James Harbaugh
      Mr. Bruce Mayer
      Mr. John Chapman
      Ms. Mary Beth Koza
      Ms. Barbara Owen
      J. Richard Pooler, Esq.
      Mr. Anton Lemli

BMS00016