IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY<br><br>Plaintiff<br><br>vs.<br><br>SOMERVILLE FIDELCO ASSOCIATES, L.P., AND BADGER ROOFING CO., INC.<br><br>Defendants<br><br>and<br><br>SOMERVILLE FEDELCO ASSOCIATES, L.P.<br><br>Third-Party Plaintiffs<br><br>vs.<br><br>QUINCY MUTUAL FIRE INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY<br><br>Third-Party Defendants | UNITED STATES DISTRICT COURT FOR DISTRICT OF NEW JERSEY<br>TRENTON COUNTY<br>LAW DIVISION<br><br>DOCKET NO. 07-CV-02763<br><br>CIVIL ACTION<br><br><br>*MOTION RETURN DATE: TBD*<br><br><br><br>*MOVANT REQUESTS ORAL ARGUMENT* |

***PLAINTIFF'S REPLY BRIEF TO BADGER ROOFING'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT***

Jay A. Gebauer
Quinn M. McCusker
On the Brief

## *TABLE OF CONTENTS*

POINT I: THE ASBESTOS EXCLUSION IS APPLICABLE AND ENFORCEABLE.. 1

    A.    Asbestos was Discovered in the Facility on Numerous Occasions............... 1
    B.    The Clear Language of the Asbestos Exclusion Precludes Coverage to Badger as BMS's Damages Arose Specifically From Asbestos Contamination and Abatement................................................... 2

POINT II: SF DOES NOT HAVE A NEGLIGENCE CAUSE OF ACTION AGAINST BADGER SINCE IT WAS NOT INDEPENDENTLY DAMAGED AND ITS DAMAGES STEM SOLELY FROM A CONTRACTUAL OBLIGATION TO REIMBURSE BMS... 3

CONCLUSION............................................................................. 4

## POINT I

### THE ASBESTOS EXCLUSION IS APPLICABLE AND ENFORCEABLE

**A.**    *Asbestos was Discovered in the Facility on Numerous Occasions*

It is undisputed that asbestos was found inside the building. Contrary to Badger's opposition, however, the positive findings for asbestos were not limited to samples taken from the roofing material itself. It is undisputed that asbestos was found in bulk, wipe and air samples on numerous occasions from September of 2005 through March of 2006.

"Bulk Samples of roof material at the Somerville facility were gathered in September 2005 from a limited area of the *interior* of the facility. The bulk samples tested positive for a percentage of asbestos." (SF's Brief, Exhibit 11)(emphasis added). In fact, asbestos-containing material was initially found in two separate areas of the facility; the loading dock and the storage room. (SF's Brief, Exhibit 11).

Additionally and significantly, in September of 2005, wipe samples from the top of a refrigerator near the break room and the top shelf above employees' desks also tested positive for asbestos. (Exhibit A – ATTACHED HERETO).

Thereafter, an air sample from inside animal room #11 tested positive for asbestos. (Exhibit A – ATTACHED HERETO).

Moreover, Chrysotile asbestos was detected in air samples taken on February 7, February 16 and March 1, 2006 (2 positive results). (Exhibit A – ATTACHED HERETO). The "Sampling Data" included in the arbitration file indicated that the February 6, 2006 positive test was an air sample taken in the "Hallway o/s boiler room", the February 15, 2006 positive test was from an air sample taken in the "Animal room 5-9 corridor" and the March 1, 2006 finding included two positive tests from an air samples taken 1) "Hallway o/s boiler room"; and 2) "Hallway o/s lunch room." (Exhibit A – ATTACHED HERETO).

Badger's assertion that there was no asbestos found inside the Facility other than the bulk samples is wrong. Overall, from September of 2005 through March of 2006, multiple tests were positive for asbestos on numerous occasions. These positive tests were from bulk material, wipe samples and air tests. (Exhibit A – ATTACHED HERETO).

**B.   The Clear Language[1] of the Asbestos Exclusion Precludes Coverage to Badger as BMS's Damages Arose Specifically From Asbestos Contamination and Abatement.**

Although Badger repeatedly asserts that BMS's claim against SF did not arise out of removal of asbestos from a structure, this contention is wrong. You need look no further than the positive tests outlined above to find that there was continuing, repeated asbestos contamination. (*See* Exhibit A – ATTACHED HERETO). Moreover, BMS repeatedly contended that its damages arose because of asbestos contamination. (Exhibit T, Exhibit 3[2], Exhibit 4 and Exhibit 5).

---

[1] The coverage afforded by this policy does not apply to bodily injury, personal injury or property damage arising out of:

3.   the removal of asbestos from any good, product or structure; or

4.   the manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

[2] The March 29, 2007 letter from BMS's counsel to the mediator contains the following introductory language: "The subject matter of this arbitration is an asbestos incident that occurred at 76 Fourth Street in Somerville, New Jersey…" (Exhibit 3, p. 1 of the March 29, 2007 letter). The letter goes on: "As a result of Badger's roof removal activities, dust and debris containing asbestos materials infiltrated the Somerville Facility through gaps in the roof decking." (Exhibit 3, p. 2 of the March 29, 2007 letter). As one final example, the letter goes on: "The asbestos infiltration at the Somerville Facility adversely affected BMS in a number of respects. First and foremost, BMS was concerned about human exposure to asbestos dust and fibers…Second, BMS was concerned about the monkeys' potential exposure to asbestos dust…Third, BMS had to address the continuation of the roofing job…[BMS insisted SF retain] an asbestos removal company…and develop[] a protocol to appropriately complete the roof removal…Fourth, BMS had to address the asbestos contamination of the facility…Fifth, BMS had to address the impact that the asbestos contamination had on its operations." (Exhibit 3, p. 3 of the March 29, 2007 letter).

- 2 -

It is entirely inaccurate to say that BMS's damages were limited to the cleanup and removal of dust and other materials which did not contain asbestos. When viewed as a whole, every action taken, from SF retaining Slavco, to BMS hiring Eagle to test for asbestos and Bristol to perform an asbestos abatement, shows that the project was handled as an asbestos contamination and abatement.

Such damages fall within paragraphs 3. and 4. of the asbestos exclusion – damages arising from "the removal of asbestos from any good product or structure" and/or the "disposal of asbestos or goods or products containing asbestos." (Exhibit A, Exhibit E). Clearly the asbestos exclusion applies and no coverage is available.

## POINT II

### SF DOES NOT HAVE A NEGLIGENCE CAUSE OF ACTION AGAINST BADGER SINCE IT WAS NOT INDEPENDENTLY DAMAGED AND ITS DAMAGES STEM SOLELY FROM A CONTRACTUAL OBLIGATION TO REIMBURSE BMS

SF was not damaged by Badger's negligence. BMS was damaged by Badger's negligence[3]. SF suffered no damages independent of its contractual obligation to reimburse BMS pursuant to the terms of the lease. (Exhibit 3)(SF's Brief, Exhibit 1)[4]. That is, SF did not

---

[3] SF essentially admits this in its cross claim against Badger. (Exhibit 8). The cross claim states: "As a direct result of Badger's breach of its agreement with [SF], [BMS] was required to perform a comprehensive cleanup at the Premises, incurred extraordinary expenses for security and personal protection equipment and had to pay alternative storage costs for its tests monkeys." (Exhibit 8, p. 17, ¶ 113). The cross claim also states: "The negligent and careless conduct of Badger was the direct and proximate cause of costs incurred by [BMS] to perform a comprehensive cleanup of the Premises, and incur expenses for additional security, personal protection equipment and alternative storage facilities for test monkeys." (Exhibit 8, p. 17, ¶ 113).

[4] The lease contained the following provisions:
¶ 5.1 Landlord [SF] shall make the necessary structural repairs to the roof…Except for the [roof repairs]…,Tenant [BMS] shall be responsible for all maintenance and repairs of and to the premises…
¶ 11.4 The Landlord agrees to do all such work at all reasonable times during usual business hours and in connection with the doing of any such work to cause as little inconvenience, annoyance, disturbance, loss of business or other damage to the

- 3 -

have to pay to refurbish the Facility. (Exhibit 5). SF did not pay Eagle or Bristol to conduct asbestos testing and asbestos abatement. (Exhibit 5). It was not SF's monkeys that were "boarded". (Exhibit 5). SF's business was not interrupted. (Exhibit 5). All of these damages are distinctly and solely attributable to BMS.

But for the existence of this lease, and specifically ¶5.1 and ¶11.4, BMS's claim would have been against Badger, not SF. Clearly, SF's damages arise solely from a breach of contract and are properly excluded from coverage.

## CONCLUSION

For the reasons contained in Scottsdale's moving papers, as well as for the reasons outlined above, Scottsdale requests that Summary Judgment be granted in its favor.

Respectfully submitted,

Date: January 11, 2010

Jay A. Gebauer
POST & SCHELL, P.C.
Overlook Center 2nd Floor
100 Overlook Drive
Princeton, NJ  08540
Attorney for Plaintiff, Scottsdale

---

Tenant as may reasonably be possible in the circumstances, and in the event the Landlord shall cause any damages to Tenant's property or *if damage caused by Landlord's....contractor's negligence, Landlord shall be liable for the damage.* (Emphasis added).

- 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY<br><br>Plaintiff<br><br>vs.<br><br>SOMERVILLE FIDELCO ASSOCIATES, L.P., AND BADGER ROOFING CO., INC.<br><br>Defendants<br><br>and<br><br>SOMERVILLE FEDELCO ASSOCIATES, L.P.<br><br>Third-Party Plaintiffs<br><br>vs.<br><br>QUINCY MUTUAL FIRE INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY<br><br>Third-Party Defendants | UNITED STATES DISTRICT COURT FOR DISTRICT OF NEW JERSEY<br>TRENTON COUNTY<br>LAW DIVISION<br><br>DOCKET NO. 07-CV-02763<br><br>CIVIL ACTION<br><br><br>*MOTION RETURNABLE:*<br>*TBD*<br><br><br><br>*MOVANT REQUESTS ORAL ARGUMENT* |

***REPLY TO BADGER ROOFING'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT***

**RESPONSE TO BADGER ROOFING'S ADDITIONAL STATEMENT OF MATERIAL FACTS**

Jay A. Gebauer
Quinn M. McCusker
On the Brief

*Note: In order to avoid confusion, all references to exhibits attached to SF's brief will contain the following: "SF's Brief, Exhibit __". All other citations to exhibits refer specifically to Scottsdale's exhibits.*

1. Undisputed.

2. Disputed. "Bulk Samples of roof material at the Somerville facility were gathered in September 2005 from a limited area of the *interior* of the facility. The bulk samples tested positive for a percentage of asbestos." (SF's Brief, Exhibit 11)(emphasis added). In fact, asbestos-containing material was initially found in two separate areas of the facility; the loading dock and the storage room. (SF's Brief, Exhibit 11). This was confirmed by Eagle's reports. (Exhibit V).

3. Disputed. Overall, from September of 2005 through March of 2006, multiple tests were positive for asbestos on numerous occasions. These positive tests were from bulk material, wipe samples and air tests. (Exhibit A – ATTACHED HERETO). "Bulk Samples of roof material at the Somerville facility were gathered in September 2005 from a limited area of the *interior* of the facility. The bulk samples tested positive for a percentage of asbestos." (SF's Brief, Exhibit 11)(emphasis added). In fact, asbestos-containing material was initially found in two separate areas of the facility; the loading dock and the storage room. (SF's Brief, Exhibit 11). This was confirmed by Eagle's reports. (Exhibit V).

Additionally and significantly, in September of 2005, wipe samples from the top of a refrigerator near the break room and the top shelf above employees' desks also tested positive for asbestos. (Exhibit A – ATTACHED HERETO).

Thereafter, an air sample from inside animal room #11 tested positive for asbestos. (Exhibit A – ATTACHED HERETO).

- 2 -

Moreover, Chrysotile asbestos was detected in air samples taken on February 7, February 16 and March 1, 2006 (2 positive results). (Exhibit A – ATTACHED HERETO). The "Sampling Data" included in the arbitration file indicated that the February 6, 2006 positive test was an air sample taken in the "Hallway o/s boiler room", the February 15, 2006 positive test was from an air sample taken in the "Animal room 5-9 corridor" and the March 1, 2006 finding included two positive tests from an air samples taken 1) "Hallway o/s boiler room"; and 2) "Hallway o/s lunch room." (Exhibit A – ATTACHED HERETO).

4. Undisputed as to Ms. Owen's testimony. Disputed as to Ms. Owen's conclusion. (See ¶ 3, *supra*).

5. Undisputed as to Ms. Owen's testimony. Disputed as to Ms. Owen's conclusion. (*See* BMS's Arbitration Statement, Exhibit 3[1]).

6. Undisputed. However, See ¶ 3, *supra*.

7. Undisputed. However, See ¶ 3, *supra*.

8. Undisputed. However, See ¶ 3, *supra*.

9. Undisputed. However, See ¶ 3, *supra*.

10. Undisputed.

---

[1] The March 29, 2007 letter from BMS's counsel to the mediator contains the following introductory language: "The subject matter of this arbitration is an asbestos incident that occurred at 76 Fourth Street in Somerville, New Jersey…" (Exhibit 3, p. 1 of the March 29, 2007 letter). The letter goes on: "As a result of Badger's roof removal activities, dust and debris containing asbestos materials infiltrated the Somerville Facility through gaps in the roof decking." (Exhibit 3, p. 2 of the March 29, 2007 letter). As one final example, the letter goes on: "The asbestos infiltration at the Somerville Facility adversely affected BMS in a number of respects. First and foremost, BMS was concerned about human exposure to asbestos dust and fibers…Second, BMS was concerned about the monkeys' potential exposure to asbestos dust…Third, BMS had to address the continuation of the roofing job…[BMS insisted SF retain] an asbestos removal company…and develop[] a protocol to appropriately complete the roof removal…Fourth, BMS had to address the asbestos contamination of the facility…Fifth, BMS had to address the impact that the asbestos contamination had on its operations." (Exhibit 3, p. 3 of the March 29, 2007 letter).

- 3 -

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. Undisputed. However, See ¶ 3, *supra*.

15. Undisputed.

16. Undisputed.

17. Disputed. (See ¶ 3, *supra*.)

18. Disputed. (See ¶ 3, *supra*.)

19. Undisputed.

Date: January 11, 2010                                          Respectfully submitted,

                                                                /s/ Jay A. Gebauer
                                                                Jay A. Gebauer
                                                                POST & SCHELL, P.C.
                                                                Overlook Center 2nd Floor
                                                                100 Overlook Drive
                                                                Princeton, NJ 08540
                                                                Attorney for Plaintiff, Scottsdale Ins. Co.