NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SCOTTSDALE INSURANCE CO.,<br><br>Plaintiff,<br><br>v.<br><br>SOMERVILLE FIDELCO ASSOCIATES, LP and BADGER ROOFING CO., INC.,<br><br>Defendants | Civ. No. 07-2763<br><br>OPINION & ORDER |
| SOMERVILLE FIDELCO ASSOCIATES, LP,<br><br>Third Party Plaintiff.<br><br>v.<br><br>QUINCY MUTUAL FIRE INSURANCE CO. and AMERICAN HOME ASSURANCE CO.,<br><br>Third Party Defendants. | |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court upon Plaintiff's Motion for Summary Judgment [46], Third Party Defendant Quincy Mutual Fire Insurance Company's ("Quincy") Motion for Summary Judgment [45], and Third Party Defendant American Home Assurance Company's ("AHA") Motion for Summary Judgment [47]. The Court has decided the motions upon the written submissions of the parties, without oral argument. For the reasons given below, all three motions are GRANTED.

BACKGROUD

Defendant Somerville Fidelco Associates ("Fidelco") owns a building in Somerville, New Jersey, which it leased to Bristol-Meyers Squibb ("BMS"). (Pl.'s Statement Material Facts [hereinafter "PSF"] ¶ 20.)[1] BMS used the building to house monkeys intended for use in pharmaceutical testing. (*Id.*) In early 2005, BMS alerted Fidelco to the fact that the building roof leaked, which prompted Fidelco to engage a consultant to evaluate the roof. (*Id.* ¶ 21.) The consultant examined the roof and recommended that the entire roof be replaced. (*Id.* ¶ 22.) After reviewing the consultant's report, Fidelco hired Defendant Badger Roofing, Inc. ("Badger") to remove and dispose of the existing roof. (*Id.* ¶ 24.)

Badger began removal of the roof on Monday, September 19, 2005. (*Id.* ¶ 29.) Work continued for the remainder of the week but ceased on Friday, September 23 after a BMS employee told Badger to stop because the work was causing dust and debris to enter the building. (*Id.* ¶ 31.) Concerned that the dust and debris might contain asbestos, BMS hired Eagle Environmental ("Eagle") to conduct testing inside the building to determine whether asbestos was present. (*Id.* ¶ 48.) Eagle tested several areas of the building, two of which tested positive for asbestos. (*Id.* ¶ 49.) Eagle then tested the remaining areas of the roof, which also tested positive for asbestos. (*Id.* ¶ 51.) However, none of the samples taken of the air in the building revealed the presence of any asbestos. (Fidelco's Counterstatement Material Facts [hereinafter "FCF"] ¶ 9.) BMS removed their monkeys from the building and engaged Bristol Environmental ("Bristol") to clean the warehouse. (PSF ¶ 52.) Meanwhile, Fidelco hired a new contractor, Slavco Construction, Inc. ("Slavco"), to complete the roof removal process using special asbestos abatement procedures. (*Id.* ¶¶ 33, 36.) Badger continued to work under the

[1] Citations are made only to those portions of Plaintiff's Statement of Material Facts which are not disputed by either Fidelco or Badger.

direction of Slavco, and by December 2005, the old roof had been completely removed and a new one installed in its place. (*Id.* ¶¶ 34, 42.) Additional testing performed in December did not reveal any asbestos. (FCF ¶ 11.) Finally, after all the roof work was finished, Bristol performed an extensive final cleanup of the entire building in January 2006. (PSF ¶¶ 53, 57.)

BMS then filed a demand for arbitration against Fidelco, arguing that Fidelco breached its lease agreement. (*Id.* ¶ 65.) BMS sought to recover the money it had spent on cleanup costs as well as the cost of finding alternative housing for its monkeys during the cleanup process. (*Id.* ¶ 66-68.) Substantial discovery occurred, and the parties settled BMS's claims for $575,000 on the eve of the arbitration. (*Id.* ¶ 73.) Fidelco sought defense and indemnification from Plaintiff, Scottsdale Insurance Company, who has continually maintained that it does not and did not have any obligation to Fidelco.

Finally, on June 13, 2007, Plaintiff filed this action against Fidelco, seeking a declaratory judgment that it does not owe Defendants any obligation. Fidelco counterclaimed against Plaintiff for indemnification, cross claimed against Badger for allegedly negligent work, and then several months later filed a Third Party Complaint against Quincy and AHA, also seeking indemnification. Badger cross claimed against Fidelco and counterclaimed against Plaintiff. Finally, the Third Party Defendants asserted cross claims as well. Plaintiff has now moved for summary judgment on its claim for declaratory judgment against both Fidelco and Badger. Quincy and AHA have moved to dismiss all the claims asserted against them.

Fidelco seeks indemnification under three different policies: (1) Badger's insurance policy with Plaintiff, (2) its own insurance policy with Quincy, and (3) BMS's insurance policy with AHA.

Although Fidelco was not a party to the insurance contract between Badger and Plaintiff, it asserts coverage based on an endorsement entitled "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in a Construction Agreement with You." (*Id.* ¶ 3.) The endorsement states that the policy extends to cover "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." (*Id.*) Such coverage would extend to losses caused by Badger's acts or omissions in the performance of its operations for Fidelco. (*Id.*) As will be detailed more fully below, there is some dispute as to whether or not Fidelco and Badger had a written agreement that would satisfy the above-quoted language. Also relevant to the instant motion, Badger's policy with Plaintiff contained an asbestos exclusion, which provided that certain asbestos-related losses were excluded from coverage. (*See id.* ¶ 14.) Plaintiff argues that this provision is dispositive not only with regards to its dispute with Fidelco, but with regards to its dispute with Badger as well.

Quincy insured Fidelco for "Businessowners Liability Coverage" and "Commercial General Liability Coverage" under a policy in effect during the roofing construction and subsequent cleanup. That policy also contains an exclusion for asbestos-related losses, though it is worded slightly differently from the exclusion in the Badger-Scottsdale policy. Again, the parties dispute whether that exclusion is applicable to the facts of this case.

Finally, AHA insured BMS for general commercial liability. Like the Badger-Scottsdale policy, the AHA-BMS policy contains an endorsement extending coverage to any party to whom BMS was required by written contract to include as an additional insured. The policy

specifically excluded from coverage all property damage to property that BMS owned, rented, or occupied, as well as costs incurred to repair, replace, or maintain such property.

## ANALYSIS

### I. Standard of Review on Summary Judgment

Summary Judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. Accordingly, if the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

While a party moving for summary judgment must, of course, produce evidence supporting those elements essential to its own case, it is not obliged to produce evidence specifically disproving those elements essential to its adversary's case. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

II. Plaintiff's Claims Against Fidelco

When interpreting an insurance contract, courts must resolve any ambiguities in the policy "in favor of the insured in order to give effect to the insured's reasonable expectations." *American Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41 (1998). However, this is not a license for courts to rewrite an insurance policy whose meaning is clear. "[A]n insurance policy should generally be interpreted 'according to its plain and ordinary meaning,' . . . so as not to disregard the 'clear import and intent' of a policy exclusion." *Id.* (citations omitted).

Plaintiff is entitled to summary judgment against Fidelco because the endorsement for additional insureds was not satisfied. As was stated above, that endorsement only triggers when the policy holder and the third party seeking coverage "have agreed in writing in a contract or agreement that such person or organization be added as an additional insured." The undisputed facts show that there was no written agreement between Fidelco and Badger that Fidelco be added as an additional insured on Badger's policy. Therefore, Fidelco is not covered under the Badger-Scottsdale policy.

Badger and Fidelco entered into a written contract on July 14, 2005. (Cert. Randee M. Matloff, Ex. 2.) The contract consisted of a written bid submitted by Badger which was signed and dated by Barry Ages on behalf of Fidelco. (*Id.*) However, that document says nothing about whether Badger was required to obtain insurance and, if so, whether the policy should list Fidelco as an additional insured. Fidelco attempts to cure this deficiency by arguing that certain Certificates of Insurance—which Badger provided to Fidelco and which state that Fidelco is named as an additional insured—are also part of the written contract. However, the Court finds that the certificates do not qualify as part of the written contract between Badger and Fidelco. Under New Jersey law, "two or more writings may constitute a single contract even though they

do not refer to each other. . . . Whether two writings are to be construed as a single contract, however, depends on the intent of the parties." *Van Orman v. American Ins. Co.*, 680 F.2d 301, 306 (3d Cir. 1982) (citations omitted). Fidelco has not offered any evidence tending to show that Badger and Fidelco intended the certificates of insurance to be part of their written contract. Indeed, the certificates themselves strongly suggest they were intended *not* to be part of the contract, since each one states that it "is issued as a matter of information only and confers no rights upon the certificate holder" and that it does not "amend, extend, or alter the coverage afforded by the policies listed hereon." (*See, e.g.*, Matloff Cert. Ex. 20 (final page).) Furthermore, the certificates do not recite any promises or obligations that Fidelco and Badger had to each other. (*Id.*) In summary, the certificates do not appear on their faces to be contractual documents, and Fidelco has not produced any evidence external to the certificates that suggests that the certificates were intended as part of the contract.

As an alternative argument, Fidelco asserts that there is an issue of material fact as to whether a form AIA contract which Badger sent to Fidelco and which allegedly contains a provision requiring Badger to cover Fidelco as an additional insured ever became operative. However, Fidelco presents no evidence that would support a finding that this document did become operative. The AIA document is unsigned, and it does not appear that the section that allegedly refers to insurance coverage was ever actually sent to Fidelco in the first place. (Matloff Cert. Ex. 3.)

Plaintiff has produced evidence that supports its claim that Fidelco is not covered as an additional insured under the policy between Scottsdale and Badger. Fidelco has not introduced any evidence that would create a material factual dispute on this point. Therefore, Plaintiff's motion for summary judgment will be granted as against Fidelco.

III. Plaintiff's claim against Badger

Plaintiff claims that the asbestos exclusion applies in this case and that as a result Badger is not entitled to a defense or any indemnification. The asbestos exclusion is worded as follows:

> The coverage afforded by this policy does not apply to bodily injury, personal injury, or property damage arising out of:
>
> 1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or
> 2. The use of asbestos in construction or manufacturing any good, product, or structure; or
> 3. The removal of asbestos from any good, product or structure; or
> 4. The manufacture, sale, transportation, storage or disposal of asbestos or goods or products containing asbestos.

(PSF ¶ 14.) Plaintiff argues that the losses incurred by Fidelco in settling the arbitration proceeding with BMS—for which Fidelco now asserts claims against Badger—fall under parts three and four of the exclusion.

Badger is seeking defense and indemnification against Fidelco's claims for losses related to the monkey relocation and cleanup expenses that BMS incurred after asbestos was discovered in the building's old roof during Bader's removal work. If those claims "arise out of" either the "removal of asbestos" or the "disposal of asbestos," then the exclusion applies and Badger is not entitled to coverage.

The phrase "arising out of" has been "interpreted expansively" by New Jersey courts to include activity "'originating from,' 'growing out of' or having a 'substantial nexus' with" the specified action. *American Motorists*, 155 N.J. at 35 (quoting *Records v. Aetna Life & Cas. Ins.*, 294 N.J. Super. 463, 468 (App. Div. 1996)). The phrase has been interpreted just as broadly in exclusionary clauses as it has been in coverage clauses. For example, an exclusion for activity arising out of the use of an automobile will apply if "the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of an automobile."

*Allstate Ins. Co. v. Moraca*, 244 N.J. Super. 5, 13 n.1 (App. Div. 1990) (quoting *Hogle v. Hogle*, 167 Conn. 572 (1975)).

The most comprehensive treatment given to the phrase "arising out of" by a New Jersey court appears in the 1973 case of *Westchester Fire Insurance Co. v. Continental Insurance Companies*.[2] 126 N.J. Super. 29 (App. Div.). In that case, the court specifically concluded that "arising out of" is broader than the concept of "proximate cause." *Id.* at 37-38. The court, in analyzing an automobile exclusion, stated that the exclusion should apply if the injury "although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile." *Id.* at 38.

While Badger's arguments are not entirely clear, its brief appears to oppose Plaintiff's motion on two separate grounds.

On the one hand, Badger may be advancing the argument that there was literally no "removal of asbestos" or "disposal of asbestos" in this case. In a sense, it could be argued that Badger's work was really a "roof removal" project, and the fact that there was asbestos in the roof is only an incidental fact. This would support the conclusion that Badger never engaged in the "removal of asbestos." However, the Court does not think that the language of the insurance contract supports such a reading. The phrase "removal of asbestos" is not ambiguous, and therefore it should be given its plain meaning. Since removal of an asbestos-laden roof from a building plainly constitutes "the removal of asbestos from [a] . . . structure," it is clear that the asbestos exclusion is in play in this case. The more substantial question is which of the claims for which Badger seeks a defense and indemnification "arise out of" the roof removal process, and are hence subject to the exclusion.

---

[2] *Westchester Fire* has been consistently cited and accepted as authoritative on this point. *See, e.g.*, *Penn. Nat. Ins. Co. v. Costa*, 198 N.J. 229, 237 (2009).

The second argument the Court finds in Badger's opposition papers—and which may be the only argument Badger actually intended to make—proceeds in this fashion: As was explained above, roof removal was initially halted in September 2005, and tests taken at that time revealed the presence of asbestos in the old roof. Thereafter, BMS engaged Bristol to do a preliminary cleanup, and Fidelco hired Slavco, an asbestos-removal specialist, to complete the roof removal. Asbestos testing performed in December 2005—after roof removal and reconstruction had resumed under the direction of Slavco—did not detect any further asbestos contamination. Consequentially, Badger reasons, "at the time [Bristol] undertook the phase two major cleanup in January [2006] there was no data to support the proposition that there was actual asbestos contamination in the Facility." (Badger's Br. Opp. Pl.'s Mot. Summ. J. 14.) Badger argues that since a significant portion of the cleanup costs were directed towards cleaning up an area that was no longer contaminated by asbestos, indemnification for those costs are not precluded by the asbestos exclusion. (*Id.*)

This argument does not square with the broad reading that New Jersey courts have accorded the phrase "arising out of." Badger admits that the evidence shows that "[t]he old roof which was being removed may have contained asbestos." (*Id.* at 12.) Therefore, whatever damages "arise out of" the removal and disposal of the roof will be excluded from policy coverage. Badger does not contest the fact that the discovery of asbestos in the roof is what prompted BMS to relocate its monkeys and engage an environmental services firm to do an extensive cleanup of the building. (PSF ¶¶ 46, 65-68.) Rather, Badger appears to argue that since tests done in December 2005 did not detect any asbestos, the cleanup costs incurred after that point should not be attributed to asbestos removal. However, while Bristol's cleanup activities occurred in two phases (*Id.* ¶ 53), the fact remains that the entire Bristol engagement

flowed from the removal of an old asbestos-laden roof. As the New Jersey courts have consistently held, the relevant inquiry in this instance is not whether the asbestos removal was the "proximate cause" of the January 2006 cleanup costs which form the basis of much of Badger's exposure to liability. Rather, the question is whether the parties to the contract would have considered such cleanup costs a "natural and reasonable incident or consequence" of asbestos removal. *Westchester Fire*, 126 N.J. Super. at 38. Given the risks associated with asbestos exposure, it would be reasonable to expect that a business which discovered asbestos on its leased premises would move its animals into off-site storage and undertake the kind of extensive clean up that BMS did in this situation. Therefore, the costs associated with the cleanup and off-site storage can fairly be said to "arise out of . . . [t]he removal of asbestos from [a] . . . structure." (PSF ¶ 14.) Consequentially, the asbestos exclusion applies, Badger is not covered as to the claims related to the cleanup costs, and Plaintiff is entitled to the entry of summary judgment against Badger.[3] As this disposes of Plaintiff's motion, the Court declines to consider the remaining arguments Plaintiff has raised.

IV. Quincy's Motion for Summary Judgment Against Fidelco

As stated above, Fidelco's insurance policy with Quincy contained an asbestos exclusion. That provision provides, "[T]his policy shall not apply to any loss, claim or expense caused by, resulting from or arising out of asbestos, exposure to asbestos or any product containing asbestos." (Aff. of Frederic Paul Gallin, Ex. 5.)

Like the Badger-Scottsdale policy discussed above, this policy contains the phrase "arising out of," and consequentially the Court reaches the same conclusion. Fidelco makes the same argument here that Badger made in its opposition to Scottsdale's motion—that the majority

[3] The applicability of the asbestos exclusion is an alternative ground supporting the entry of summary judgment against Fidelco as well.

of the costs incurred by BMS were spent after certain tests for asbestos came back negative in December 2005. Once again, that argument fails because losses arising out of asbestos are not confined to those losses incurred in the first step of the clean up process. They extend to cover all the "natural and reasonable incident[s] or consequence[s]" (*Westchester Fire*, 126 N.J. Super. at 38) of the asbestos removal process. For the reasons given above, this includes both phases of the Bristol cleanup as well as the cost of moving the monkeys off site.

As a result, Quincy's Motion for Summary Judgment will be granted. As this disposes of Quincy's motion, the Court will not reach Quincy's other arguments.

V. AHA's Motion for Summary Judgment Against Fidelco

Finally, AHA seeks to dismiss Fidelco's claims that Fidelco is entitled to coverage as an "additional insured" under the policies between BMS and AHA.[4] The AHA-BMS Policies constitute comprehensive general liability policies. Such policies cover insureds for their tort liability to third parties. *See Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 239-40 (1979) (discussing general liability policies); *see also* 7A Couch on Ins. 3d § 129.1 (2009) ("[A] commercial general liability insurance policy is generally designed to provide coverage for tort liability for physical damages to others and not for contractual liability of the insured . . . ."). The record indicates that no third parties suffered harm; rather, BMS, the insured under the AHA-BMS Policies, suffered harm as a result of Fidelco's failure to maintain the roof of the facility. Thus, it is unclear why BMS's liability policy would be implicated at all with respect to the harm BMS, the insured, suffered. Fidelco has not provided the Court with an explanation as

[4] AHA insured BMS for general liability commercial liability under two policies (collectively, the "AHA-BMS Policies"). The first policy, identified as GL 554-87-75, covered the period January 1, 2005 to January 1, 2006 (the "AHA-BMS 05-06 Policy"). (Decl. Michael Cohen, Ex. D.) The second policy, identified as GL 575-14-52, covered the period January 1, 2006 to January 1, 2007 (the "AHA-BMS 06-07 Policy"). (Cohen Decl. Ex. E.) Several of the provisions relevant to the resolution of this motion are common to both policies.

to why an insurance policy geared toward third party injuries could be asserted by the owner of the property with regards to injuries suffered by the insured itself.

One of the provisions upon which Fidelco bases its claim for coverage, the "Additional Insured-Managers or Lessors of Premises Endorsement," clearly does not support any claim. (Decl. Michael Cohen, Ex. D at AHA 0204; Cohen Decl. Ex. E at AHA 0343.) This endorsement provides coverage for managers or lessors of premises, "as per written contract," but does not cover those parties for liability arising out of "structural alterations, new construction or demolition." (*Id*.) Badger's removal of the old roof and construction of the new roof falls under this exception to coverage, either as a structural alteration or new construction.

Notably, maintenance and repairs of the roof fall squarely under the responsibility of Fidelco, further negating the applicability of any insurance coverage that would extend to Fidelco as an additional insured "as per written contract." Section 5.1 of the Fidelco-BMS Lease states that "[Fidelco] shall make the necessary structural repairs to the roof and walls of the building . . . ." (Cohen Decl. Ex. G at SF 1349.) Moreover, the record reflects Fidelco's understanding of its responsibility with respect to roof repairs. Fidelco investigated and discovered that the roof was leaking. (Cohen Decl. Ex. F ¶ 7.) Fidelco retained a structural expert to determine the extent of the damage. (*Id*. ¶¶ 13-14.) Finally, Fidelco hired Badger Roofing to replace the roof. (*Id*. ¶¶ 8, 10, 12.) BMS had no involvement with any of these decisions.

Fidelco seeks a declaration from this Court to the effect that BMS, its tenant, was responsible for procuring insurance to indemnify Fidelco for liability arising out of Fidelco's obligations under the Fidelco-BMS Lease. Fidelco had no reasonable expectation of such coverage under the terms of the Fidelco-BMS Lease. None of the provisions of the Fidelco-

BMS Lease upon which Fidelco relies support its position. For example, Fidelco points to Section 6.1 and argues that the Fidelco-BMS Lease required BMS to obtain property damage insurance; however, this Section further states that BMS is required to obtain such insurance for damage by fire, mischief or vandalism. (Cohen Decl. Ex. G at SF 1350.) Additionally, Fidelco points to Sections 11.1 and 29.2. When these provisions are read in conjunction with the other provisions in those sections, it is clear that BMS had no obligation to indemnify Fidelco for loss that would occur due to Fidelco's conduct. Indeed, Fidelco's interpretation of these provisions runs contrary to other terms in the Fidelco-BMS Lease. Section 11.4 states that "in the event [Fidelco] shall cause any damage to [BMS's] property or if damage caused by [Fidelco's] or its agents or contractor's negligence, [Fidelco] shall be liable for the damage. (Cohen Decl. Ex. G at SF 1353.) Section 29.1 indicates that BMS will be responsible for harm to its property "unless such damage or injury is caused by the sole negligence of [Fidelco], its agents, servants or employees." (Cohen Decl. Ex. G at SF 1363-64.)

Finally, even if this Court was able to contort the text of the AHA-BMS Policies to include Fidelco as an additional insured, there is an exclusion for losses from "property you own, rent, or occupy, including any costs or expenses incurred by you or any other person, organization or entity for repair, replacement, enhancement, restoration, or maintenance." (Cohen Decl. Ex. D at AHA 0153; Cohen Decl. Ex. E at AHA 0269.) All of BMS's expenditures were directly related to losses on its own property and the property it rented from Fidelco. Therefore, those losses are outside the scope of the BMS-AHA policy. Fidelco cannot demand coverage as an additional insured for harm that BMS, the insured, could not and did not claim under the AHA-BMS Policies. *See Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d

639, 642 (D.C. Cir. 1996) (explaining that an additional insured covered under a particular policy has the same rights as an insured, but no more).

CONCLUSION

For the foregoing reasons, IT IS ORDERED, this 22nd day of February, 2010, that:

1. Plaintiff's Motion for Summary Judgment [46] is GRANTED; and
2. Third Party Defendant Quincy Mutual Fire Insurance Company's ("Quincy") Motion for Summary Judgment [45] is GRANTED; and
3. Third Party Defendant American Home Assurance Company's ("AHA") Motion for Summary Judgment [47] is GRANTED; and
4. The motion appearing at docket entry # 42 is TERMINATED, as it is duplicative of docket entry # 45; and
5. It is DECLARED that Plaintiff Scottsdale Insurance Company has no duty to defend or indemnify or reimburse Somerville Fidelco Associates, L.P. for any claims brought against it by Bristol-Meyers Squibb as a result of the roofing work and asbestos contamination at its property located at 76 Fourth Street, Somerville, New Jersey; and
6. It is DECLARED that Plaintiff Scottsdale Insurance Company has no duty to defend or indemnify or reimburse Badger Roofing Co., Inc. for any claims brought against it by Somerville Fidelco Associates, L.P. for damages related to the cleanup costs initially borne by Bristol-Meyers Squibb and which were the subject of an arbitration and settlement between Bristol-Meyers Squibb and Somerville Fidelco Associates, L.P.; and
7. All counterclaims filed against Plaintiff are DISMISSED with prejudice; and
8. Somerville Fidelco's Third Party Complaint and all Crossclaims against Quincy Mutual Fire Insurance Company are DISMISSED with prejudice; and

9. Somerville Fidelco's Third Party Complaint and all Crossclaims against American Home Assurance Company are DISMISSED with prejudice.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.